IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AGJUNCTION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-2069 |
| | ) | |
| AGRIAN INC.; JEFFREY A. DEARBORN; | ) | |
| AARON D. HUNT; MATTHEW C. DEDMON; | ) | |
| DAVID J. NERPEL; DERRICK B. ANDERSON | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **COMPLAINT**

Plaintiff AgJunction LLC for its Complaint for Injunctive Relief, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Intentional Interference with Business Advantage and Relationships, Misappropriation of Trade Secrets, Unfair Competition, Breach of the Duty of Loyalty, Breach of Fiduciary Duty, Tortious Interference with Employment Contracts, and Conspiracy ("Complaint") against Defendants Agrian Inc., Jeffrey Dearborn, Aaron Hunt, Matthew Dedmon, David Nerpel, and Derrick Anderson, alleges as follows:

### NATURE OF THE ACTION

1.  This is an action for Injunctive Relief, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Intentional Interference with Business Advantage and Relationships, Misappropriation of Trade Secrets, Unfair Competition, Breach of the Duty of

Loyalty, Breach of Fiduciary Duty, Tortious Interference with Employment Contracts, and Conspiracy.

## PARTIES

2.   AgJunction LLC ("AgJunction") is a limited liability company organized and existing under the laws of the State of Delaware, with its corporate headquarters located at 2207 Iowa Street, Hiawatha, Kansas 66434. AgJunction provides innovative wireless hardware and software applications in the precision agriculture field, including integrated data management solutions such as cloud-based data management software platforms, to retailers and growers worldwide under leading brand names including Outback Guidance®, Satloc®, and AgJunction® Cloud Services.

3.   AgJunction is informed and believes that Defendant Agrian is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 2665 N. Air-Fresno Drive, Suite 101, Fresno, California 93727. Defendant Agrian is a reseller that markets, sells, and licenses agricultural software.

4.   AgJunction is further informed and believes that at all times relevant hereto Nishan Majarian was and continues to act as CEO of Agrian.

5.   Defendant Jeffrey Dearborn is an individual residing in Southaven, Mississippi. At all times relevant hereto, Defendant Dearborn was employed by AgJunction, most recently as Director of AgJunction's Cloud Services Division, through December 2013. AgJunction is informed and believes that Defendant Dearborn is currently employed by Defendant Agrian.

6.   Defendant Aaron Hunt is an individual residing in Bellefonte, Pennsylvania. At all times relevant hereto, Defendant Hunt was employed by AgJunction, most recently as Director of Technology of AgJunction's Cloud Services Division, through April 2013.

AgJunction is informed and believes that Defendant Hunt is currently employed by Defendant Agrian.

7.   Defendant Matthew Dedmon is an individual residing in Bellefonte, Pennsylvania. At all times relevant hereto, Defendant Dedmon was employed by AgJunction, most recently as a Senior Developer, through August 2013. AgJunction is informed and believes that Defendant Dedmon is currently employed by Defendant Agrian.

8.   Defendant David Nerpel is an individual residing in Ellensburg, Washington. At all times relevant hereto, Defendant Nerpel was employed by AgJunction, most recently as a Precision Account Manager, through August 2013. AgJunction is informed and believes that Defendant Nerpel has been and is currently employed by Defendant Agrian.

9.   Defendant Derrick Anderson is an individual residing in Jonesboro, Arkansas. At all times relevant hereto, Defendant Anderson was employed by AgJunction, most recently as a Precision Account Manager, through December 2013. AgJunction is informed and believes that Defendant Anderson is currently employed by Defendant Agrian.

**JURISDICTION**

10. This Court has personal and subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**VENUE**

11. Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Agreement at issue contains express language pursuant to which the parties consented to the jurisdiction and venue of this Court, acts giving rise to this complaint occurred within this District, and

the counts alleged in this complaint arise from the transaction of business by Defendant Agrian in this District.

## GENERAL ALLEGATIONS

AgJunction's Software System

12. AgJunction's leading Web-based precision agricultural software systems assist growers in the United States and worldwide, among other things, to facilitate the management and reporting of agricultural field data, moving and stationary assets, field operations, and work order status and completion.

13. AgJunction's software system and the protected, confidential data collected by its system are accessed and used in connection with AgJunction's hardware, including AgJunction's GPS-based interface devices.

14. AgJunction is the owner of all right, title, and interest in its proprietary software and grants limited, non-exclusive, licenses to certain resellers and retailers to use and access AgJunction's software and related database.

Defendant Agrian

15. Defendant Agrian is a provider of agricultural regulatory compliance software.

16. Defendant Agrian is also a reseller of precision agronomy software, including AgJunction's precision agronomy software, which is sold under the various brand names of its resellers or retailers, such as AgVerdict and NutriscriptionHD.

17. AgJunction is informed and believes that until only very recently, Defendant Agrian did not possess, market, or sell precision agronomy software that it developed itself.

The AgJunction-Agrian Agreement

18. AgJunction entered into a Master Services and Licensing Agreement with Defendant Agrian in or about December 2012 ("Agreement"), wherein AgJunction agreed to grant Defendant Agrian, as reseller, a non-exclusive, non-transferrable limited license to access and use AgJunction's Web-based hosted agricultural software system for the purpose of sublicensing AgJunction's software system to Wilbur-Ellis Company, who in turn could further sublicense AgJunction's software system to its own customers. A true and correct copy of the Agreement is attached to this Complaint as Attachment A and incorporated herein by reference.

19. Pursuant to the terms of the Agreement, Defendant Agrian's access and use of AgJunction's software is limited.

20. Specifically, Section 2.1 of the Agreement, titled, "License," states in pertinent part

"Reseller [Agrian]'s access and use of the Licensed Services shall only be for its internal use and for purposes of supporting Client [Wilbur-Ellis Company] and [Wilbur-Ellis Company's customer sublicensees'] use of the Licensed Services."

21. Further, Defendant Agrian's access and use of AgJunction's confidential information, including software code, is restricted.

22. Section 9.1 of the Agreement, titled, "Disclosure and Use," states in pertinent part,

"[Agrian] shall use Confidential Information of [AgJunction] only in performing under this Agreement and shall retain the Confidential Information in confidence and not disclose to any third party."

Agrian's Breach of the Agreement

23. AgJunction is informed and believes that Agrian, without AgJunction's knowledge or consent, illegally gained unauthorized access to AgJunction's confidential and proprietary software system.

24. AgJunction is informed and believes that Agrian unlawfully copied and used the illegally accessed information to create its own "Agrian Software" with the same features and functionality as AgJunction's software licensed to Agrian in the Agreement.

25. AgJunction is further informed and believes that Agrian markets, advertises, sells, offers to sell, licenses, and/or offers to license its "Agrian Software" to agricultural and agrichemical customers, including Agrian's customers and potential customers.

<u>Individual Defendants' Breaches of AgJunction Employment Agreements</u>

26. Defendants Dearborn, Hunt, Dedmon, Nerpel, and Anderson ("Employee Defendants"), and each of them, were employed by AgJunction and had access to AgJunction's confidential and proprietary information during the course of their employment.

27. The Employee Defendants' access to AgJunction's confidential and proprietary information was restricted for use in connection with the Employee Defendants' respective job functions as employees of AgJunction.

28. AgJunction is informed and believes that during their respective terms of employment with AgJunction, the Employee Defendants, and each of them, illegally gained unauthorized access to AgJunction's confidential and proprietary software system and the confidential, protected data contained therein, outside the scope of their respective employment agreements.

29. AgJunction is further informed and believes that the Employee Defendants, and each of them, illegally copied AgJunction's confidential and proprietary software system and the confidential, protected data collected by the software system.

30. AgJunction is informed and believes that the Employee Defendants, and each of them, unlawfully provided, and continue to provide, Defendant Agrian access to AgJunction's confidential and proprietary software system and the confidential, protected data contained therein.

31. AgJunction is informed and believes that the Employee Defendants, and each of them, used AgJunction's confidential and proprietary information to create and/or assist Agrian in creating precision agronomy software designed as a competitive alternative to AgJunction's software. AgJunction is informed and believes that the unlawfully developed software is known under the name "Agrian 6," among possible other brand names.

32. AgJunction is informed and believes that during the period of their employment by AgJunction, the Employee Defendants took actions that resulted in direct conflicts of interest with AgJunction, to whom they owed duties of loyalty and good faith.

33. AgJunction is informed and believes that during the respective periods of the Employee Defendants' employment with AgJunction, Defendant Agrian actively solicited the Employee Defendants in order to gain unauthorized access to AgJunction's confidential and secret proprietary information.

34. AgJunction is further informed and believes that during the period of their employment by AgJunction, the Employee Defendants, and each of them, collectively planned and agreed among themselves and in connection with Agrian to resign from AgJunction and assist Agrian in developing software competitive to AgJunction's software.

35. AgJunction is informed and believes that during their respective periods of the employment with AgJunction, the Employee Defendants unlawfully accessed, used, and disclosed AgJunction's confidential, secret, and proprietary information to Agrian.

36. AgJunction is further informed and believes that during their respective periods of employment with AgJunction, the Employee Defendants unlawfully began competing with AgJunction and obtaining business opportunities for Agrian instead of AgJunction.

37. AgJunction is informed and believes that during their respective periods of employment with AgJunction, the Employee Defendants knowingly and intentionally stole AgJunction's secret, confidential, and proprietary information for use by Agrian in developing software competitive to AgJunction's software system.

38. As part of and as a condition of Defendant Dearborn's continued employment with AgJunction, subsequent to Hemisphere GPS Inc.'s acquisition of AgJunction, Defendant Dearborn entered into a Confidentiality and Intellectual Property Agreement on or about January 20, 2012 ("Dearborn Agreement"). A true and correct copy of the Dearborn Agreement is attached to this Complaint as Attachment B and incorporated herein by reference.

39. In addition to Defendant Dearborn's obligation to maintain the confidentiality of AgJunction's secrets and intellectual property, the Dearborn Agreement also required Defendant Dearborn to abide by conflict of interest, non-competition, and non-solicitation terms.

40. Defendant Dearborn's conflict of interest, confidentiality, non-solicitation, and non-competition obligations survive even after his departure from AgJunction's employment in December 2013.

41. As part of and as a condition of Defendant Hunt's continued employment with AgJunction, Defendant Hunt entered into a Confidentiality and Intellectual Property Agreement on or about January 24, 2012 ("Hunt Agreement"). A true and correct copy of the

Hunt Agreement is attached to this Complaint as Attachment C and incorporated herein by reference.

42. In addition to Defendant Hunt's obligation to maintain the confidentiality of AgJunction's secrets and intellectual property, the Hunt Agreement also required Defendant Hunt to abide by conflict of interest, non-competition, and non-solicitation terms.

43. Defendant Hunt's conflict of interest, confidentiality, non-solicitation, and non-competition obligations survive even after his departure from AgJunction's employment in April 2013.

44. As part of and as a condition of Defendant Dedmon's continued employment with AgJunction subsequent to Hemisphere GPS Inc.'s acquisition of AgJunction, Defendant Dedmon entered into a Confidentiality and Intellectual Property Agreement on or about January 20, 2012 ("Dedmon Agreement"). A true and correct copy of the Dedmon Agreement is attached to this Complaint as Attachment D and incorporated herein by reference.

45. In addition to Defendant Dedmon's obligation to maintain the confidentiality of AgJunction's trade secrets and intellectual property, the Dedmon Agreement also required Defendant Dedmon to abide by conflict of interest, non-competition, and non-solicitation terms.

46. Defendant Dedmon's conflict of interest, confidentiality, non-solicitation, and non-competition obligations survive even after his departure from AgJunction's employment in August 2013.

47. As part of and as a condition of Defendant Nerpel's employment with AgJunction, Defendant Nerpel entered into a Confidentiality and Intellectual Property Agreement on or

about May 11, 2012 ("Nerpel Agreement"). A true and correct copy of the Nerpel Agreement is attached to this Complaint as Attachment E and incorporated herein by reference.

48. In addition to Defendant Nerpel's obligation to maintain the confidentiality of AgJunction's trade secrets and intellectual property, the Nerpel Agreement also required Defendant Nerpel to abide by conflict of interest, non-competition, and non-solicitation terms.

49. Defendant Nerpel's conflict of interest, confidentiality, non-solicitation, and non-competition obligations survive even after his departure from AgJunction's employment in August 2013.

50. As part of and as a condition of Defendant Derrick Anderson's continued employment with AgJunction, subsequent to Hemisphere GPS Inc.'s acquisition of AgJunction, Defendant Anderson entered into a Confidentiality and Intellectual Property Agreement in or about January 2012 ("Anderson Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Attachment F and incorporated herein by reference.

51. In addition to Defendant Anderson's obligation to maintain the confidentiality of AgJunction's secrets and intellectual property, the Anderson Agreement also required Defendant Anderson to abide by conflict of interest, non-competition, and non-solicitation terms.

52. Defendant Anderson's conflict of interest, confidentiality, non-solicitation, and non-competition obligations survive even after his departure from AgJunction's employment in December 2013.

## COUNT I
## BREACH OF CONTRACT (AS AGAINST DEFENDANT AGRIAN)

53. AgJunction repeats and realleges paragraphs 1 through 52 above as if specifically incorporated herein.

54. On or about December 31, 2012, AgJunction and Defendant Agrian entered into a written Master Services and Licensing Agreement.

55. AgJunction performed all of its obligations under the Agreement, except for those obligations that AgJunction was excused or prevented from performing due to Defendant Agrian's actions and/or omissions.

56. Defendant Agrian has breached the terms of the Agreement by failing, among other things, to honor obligations set forth in the Agreement to access and use AgJunction's confidential and protected information solely for the purpose of administering its reseller agreements with its client, Wilbur-Ellis Company.

57. AgJunction is informed and believes that Defendant Agrian has developed its own precision agronomy software that offers the same features and functionalities of AgJunction's proprietary software that it licensed to Defendant Agrian pursuant to the Agreement.

58. AgJunction is informed and believes that Defendant Agrian developed its own precision agronomy software through the unlawful access and use of AgJunction's proprietary software.

59. AgJunction is further informed and believes that Defendant Agrian unlawfully accessed, stored, and/or copied the data collected by AgJunction's precision agronomy software and maintained in AgJunction's proprietary database.

60. As a direct and proximate result of Defendant Agrian's failure to honor its obligations under the Agreement, AgJunction has suffered and will continue to suffer damages in an amount to be determined at trial, but in excess of $1,000,000.00.

**COUNT II**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(AS AGAINST DEFENDANT AGRIAN)**

61. AgJunction repeats and realleges paragraphs 1 through 60 above as if specifically incorporated herein.

62. There was an implied covenant of good faith and fair dealing in the Agreement between AgJunction and Defendant Agrian.  Each party promised not to do anything that would deprive the other party thereto of the benefits of the Agreement. The covenant imposed upon Defendant Agrian the duty to refrain from improperly accessing, using, or disclosing AgJunction's confidential information.

63. Defendant Agrian has breached the implied covenant of good faith and fair dealing by unlawfully accessing and using AgJunction's confidential and proprietary software system for purposes beyond the limited scope of acceptable access and use defined in the Agreement to unfairly compete with AgJunction.

64. AgJunction fully performed its duties pursuant to the Agreement.

65. As a direct and proximate result of Defendant Agrian's failure to honor its obligations under the Agreement, AgJunction has suffered and will continue to suffer damages in an amount to be determined at trial, but in excess of $1,000,000.00.

## COUNT III

## BREACH OF CONTRACT (AS AGAINST DEFENDANTS DEARBORN, HUNT, DEDMON, NERPEL, ANDERSON)

66. AgJunction repeats and realleges paragraphs 1 through 65 above as if specifically incorporated herein.

67. The Employee Defendants, and each of them, entered into employment agreements with AgJunction.

68. As part of the Employee Defendants' respective employment agreements, the Employee Defendants accepted and agreed to confidentiality, no conflict of interest, non-competition, and non-solicitation terms.

69. AgJunction performed all of its obligations under the Employee Defendants' individual employment agreements.

70. The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to maintain the confidentiality of AgJunction's proprietary, and/or secret information and to only access and use AgJunction's confidential information for purposes limited to the scope of their duties as employees of AgJunction.

71. The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly compete, prepare to compete, or in any way directly or indirectly assist others to compete or prepare to compete, with AgJunction's business or anticipated business.

72. The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly engage in, advise, invest in, participate, or perform services for any person or entity that is engaged in any business or enterprise that competes with or plans to compete with AgJunction, or in which any disclosure of AgJunction's proprietary information would be of material value to any person or entity other than AgJunction.

73. The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly solicit, accept from, do business with, or accept business relationships with any person or entity or client with which/whom the Employee Defendants know or should know that AgJunction did any similar business with or competed for business with.

74. The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly hire, engage, or solicit for employment or engagement any person or entity who was an employee or consultant of AgJunction.

75. As a direct and proximate result of the Employee Defendants' failure to honor their respective obligations under their individual employment agreements, AgJunction has suffered and will continue to suffer damages in an amount to be determined at trial, but in excess of $1,000,000.00.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH BUSINESS ADVANTAGE**
**(AS AGAINST ALL DEFENDANTS)**

76. AgJunction repeats and realleges paragraphs 1 through 75 above as if specifically incorporated herein.

77. Defendant Agrian, as an agricultural compliance and regulatory software developer and a precision agronomy software reseller, did not market or sell its own software comparable to AgJunction's software system prior to or during the term of the Agreement.

78. AgJunction is informed and believes that with the assistance of the Employee Defendants, Defendant Agrian has developed its own precision agronomy software that, in addition to having the same features and functionality as AgJunction's software, has the capability of – unlawfully – accessing the data contained in AgJunction's proprietary database.

79. Defendant Agrian, as a reseller of AgJunction's proprietary software and as the new employer of the Employee Defendants, knew the capabilities of AgJunction's software and knew the identities of certain AgJunction customers and the types of companies comprising AgJunction's customer base.

80. AgJunction is informed and believes that Defendant Agrian and/or the Employee Defendants solicited business from one or more of AgJunction's existing and/or potential customers.

81. Except for Defendant Agrian's unauthorized access, use, and/or theft of AgJunction's confidential and proprietary information for the purpose of developing its own precision agronomy software in order to unlawfully compete with AgJunction, AgJunction would have

been reasonably certain to have continued its relationships with its existing customers, renewed its expiring relationships with existing customers, or realized the expectancy of new customer relationships.

82. As a direct and proximate result of Defendants' unlawful conduct, AgJunction has suffered and will continue to suffer damages in an amount to be determined at trial.

**COUNT V**
**KANSAS UNIFORM TRADE SECRETS ACT**
**K.S.A. §§ 60-3320, *et seq.***
**(AS AGAINST ALL DEFENDANTS)**

83. AgJunction repeats and realleges paragraphs 1 through 82 above as if specifically incorporated herein.

84. Upon information and belief, Defendant Agrian willfully, maliciously, knowingly and intentionally accessed, used, and disclosed AgJunction's secret information, including information relating to AgJunction's software, databases, and customer information, without AgJunction's knowledge or consent.

85. Upon information and belief, Defendant Agrian willfully, maliciously, knowingly and intentionally received AgJunction's secret information from the Employee Defendants during the term of Employee Defendants' employment with AgJunction and/or subsequent to the termination of the Employee Defendants' employment with AgJunction.

86. Upon information and belief, Defendant Agrian knew or had reason to know that AgJunction's information was secret.

87. AgJunction took reasonable efforts to maintain the secrecy of its proprietary information and protected data.

88. AgJunction's trade secret information derives independent economic value from not being generally known to and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, including Defendant Agrian, among others.

89. As a direct and proximate result of Defendants' conduct, AgJunction has suffered and will continue to suffer irreparable harm in addition to damages in an amount to be determined at trial.

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION**
**(AS AGAINST ALL DEFENDANTS)**

90. AgJunction repeats and realleges paragraphs 1 through 89 above as if specifically incorporated herein.

91. AgJunction and Defendant Agrian both provide agriculture software applications, products, and services to customers in the agriculture industry, such as agricultural software resellers, agriculture and agrichemical distributors and retailers, and farmers and growers.

92. Despite the fact that Defendant Agrian has not previously developed or offered a product for sale that competes with or is comparable to AgJunction's precision agronomy software system, Agrian now markets, advertises, offers to sell, sells, offers to license, and licenses a software product with allegedly comparable features and functionality to AgJunction's software system, which it licensed from AgJunction under the Agreement.

93. Upon information and belief, Defendant Agrian knowingly and intentionally accessed, used, and disclosed AgJunction's proprietary and confidential information without AgJunction's knowledge or consent to develop its competing software.

94. Upon information and belief, Defendant Agrian knowingly and intentionally received AgJunction's proprietary and confidential information from the Employee Defendants during the respective terms of the Employee Defendants' employment with AgJunction and/or subsequent to the termination of the Employee Defendants' employment with AgJunction in order to develop its competing software.

95. Defendant Agrian's actions constitute unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices.

96. As a direct and proximate result of Defendant Agrian's unlawful conduct, AgJunction has suffered and will continue to suffer irreparable harm and damages in an amount to be determined at trial.

**COUNT VII**
**BREACH OF THE DUTY OF LOYALTY**
**(AS AGAINST DEFENDANTS DEARBORN, HUNT, DEDMON, NERPEL, ANDERSON)**

97. AgJunction repeats and realleges paragraphs 1 through 96 above as if specifically incorporated herein.

98. While employed at AgJunction, the Employee Defendants, and each of them, had a duty to act in good faith and with loyalty to further advance the interests of AgJunction.

99. While employed at AgJunction, the Employee Defendants, and each of them, also had a duty to avoid conflicts between their duty to AgJunction and their own self-interest.

100.     Upon information and belief, during their respective periods of employment by AgJunction, the Employee Defendants took actions, such as competing directly with AgJunction while still employed at AgJunction and secretly providing information to Agrian,

that resulted in direct conflicts of interest with AgJunction, to whom they owed duties of loyalty and good faith.

101.     As a direct and proximate result of the Employee Defendants' unlawful conduct, AgJunction has suffered and will continue to suffer irreparable harm and damages in an amount to be determined at trial.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
## (AS AGAINST DEFENDANTS DEARBORN and HUNT)

102.     AgJunction repeats and realleges paragraphs 1 through 101 above as if specifically incorporated herein.

103.     As Directors of AgJunction, Defendants Dearborn and Hunt had fiduciary duties to AgJunction.

104.     Defendants Dearborn's and Hunt's fiduciary duties to AgJunction included a duty of loyalty to AgJunction, a duty to maintain the confidentiality of AgJunction's proprietary information such as source code and other intellectual property, and a duty to inform AgJunction of unlawful attempts by third parties to solicit AgJunction employees and/or access or disclose AgJunction's confidential information or intellectual property.

105.     Upon information and belief, Defendant Dearborn led a coordinated effort by Agrian and the Employee Defendants to unlawfully solicit Defendants Hunt, Dedmon, Nerpel, and Anderson for employment by Agrian.

106.     The departures of Defendants Dearborn, Hunt, Dedmon, Nerpel, and Anderson from AgJunction's employment occurred seriatim from April 2013 through December 2013, beginning with Defendant Hunt's departure in April 2013 and ending with Defendant Dearborn's departure in December 2013.

107.     During the eight-month period of the coordinated departures, Defendant Dearborn assured AgJunction that the departures were ordinary occurrences.

108.     Upon information and belief, Defendant Dearborn led a further coordinated effort by Agrian and the Employee Defendants to unlawfully access, use, disclose and/or copy AgJunction's confidential and proprietary information and intellectual property for the benefit of Agrian and the Employee Defendants.

109.     As a direct and proximate result of Defendants Dearborn's and Hunt's unlawful conduct, AgJunction has suffered and will continue to suffer irreparable harm and damages in an amount to be determined at trial.

## COUNT IX
## TORTIOUS INTERFERENCE WITH EMPLOYMENT CONTRACTS
## (AS AGAINST DEFENDANTS AGRIAN, DEARBORN, HUNT)

110.     AgJunction repeats and realleges paragraphs 1 through 109 above as if specifically incorporated herein.

111.     The Employee Defendants, and each of them, entered into employment agreements with AgJunction.

112.     Defendant Agrian knew of the Employee Defendants' employment agreements based on, among other things, its prior working relationship with the Employee Defendants pursuant to the Agreement and the fact that the Employee Defendants, and each of them, all left the employ of AgJunction to immediately begin employment with Agrian.

113.     Upon information and belief, Defendants Dearborn, Hunt, and Agrian agreed, planned, and executed a coordinated effort to unlawfully solicit the Employee Defendants for employment by Agrian.

114.    Upon information and belief, Defendants Dearborn, Hunt, and Agrian agreed, planned, and executed a coordinated effort to unlawfully access, use, disclose and/or copy AgJunction's confidential and proprietary information and intellectual property for the benefit of Agrian and the Employee Defendants.

115.    No justification exists for the intentional, willful, and malicious conduct of Defendants Agrian, Dearborn, and Hunt.

116.    As a direct and proximate result of Defendants Agrian, Dearborn's, and Hunt's unlawful conduct, AgJunction has suffered and will continue to suffer irreparable harm and damages in an amount to be determined at trial.

**COUNT X**
**CONSPIRACY**
**(AS AGAINST ALL DEFENDANTS)**

117.    AgJunction repeats and realleges paragraphs 1 through 116 above as if specifically incorporated herein.

118.    The Employee Defendants, and each of them, planned, agreed, and conspired to breach their individual employment agreements, each of which contained confidentiality, no conflict of interest, non-competition and non-solicitation clauses.

119.    Specifically, the Employee Defendants, and each of them, agreed to cease their employment with AgJunction and obtain employment with Defendant Agrian immediately following their termination of employment with AgJunction in order to unfairly compete with AgJunction.

120.    At each of the Employee Defendants' respective exit interviews, the Defendants, and each of them, stated that they did not know where they would next be

employed, but in reality, each of the Employee Defendants knew they would all be leaving AgJunction for Agrian.

121.     Each of the five (5) Employee Defendants left AgJunction in a serial exodus taking place over approximately half a year.

122.     Upon information and belief, AgJunction alleges that the Employee Defendants, and each of them, shared, disclosed, and otherwise conveyed AgJunction's confidential and proprietary information and secrets to Defendant Agrian.

123.     Upon information and belief, Defendant Agrian and the Employee Defendants are continuing to access, use, and disclose AgJunction's proprietary, confidential, and secret information.

124.     As a direct and proximate result of Defendant Agrian's failure to honor its obligations under the Agreement and the Employee Defendants' failure to honor their obligations under their respective employment agreements, AgJunction has suffered and will continue to suffer irreparable harm and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, AgJunction prays that this Court enter judgment:

A)  Preliminarily and permanently enjoining, barring, and prohibiting Defendant Agrian and its officers, agents, servants, employees, and attorneys, and all persons active in concert or participation with them, including the Employee Defendants, from:

    i.     Accessing, using, or disclosing any of AgJunction's trade secrets;

    ii.     Accessing, using, or disclosing any of AgJunction's confidential or proprietary information, including AgJunction's intellectual property;

      iii.    Selling, licensing, marketing, or offering to sell or license any and all software that Defendant Agrian developed using AgJunction's confidential, proprietary, or secret information, including AgJunction's precision agronomy software or data from AgJunction's proprietary database;

      iv.    Engaging in unfair competition with AgJunction.

B) On Counts I, II, III, VII, VIII, and IX, damages in an amount sufficient to compensate AgJunction.

C) On Counts IV, V and VI, damages in the amount of AgJunction's actual loss caused by Defendants' misappropriation of AgJunction's intellectual property; damages sufficient to compensate AgJunction for Defendants' unjust enrichment caused by Defendants' misappropriation of AgJunction's intellectual property; and/or a reasonable royalty for Defendants' unauthorized disclosure and use of AgJunction's intellectual property.

D) On Counts V and VI, an award of punitive or exemplary damages.

E) Interest on all the foregoing amounts, at the legal rate.

F) An award of AgJunction's costs of suit.

G) An award of reasonable attorneys' fees as applicable.

H) Granting AgJunction such other and further relief as the Court may deem necessary, just, or proper.

## JURY DEMAND

AgJunction requests a jury trial on all issues triable of right by a jury.

## DESIGNATION OF PLACE OF TRIAL

AgJunction designates Kansas City, Kansas as place of trial.

Date:   February 16, 2014                    Respectfully submitted,

                                             s/ Mark Brown
                                             Mark Brown (Kansas Bar No. 9638)
                                             mark@midwestip.com
                                             Chris Debacker (Kansas Bar No. 24095)
                                             chris@midwestip.com

                                             LAW OFFICE OF MARK BROWN, LLC
                                             4700 Belleview #210
                                             Kansas City, MO 64112
                                             Telephone: (816) 268-8950
                                             Facsimile:  (816) 502-7898
                                             Gerald P. Dodson (*pro hac vice* pending)
                                             jdodson@carrferrell.com
                                             Robert J. Yorio (*pro hac vice* pending)
                                             yorio@carrferrell.com
                                             Christine Watson (*pro hac* vice pending)
                                             cwatson@carrferrell.com

                                             CARR & FERRELL LLP
                                             120 Constitution Drive
                                             Menlo Park, CA 94025
                                             Telephone:  (650) 812-3400
                                             Facsimile:  (650) 812-3444

                                             *Attorneys for Defendant AgJunction LLC*