Lyons v. Multari*

[Indexed as: Lyons v. Multari]

50 O.R. (3d) 526
[2000] O.J. No. 3462
Docket No. C31362

Court of Appeal for Ontario
Austin, Goudge and MacPherson JJ.A.
September 21, 2000

*Application for leave to appeal to the Supreme Court of Canada dismissed with costs May 3, 2001 (McLachlin C.J., Iacobucci and Bastarache JJ.).  S.C.C. File No. 28254.  S.C.C. Bulletin, 2001, p. 803.

Employment -- Employment contracts -- Non-competition clause -- Courts not generally enforcing non-competition clause if non-solicitation clause would adequately protect employer's interests -- Non-competition clause prohibiting dental surgeon who worked as associate in dental practice for 17 months from working in competing dental practice within five miles of employer's practice for three years not enforceable -- Simple non-solicitation clause would have protected employer's interests.

The plaintiff and the defendant were both oral surgeons. The plaintiff had practised in the same city for almost 25 years and was looking for a new associate. He and the defendant agreed to work together. They signed a short handwritten contract which contained a non-competition clause. The entirety of the clause was: "Protective covenant. 3 yrs. -- 5 mi.". The defendant worked for the plaintiff for about 17 months. As he was required to do under the employment agreement, he gave six months' notice that he was leaving. Six months after he left,

2000 CanLII 16851 (ON CA)

EXHIBIT 2

he and another dentist opened an oral surgery practice in the same city as the plaintiff. That practice contravened the three-year/five-mile restriction in the non-competion clause. The plaintiff brought an action against the defendant for damages for breach of contract. The action was allowed. The trial judge upheld the restrictive covenant, holding that the three-year/five-mile ambit was not overbroad and did not restrict competition generally. The defendant appealed.

Held, the appeal should be allowed.

A non-solicitation clause prohibits a departing employee from soliciting the customers of his or her previous employer. A non-competition clause does more than merely attempt to protect the employer's client or customer base; it attempts to keep the former employee out of the business. Generally speaking, the courts will not enforce a non-competition clause if a non-solicitation clause would adequately protect an employer's interests. In exceptional cases, the nature of the employment may justify a covenant prohibiting an employee not only from soliciting customers, but also from establishing his own business or working for others so as to be likely to appropriate the employer's trade connection through his acquaintance with the employer's customers or clients. There were factors in this case which favoured the broad non-competition clause. The relationship between the plaintiff and the defendant was one between equals. The plaintiff treated the defendant well during their association, taking steps to introduce him to referring dentists and encouraging the dentists to refer patients to the defendant. In spite of these factors, this was not one of those exceptional cases where a non-solicitation clause would not suffice. Although the plaintiff had some proprietary interest in some regular referring dentists, he had no proprietary interest in dentists in the city who had never referred patients to him in the past or who stopped referring patients to him before the defendant's arrival. Second, although it was true that the plaintiff treated the defendant well during their association, this worked as much to his benefit as to the defendant's. Third, the role of the defendant in the plaintiff's oral surgery practice was that of a normal associate. He did not manage the practice.

2000 CanLII 16851 (ON CA)

He was a junior associate dentist who worked for the plaintiff for less than two years. He was not the front man, or principal contact person, for communication with referring dentists. The broad non-competition clause in this case could not be enforced on the basis that it was required to protect confidential information. When he departed, the defendant took no trade secrets or confidential information with him. He never saw a list of the plaintiff's patients and referring dentists. He did know the names of the referring dentists of patients he had treated personally. However, a simple non-solicitation covenant would have prevented him from soliciting those dentists. The non-competition clause in this case was unenforceable. The plaintiff's legitimate interest in protecting his own referring dentists and patients could have been protected by a non-solicitation clause.

2000 CanLII 16851 (ON CA)

Elsley v. J.G. Collins Insurance Agencies Ltd., [1978] 2 S.C.R. 916, 3 B.L.R. 183, 36 C.P.R. (2d) 65, 83 D.L.R. (3d) 1, 20 N.R. 1, apld

Friesen v. McKague (1992), 81 Man. R. (2d) 290, 96 D.L.R. (4th) 341, 30 W.A.C. 290, [1993] 1 W.W.R. 627, 44 C.C.E.L. 280, 45 C.P.R. (3d) 46 (C.A.), consd

Other cases referred to

Canadian Industrial Distributors Inc. v. Dargue (1994), 20 O.R. (3d) 574, 7 C.C.E.L. (2d) 60, 58 C.P.R. (3d) 22 (Gen. Div.); Gordon v. Ferguson (1961), 30 D.L.R. (2d) 420 (N.S.S.C.); Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co., [1894] A.C. 535, [1891-4] All E.R. Rep. 1, 63 L.J. Ch. 908, 71 L.T. 489, 10 T.L.R. 636, 11 R. 1 (H.L.); Simoni v. Sugarman, [2000] N.J. No. 28 (T.D.)

Appeal from a judgment of Daudlin J. allowing an action for damages for breach of contract.

Ronald G. Slaght, Q.C., and Rodney M. Godard, for appellant.

Symon Zucker, for respondent.

The judgment of the court was delivered by

MACPHERSON J.A.: --

## INTRODUCTION

[1] This appeal calls for striking a proper balance, in a professional employment context, between competing values -- on the one side, the sanctity of a clear contract between equals, set against, on the other side, the law's long-standing aversion to contracts that attempt to restrict competition generally. Moreover, the appeal calls for a consideration of the relationship between non-solicitation and non-competition clauses in a professional employment context.

### A. FACTUAL BACKGROUND

1. The parties and the events

[2] In the spring of 1993, Dr. Joseph Multari was completing his specialization training in oral surgery at Dalhousie University in Halifax, Nova Scotia. For family and professional reasons, he decided that he wanted to practise his profession in Windsor, Ontario.

[3] At the same time, Dr. Bernard Lyons, who had practised oral surgery in Windsor for almost a quarter century, was looking for a new associate dentist because his previous associate had decided to move to Thunder Bay.

[4] Dr. Lyons and Dr. Multari met in April and June 1993. Following relatively short negotiations, they agreed to work together. Dr. Lyons continued as the principal dentist in his practice; Dr. Multari became his associate.

[5] The two dentists signed a short handwritten contract of less than a page on June 17, 1993. There were only three provisions in the contract. The first provision dealt with Dr.

2000 CanLII 16851 (ON CA)

Multari's remuneration and the third provision required him to give six months' notice if he decided to leave Dr. Lyons' practice. It is common ground on this appeal that both dentists complied with these provisions.

[6] The second provision was a non-competition clause that limited where Dr. Multari could practise his profession if he chose to leave Dr. Lyons' office. The entirety of this non-competition clause was: "Protective Covenant. 3 yrs. -- 5 mi.".

[7] Dr. Multari worked with Dr. Lyons for about 17 months. On January 18, 1995, he gave his six months' notice. On July 18, he began to work part-time in a dental office located more than five miles from Dr. Lyons' office.

[8] On January 2, 1996, Dr. Multari and Dr. Paul George opened an oral surgery practice in Windsor. It is common ground that this practice was in competition, in a legal sense, with Dr. Lyons' oral surgery practice. Moreover, there is no dispute that Dr. Multari opened his new practice less than six months after he had left Dr. Lyons' practice and that Dr. Multari's new office was located 3.7 miles from Dr. Lyons' office. In short, Dr. Multari breached the second term of the contract he had signed.

[9] Dr. Lyons launched an action against Dr. Multari, seeking damages for breach of contract. Dr. Multari defended the action and counterclaimed, stating that Dr. Lyons had interfered with his practice during the six-month notice period, thus causing him to lose income.

2. The trial judgment

[10] Daudlin J. presided over the trial on October 26, 27 and 28 and November 2 and 3, 1998. He heard evidence called by both sides, including the testimony of Dr. Lyons and Dr. Multari. In a judgment dated December 14, 1998, he upheld the restrictive covenant and granted judgment in favour of Dr. Lyons, and fixed damages at $70,431.60. He dismissed Dr. Multari's counterclaim.

2000 CanLII 16851 (ON CA)

[11] In his reasons, the trial judge rejected Dr. Multari's position that he did not understand what the restrictive covenant meant. He described the term as "elegant in its simplicity". He said that it "was intended and understood by Lyons as drafter and Multari as signator to be a clause restricting the potential opening by Multari within three years of termination at any office located within five miles of the Lyons office."

[12] Having interpreted the restrictive covenant and having rejected Dr. Multari's claim that he did not understand it, the trial judge turned to a consideration of whether the covenant was enforceable. He recognized that the restrictive covenant would be enforceable only if Dr. Lyons had a proprietary interest worthy of legal protection. On this point he reasoned:

> I am of the view, that Dr. Lyons by reason of the practice in which he engaged, namely, a referral practice of oral surgery of necessity and as confirmed by the evidence, had created over a long period of time of practice in the City, a group of dentists who by custom made referrals to his practice.
>
> . . . . .
>
> It was characterized in argument by the defendants as goodwill and even if it can be taken no higher than that, I am of the view that that goodwill, or custom, or business association, can and does qualify as a proprietary interest, which was capable of protection.

[13] The trial judge then went on to consider whether the three-year/five mile ambit of the restrictive covenant was overbroad or restricted competition generally. He concluded that the covenant suffered from neither defect:

> I am of the view that there remained portions of the City from which Dr. Multari could practice, that there was no restriction to his seeking referrals from within the 5 mile area, so long as his office was not located there, and there is no evidence put before me based upon which I could conclude, that the net ultimate effect of the 5 mile or 3

2000 CanLII 16851 (ON CA)

year restriction would be to preclude the possibility of Dr. Multari engaging in the practice at all, and as a consequence denying to the public generally access to his expertise and services.

[14] On the question of damages, the trial judge relied in part on a report prepared by Arthur Andersen and Co. which quantified Dr. Lyons' loss in the first year after Dr. Multari's departure at $117,386. The trial judge accepted this figure but reduced it by 40 per cent to $70,431.60 because of a number of contingencies, including the arrival of new oral surgeons in Windsor, Dr. Lyons' age and the compression of his practice into three or three and one-half days per week, his unwillingness to perform certain types of surgery, the age of his office building and dental facilities, and the absence of any evidence about Dr. Multari's income after he left Dr. Lyons' practice. With respect to the second and third years contemplated by the restrictive covenant, the trial judge stated:

> In my view, the damages for the second and third years are so remote, and the impact of the contingencies so incalculable given the facts addressed at trial as to make such a calculation purely speculative. In the result I award no damages therefore.

In the result, the trial judge awarded Dr. Lyons damages totalling $70,431.60.

[15] With respect to Dr. Multari's counterclaim, the trial judge concluded:

> I am satisfied that Dr. Multari was paid the minimums to which he was entitled by way of draw and that said, absent any evidence supportive of actual losses as a result of denied access to referrals, I would dismiss the counterclaim.

[16] Dr. Multari appeals the trial judge's decision. He does not assert that the trial judge erred in finding that the restrictive covenant was clear and that Dr. Multari understood its meaning and effect. However, he contends that the trial

2000 CanLII 16851 (ON CA)

judge erred in two respects: first, in finding that the restrictive covenant was valid and enforceable; and second, in his assessment of damages. Dr. Multari does not appeal the trial judge's dismissal of his counterclaim.

[17] Dr. Lyons cross-appeals the trial judge's decision respecting damages. He contends that the trial judge erred in his treatment of contingencies and in his refusal to award any damages for the second and third years of Dr. Multari's breach of the restrictive covenant.

B. ISSUES

[18] The appeal and cross-appeal raise the following issues:

Appeal

1. Did the trial judge err in concluding that Dr. Lyons had a proprietary interest in the dentists who referred patients to his specialized oral surgery practice?

2. Did the trial judge err in concluding that the restrictive covenant was not overbroad and did not restrict competition generally?

3. Did the trial judge err in concluding that Dr. Multari's breach of the restrictive covenant caused financial injury to Dr. Lyons entitling him to damages?

Cross-Appeal

1. Did the trial judge err in his assessment of damages:

   (a) by reducing damages by 40 per cent because of contingencies; and

   (b) by not awarding damages for the second and third year of the operation of the restrictive covenant?

C. ANALYSIS

2000 CanLII 16851 (ON CA)

1. Appeal issues

   (a) The restrictive covenant

[19] The general rule in most common law jurisdictions is that non-competition clauses in employment contracts are void. This proposition, and the rationale for it, were succinctly stated by Lord Macnaghten in the leading English case, Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co., [1894] A.C. 535 at p. 565, [1891-4] All E.R. Rep. 1 (H.L.):

> The public have an interest in every person's carrying on his trade freely: so has the individual. All interference with individual liberty of action in trading, and all restraints of trade themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule.

[20] This general rule is not without exception. In Nordenfelt, Lord Macnaghten went on to say that for a restraint on trade to be valid it must be reasonable in the interests of the contracting parties and also reasonable in the public interest.

[21] The position in Canada is similar. The leading Canadian case dealing with non-competition clauses in an employment context is Elsley v. J.G. Collins Insurance Agencies Ltd., [1978] 2 S.C.R. 916, 83 D.L.R. (3d) 1. [See Note 1 at end of document] In Elsley, Dickson J. began his analysis by recognizing that such clauses presented a collision between two long-standing common law principles -- discouraging restraints on trade and respecting freedom of contract. Dickson J. explained, at p. 923:

> The principles to be applied in considering restrictive covenants of employment are well-established . . . A covenant in restraint of trade is enforceable only if it is reasonable between the parties and with reference to the public interest. As in many of the cases which come before the courts, competing demands must be weighed. There is an important public interest in discouraging restraints on

2000 CanLII 16851 (ON CA)

trade, and maintaining free and open competition unencumbered by the fetters of restrictive covenants. On the other hand, the courts have been disinclined to restrict the right to contract, particularly when that right has been exercised by knowledgeable persons of equal bargaining power.

[22] In Elsley, Dickson J. said that a proper reconciliation of these conflicting principles was anchored in the notion of reasonableness, which could only be determined "upon an overall assessment, of the clause, the agreement within which it is found, and all of the surrounding circumstances" (at p. 924).

[23] Importantly, Dickson J. then set out the factors that require special attention when considering a restrictive covenant in an employment contract. In his view, there are three such factors: first, whether the employer has a proprietary interest entitled to protection; second, whether the temporal or spatial features of the clause are too broad; and, third, whether the covenant is unenforceable as being against competition generally, and not limited to proscribing solicitation of clients of the former employee (at p. 925). I will consider these factors in turn as they apply to the restrictive covenant involving Dr. Lyons and Dr. Multari.

  (i) Proprietary interest

[24] The appellant contends that Dr. Lyons had no proprietary interest in the dentists who referred patients to his specialized oral surgery practice. He points out that Dr. Lyons stated during his testimony that the dentists who referred patients to him changed over time. Some dentists referred patients to him regularly, others commenced referrals at a certain point, and still others ceased making referrals. The appellant asserts that this evolving group of referring dentists was insufficient to establish a proprietary interest.

[25] I disagree with this submission for several reasons. First, there is case law supporting the proposition that employers in the professions have a proprietary interest in their client base: see, for example, Gordon v. Ferguson (1961), 30 D.L.R. (2d) 420 (N.S.S.C.) with respect to physicians;

2000 CanLII 16851 (ON CA)

Friesen v. McKague (1992), 96 D.L.R. (4th) 341, [1993] 1 W.W.R. 627 (Man. C.A.) with respect to veterinarians; and Simoni v. Sugarman, [2000] N.J. No. 28 (T.D.) with respect to podiatrists.

[26] Second, I am attracted to the trial judge's analysis on this point. He described Dr. Lyons' practice as one in which long years of service in Windsor had resulted in a core group of dentists who by custom made referrals to him. He characterized these customary referrals as goodwill and concluded that they qualified as a proprietary interest capable of legal protection. In my view, this reasoning is sound, and the finding of a proprietary interest was clearly open to him on the evidence.

[27] Third, the appellant's position that there is no proprietary interest in the referring dentists is undercut by this paragraph in his factum:

> 35. Since Lyons had no special arrangement with the dentists whereby they would refer exclusively to himself, it seems apparent that he can claim "goodwill" only in those dentists who referred regularly and on a continuous basis to him, for he could not be said to have goodwill in dentists who had referred to him one time only, or on a few occasions, or who no longer referred to him. Goodwill connotes regular continuance of patronage.

[28] It seems to me that in this paragraph the appellant recognizes that there are some referring dentists (those who make regular referrals to Dr. Lyons) who do ground a claim in goodwill and proprietary interest. Once it is conceded that Dr. Lyons has a proprietary interest in some of his referring dentists, it becomes necessary to move to the second and third inquiries mandated by Elsley, namely, the temporal and spatial limits of the covenant, and whether the covenant goes too far by restricting competition generally.

    (ii) Temporal and spatial limits of the covenant

[29] The appellant does not assert that if the restrictive

2000 CanLII 16851 (ON CA)

covenant complies with the first and third components of the Elsley test, it would nevertheless fail under the second component of the test relating to its temporal and spatial limits. In my view, such an assertion could not succeed. The case law is replete with covenants similar to the five-mile/three-year covenant in issue in this appeal. Indeed, in Elsley the Supreme Court of Canada upheld a restrictive covenant that was both broader (it prohibited competition in three communities, not just part of one community) and longer (five years, not three) than the Lyons/Multari covenant.

(iii) Non-competition versus non-solicitation

[30] It is quite common for employers to insist that their employees sign a contract containing a non-solicitation clause. This type of provision prohibits a departing employee from soliciting the customers of his or her previous employer.

[31] The non-competition clause is a more drastic weapon in an employer's arsenal. Its focus is much broader than an attempt to protect the employer's client or customer base; it extends to an attempt to keep the former employee out of the business. Usually, non-competition clauses are limited in terms of space and time.

[32] Dr. Lyons chose the more drastic weapon in his dealings with Dr. Multari. The covenant he chose, and to which Dr. Multari agreed, was a non-competition covenant with spatial (five miles) and temporal (three years) limits.

[33] An important question in the case law relates to the relationship between non-solicitation and non-competition clauses. Generally speaking, the courts will not enforce a non-competition clause if a non-solicitation clause would adequately protect an employer's interests. In Elsley, Dickson J. framed the inquiry in this fashion, at p. 925:

> The next and crucial question is whether the covenant is unenforceable as being against competition generally, and not limited to proscribing solicitation of clients of the former employer.

2000 CanLII 16851 (ON CA)

[34] Dickson J. continued, at p. 926:

> Whether a [non-competition] restriction is reasonably required for the protection of the covenantee can only be decided by considering the nature of the covenantee's business and the nature and character of the employment. Admittedly, an employer could not have a proprietary interest in people who were not actual or potential customers. Nevertheless, in exceptional cases, of which I think this is one, the nature of the employment may justify a covenant prohibiting an employee not only from soliciting customers, but also from establishing his own business or working for others so as to be likely to appropriate the employer's trade connection through his acquaintance with the employer's customers. This may indeed be the only effective covenant to protect the proprietary interest of the employer. A simple non-solicitation clause would not suffice.

(Emphasis added)

[35] The question to be addressed in this appeal is whether this is one of those "exceptional cases" where "a simple non-solicitation clause would not suffice".

[36] There are factors in favour of the broad non-competition clause. First, in Elsley Dickson J. said that "the courts have been disinclined to restrict the right to contract, particularly when that right has been exercised by knowledgeable persons of equal bargaining power" (at p. 923). I have no hesitation saying that the relationship between Dr. Lyons and Dr. Multari was one between equals. Although Dr. Lyons had practised oral surgery in Windsor for almost 25 years whereas Dr. Multari was just embarking on his career, the reality is that Dr. Multari was a highly educated man with many employment options open to him. Indeed, he chose an association with Dr. Lyons over one with Dr. Silverman, another oral surgeon in Windsor.

[37] Second, there is no question that, in many respects, Dr. Lyons treated Dr. Multari well during their association. Dr.

2000 CanLII 16851 (ON CA)

Lyons took steps to introduce Dr. Multari to his referring dentists, he encouraged the dentists to refer patients to Dr. Multari, his receptionist identified both doctors when she answered the telephone and he was instrumental in obtaining hospital privileges for Dr. Multari. All of this meant that, as he started his career as an oral surgeon, Dr. Multari had a steady flow of patients and, not inconsequentially, a substantial income (approximately $200,000 per year).

[38] In spite of these factors, in my view the non-competition clause in this appeal does not come within the category of "exceptional cases" as explained by Dickson J. in Elsley. I reach this conclusion for several reasons.

[39] First, although Dr. Lyons had some proprietary interest in some regular referring dentists, he had no proprietary interest in Windsor dentists who had never referred patients to him in the past or who stopped referring patients to him before Dr. Multari's arrival. As Dickson J. expressed it in Elsley: "Admittedly, an employer could not have a proprietary interest in people who were not actual or potential customers" (at p. 926).

[40] Second, although it is true that Dr. Lyons treated Dr. Multari well during their association, it must be said that this worked as much to Dr. Lyons' benefit as to Dr. Multari's. Dr. Lyons paid Dr. Multari a generous base salary. However, for fees above a certain amount, Dr. Multari received a percentage and Dr. Lyons kept the rest. The reality is that both Dr. Multari and Dr. Lyons made a great deal of money because of their association.

[41] Third, the role of Dr. Multari in Dr. Lyons' oral surgery practice was that of a normal associate. It did not even come close to the special role Mr. Elsley played in the insurance business in Elsley.

[42] Mr. Elsley managed the agency's insurance business for 17 years. Dickson J. described his role in this fashion, at p. 920:

2000 CanLII 16851 (ON CA)

> During the seventeen-year period Elsley dealt with the customers of the agency to the almost total exclusion of Collins. To them Elsley was the business, Collins little more than a name. Elsley met the customers, telephoned them frequently, placed their insurance policies and answered their queries.

(Emphasis added)

[43] This description does not apply to Dr. Multari. He did not manage the practice; Dr. Lyons did. Dr. Multari was a junior associate dentist who worked for Dr. Lyons for less than two years, a far cry from 17 years. Dr. Multari dealt with some patients. However, the records of the practice during the relevant two years establish that in every respect, including billings, Dr. Lyons was the dominant figure. Dr. Multari simply handled the patients who were referred to him. On a monthly basis, he received a printout of his patients and the dentists who referred them. However, he was not the front man, or principal contact person, for communication with those dentists. That role, which had been played for almost a quarter century by Dr. Lyons, continued to be played by Dr. Lyons after Dr. Multari's arrival.

[44] In Friesen v. McKague, supra, Scott C.J.M. stated that a non-competition clause should be enforced "where the nature of the employment will likely cause customers to perceive an individual employee as the personification of the company or employer" (at p. 346). In my view, that description does not fit Dr. Multari as he embarked upon his career as an oral surgeon. In the eyes of referring dentists, the personification of Dr. Lyons' practice was the same person it had been for almost 25 years -- Dr. Lyons.

[45] Fourth, in Elsley, Dickson J. stated, at p. 924:

> Although blanket restraints on freedom to compete are generally held unenforceable, the courts have recognized and afforded reasonable protection to trade secrets, confidential information, and trade connections of the employer.

2000 CanLII 16851 (ON CA)

[46] The broad non-competition clause in this appeal cannot be enforced on the basis that it was required to protect confidential information. When he departed, Dr. Multari took no trade secrets or confidential information with him. He never saw a list of Dr. Lyons' patients and referring dentists. He did know, of course, the names of the referring dentists of patients he had treated personally. However, a simple non-solicitation covenant would have prevented him from soliciting those dentists.

[47] Fifth, and admittedly a minor point, there is some evidence in the record that the practice in the dental profession with respect to restrictive covenants did not uniformly accord with Dr. Lyons' practice. When Dr. Multari was negotiating in Windsor in 1993 with a second oral surgeon, Dr. Silverman, the proposed Silverman-Multari contract had a non-solicitation, not a non-competition, clause. Moreover, the non-solicitation clause was not an absolute one; it would have permitted Dr. Multari to solicit patients with whom he had developed relationships during his association with Dr. Silverman.

[48] For all of these reasons, I conclude that Dr. Lyons' non-competition clause is unenforceable. His legitimate interest in protecting his own referring dentists and patients could have been protected by a non-solicitation clause. An established professional person or firm -- be it in the field of dentistry, medicine, engineering, architecture, law or other professions -- will constantly seek to recruit entry level associates to the practice. Such recruitment is good for the established person or firm and for the young associate.

[49] It is natural that many of those relationships will end after a few years. Sometimes the firm will terminate the relationship; in other cases the associate will decide to move on. For professional and personal reasons, many associates will want to continue to work in the same community after they have left their original employer. There is nothing wrong with such a preference. However, the employer has a legitimate interest to protect -- namely, its clients. In my view, in the circumstances of this case, a proper balancing of the interests

2000 CanLII 16851 (ON CA)

of the employer and the departing employee is struck by the line drawn in Elsley. As a general rule, non-solicitation clauses are permissible; "in exceptional cases" only, non-competition clauses will be upheld.

[50] In my view, this is not an exceptional case. Indeed, the Lyons-Multari relationship strikes me as the norm in a professional setting. Accordingly, the non-competition covenant is unenforceable.

(b) Damages

[51] In light of my conclusion that the non-competition covenant is unenforceable, it is not necessary to consider the question of damages. However, for the sake of completeness, I would indicate that I do not agree with the appellant's position on damages.

[52] It needs to be recalled that Dr. Multari resisted all efforts, including a motion brought by Dr. Lyons, to disclose information about his income in the three-year period covered by the covenant. Thus the trial judge did not have the option of calculating damages in terms of the disgorgement of profits by Dr. Multari. In that circumstance, I cannot fault the trial judge's approach to the calculation of damages, namely by attempting to quantify the effect of Dr. Multari's departure on Dr. Lyons' income during the relevant time period. Accordingly, I would not allow the appellant's appeal on this issue.

2. Cross-appeal issues

[53] In his cross-appeal, Dr. Lyons asserts that the trial judge made a damages award, $70,431.60, that was too low. He contends that the trial judge made two errors: first, he reduced damages by 40 per cent because of contingencies; and, second, he erred by not awarding damages for the second and third years of the operation of the restrictive covenant. Again, in light of my conclusion that the covenant is unenforceable, it is not necessary to consider this issue relating to damages. However, again for the sake of completeness, I will state my conclusions.

2000 CanLII 16851 (ON CA)

[54] I do not think that the trial judge erred in factoring contingencies into the calculation of damages. The reduction of damages because of practical, common sense contingencies is entirely acceptable in an employment law context: see, for example, Canadian Industrial Distributors Inc. v. Dargue (1994), 20 O.R. (3d) 574, 58 C.P.R. (3d) 22 (Gen. Div.). Moreover, I think that the contingencies identified by the trial judge -- the arrival of new oral surgeons in Windsor, Dr. Lyons' age and the compression of his practice into three or three and one-half days per week, his unwillingness to perform certain types of surgery, the age of his office building and dental facilities, and the absence of any evidence about Dr. Multari's income after he left the practice -- were sound contingencies. Finally, I cannot quarrel with the trial judge's conclusion that a 40 per cent reduction in damages because of these contingencies was appropriate. Accordingly, I would not give effect to this ground of the cross-appeal.

[55] With respect to the second ground of the cross-appeal, I do think the trial judge erred by not awarding damages for the second and third years of the covenant. His reason for refusing to do so was that in the second and third years the impact of the contingencies was "so incalculable given the facts addressed at trial as to make such a calculation purely speculative."

[56] With respect, I disagree. The contingencies the trial judge identified and applied to the first year would have operated in a similar fashion in the second and third years. In my view, the trial judge should have continued the contingency analysis he performed concerning the first year into the second and third years. Hence, I would have allowed the cross-appeal on this issue and increased the damages in accordance with this methodology.

### DISPOSITION

[57] The appeal is allowed. The plaintiff's action against the defendant is dismissed. The appellant is entitled to his costs of the appeal and of the action.

2000 CanLII 16851 (ON CA)

Appeal allowed.

Notes

Note 1: A non-competition clause usually arises in one of two contexts: first, in the sale of a business where the purchaser wants to ensure that the vendor will not set up a new rival business; and, second, in an employment relationship where an employer will try to guard against an employee leaving his business to establish, or work for, a rival business. Mr. Elsley was subject to both types of clauses. He sold his insurance business; part of the contract of sale was a ten-year non-competition clause. However, the purchaser rehired Elsley as the manager of the new business; part of the employment contract was a non-competition clause prohibiting Elsley from becoming a general insurance agent in Niagara Falls, Stamford and Chippawa for five years after his employment ceased. The litigation in Elsley involved the second of these clauses. Hence it is the leading case dealing with restrictive convenants in an employment context.

2000 CanLII 16851 (ON CA)