H.L. Staebler Company Ltd. v. Allan et al.

[Indexed as: H.L. Staebler Company Ltd. v. Allan]

92 O.R. (3d) 107

Court of Appeal for Ontario,
Borins, Gillese and Juriansz JJ.A.
August 6, 2008

2008 ONCA 576 (CanLII)

Employment -- Contracts -- Restrictive covenants -- Defendants resigning their positions as commercial insurance salesmen with plaintiff, going to work for competitor and soliciting clients from plaintiff -- Defendants' employment contract with plaintiff containing clause prohibiting them from conducting business with any of plaintiff's clients or customers that they handled or serviced at date of their termination for [page108] period of two years -- Clause constituting non-competition clause rather than non-solicitation clause -- Absence of geographical limit combined with blanket prohibition on conducting business rendering non-competition clause unenforceable -- Non-solicitation clause ordinarily sufficient to protect employer's proprietary interests and non-competition clause being warranted only in exceptional circumstances which did not exist in this case.

The defendants A and K were employed by the plaintiff as commercial insurance salesmen. Their employment contracts contained a restrictive covenant which stipulated that for two years after the termination of employment, they were not to conduct business with any of the plaintiff's clients or customers that were handled or serviced by them at the date of their termination. A and K resigned, immediately began working in a similar capacity for the defendant S&H, and solicited

EXHIBIT 4

clients from the plaintiff. The plaintiff brought an action for damages for breach of the restrictive covenant, among other things. The action was allowed. The defendants appealed.

Held, the appeal should be allowed.

The trial judge erred in characterizing the restrictive covenant in this case as a "hybrid" clause. It was a non-competition clause. The restrictive covenant had no geographical limit and contained no limit on the type of work which A and K were prohibited from conducting. To preclude A and K from conducting business of any sort with its clients went well beyond protecting the plaintiff's trade connections. The absence of a geographical limit combined with the blanket prohibition on conducting business rendered the restrictive covenant overbroad and unenforceable.

A non-solicitation clause is normally sufficient to protect an employer's proprietary interest, and a non-competition clause is warranted only in exceptional circumstances. A and K were two of ten commercial insurance salespeople in the plaintiff's employ. They did not play an exceptional role in the business. They were not managers, directors or key employees. They did not stand in a fiduciary relationship with the plaintiff. Although they had close personal relationships with their clients, [this] was the industry norm. A suitably restricted non-solicitation clause would have been reasonable.

Cases referred to
Elsley Estate v. J.G. Collins Insurance Agencies Ltd., [1978] 2
  S.C.R. 916, [1978] S.C.J. No. 47, 83 D.L.R. (3d) 1, 20 N.R.
  1, 3 B.L.R. 183, 36 C.P.R. (2d) 65, [1978] 1 A.C.W.S. 514;
  Lyons v. Multari (2000), 50 O.R. (3d) 526, [2000] O.J. No.
  3462, 136 O.A.C. 281, 3 C.C.E.L. (3d) 34, [2001] CLLC
  210-011, 99 A.C.W.S. (3d) 771 (C.A.) [Leave to appeal to
  S.C.C. refused with costs [2000] S.C.C.A. No. 567], apld
Other cases referred to
Ash Temple Ltd. v. Croney (2000), 46 O.R. (3d) 561, [2000] O.J.
  No. 38, 128 O.A.C. 20, 7 C.C.E.L. (3d) 15, [2000] CLLC

2008 ONCA 576 (CanLII)

210-015, 94 A.C.W.S. (3d) 68 (C.A.); Valley First Financial Services Ltd. v. Trach, [2004] B.C.J. No. 1127, 2004 BCCA 312, 198 B.C.A.C. 261, 30 B.C.L.R. (4th) 73, 131 A.C.W.S. (3d) 660

APPEAL from judgment of Taylor J., [2007] O.J. No. 3460, 160 A.C.W.S. (3d) 104 (S.C.J.) for plaintiff in action for damages for breach of restrictive covenant.

Stephen F. Gleave and Sean M. Sells, for appellants.

R. Ross Wells and Jaqueline Armstrong Gates, for respondent.
[page109]

The judgment of the court was delivered by

GILLESE J.A.: --
Overview

[1] Tim Allan and Jeff Kienapple (the "Employees") worked for H.L. Staebler Company Limited. They sold commercial insurance (property, casualty and automobile) to businesses. On October 15, 2003, the Employees resigned and immediately began working in a similar capacity for Stevenson & Hunt Insurance Brokers (KWC) Limited.

[2] Both of the Employees had written employment contracts with Staebler. The contracts contained a restrictive covenant which stipulated that for two years after the termination of employment, they were not to "conduct business with any clients or customers of H.L. Staebler Company Limited that were handled or serviced by you at the date of your termination". The employment contracts also contained a liquidated damages clause.

[3] Staebler sued the Employees for, among other things, breach of the restrictive covenant. Stevenson & Hunt Insurance Brokers (KWC) Limited and its affiliate Stevenson & Hunt

Insurance Brokers Limited (collectively "Stevenson & Hunt") were also named as defendants.

[4] On October 29, 2003, Staebler obtained an injunction preventing the Employees and Stevenson & Hunt from soliciting their customers. By that date, approximately 118 clients had moved their business from Staebler to Stevenson & Hunt.

[5] After a 13-day trial, Taylor J. found both the restrictive covenant and the liquidated damages clause in each of the employment contracts to be enforceable. By judgment dated September 13, 2007 (the "Judgment"), he ordered the Employees and Stevenson & Hunt (collectively the "appellants") to pay Staebler approximately $2 million in damages. He declined to make the punitive damages award which Staebler had also sought.

[6] In this appeal, the appellants ask this court to declare that the restrictive covenant and the liquidated damages clause are unenforceable.

[7] By way of cross-appeal, Staebler asks this court to allow its claim for punitive damages.

[8] For the reasons that follow, I would allow the appeal and dismiss the cross-appeal.
Background

[9] Staebler is a large insurance broker that sells commercial, personal and group benefits insurance in the region of Waterloo, Ontario. [page110] It is well-established and has operated in the Waterloo region for more than a century. The Philpott family has owned Staebler since 1980 and is active in the business. In 2003, Staebler had over 50 employees, at least 12,000 clients and $5.5 million in annual sales.

[10] Messrs. Allan and Kienapple began employment with Staebler in 1982 and 1995 respectively. Their role was no different than that of any other salesperson selling commercial insurance at Staebler. They sold insurance according to Staebler procedures and earned income based on gross

2008 ONCA 576 (CanLII)

commissions received by Staebler on the annual renewal of policies.

[11] In 2003, Mr. Allan had between 75 and 100 clients. Half had been "gifted" to him and the other half was new business that he had developed. Mr. Kienapple had 100 clients. Thirteen had been "gifted" to him by a retiring salesperson. Of the balance, some were part of a book of business that he had sold to Staebler in 1995.

[12] Salespeople in the insurance brokerage industry develop close relationships with their clients. Staebler managed these relationships by assigning clients to salespersons and by deciding to whom clients would be "gifted" when a salesperson retired. It also controlled the marketing, billing, client finances and relationships with insurance companies.

[13] At Staebler, a number of different employees would provide services to a commercial salesperson's clients. Customer service representatives dealt with clients on a frequent basis. Commercial marketers negotiated clients' contracts with the insurance companies. Sales staff at Staebler -- other than the Employees -- sold personal and group benefits insurance to the Employees' commercial clients.

[14] In early 2000, Stephen Philpott was President and Chief Executive Officer for Staebler. He restructured the management team. He terminated the employment of the Vice President of Marketing and Underwriting and the Vice President of Finance. He also demoted the Vice President of Sales. He appointed his wife, Kim Philpott, to a newly created position which had essentially the same duties as those of the former Vice President of Sales.

[15] The Employees reported to Kim Philpott who, in turn, reported to Stephen Philpott. They were not happy with the changes to the management team and were particularly unhappy with the appointment of Kim Philpott, whom they considered to be unqualified for the position that she filled. Both had approached Steve Philpott about being considered for senior management positions and been told that would not happen.

2008 ONCA 576 (CanLII)

[16] On October 15, 2003, the Employees resigned and immediately began working at Stevenson & Hunt as commercial sales [page111] agents. Both entered into the Stevenson & Hunt standard employment contract which contained the following restrictive covenant (the "Stevenson & Hunt restrictive covenant").

6.01 Non-competition/Non-solicitation. The Employee acknowledges that by reason of his employment with the Employer, he will or may develop a close working relationship with the Employer's and/or its Affiliates' and/or its associates' customers and clients, gain a knowledge of the Employer's and/or its Affiliates' and/or its associates' methods of operation and acquire and be exposed to confidential materials and information, all of which would cause it irreparable harm and injury to the Employer and/or its Affiliates and/or its associates if made available to a competitor or used for competitive purposes. Accordingly, the Employee agrees that:

. . . . .

(ii) The Employee shall not, for any reason, directly or indirectly, without the prior written consent of the Employer, either during the term of this Agreement or for a period of eighteen (18) months following the termination of this Agreement, regardless of how that termination should occur,

    a) solicit or otherwise contact any client or customer or any potential client or customer (for purposes of this section 6.01 (2), "potential client or customer", means any individual, corporation, partnership, association or other entity which was, to the knowledge of the Employee, actively pursued by the Employer as a potential client or customer) of the Employer and/or its Affiliates and/or its associates who or which was a client or customer or potential client or customer of the Employer and/or its Affiliates and/or its associates in the twelve month period immediately proceeding [sic] the

2008 ONCA 576 (CanLII)

        termination, for the purpose of selling any
products or services to that client or customer
or potential client or customer, or for the
purposes of soliciting orders of any products or
services from that client or customer or
potential client or customer, or

    b) provide any services or product to any client or
customer or potential client or customer, of the
Employer and/or its Affiliates and/or its
associates who or which was a client or customer
or potential client or customer of the Employer
and/or its Affiliates and/or its associates in
the twelve month period immediately proceeding
[sic] the termination,

where such products or services are the same as or
substantially similar to or in any way competitive with the
products or services sold by the Employer and/or its
Affiliates and/or its associates at the time of the
termination of this Agreement.

[17] Between October 15 and 29, 2003, as a result of being solicited by the Employees, 118 of their clients transferred their business from Staebler to Stevenson & Hunt. Staebler claimed that by conducting business with these clients, the Employees were in breach of clause 10 of their employment contracts and that it was entitled to damages in accordance with its terms. [page112]

[18] Clause 10 reads as follows:

10. In the event of termination of your employment with the Company, you undertake that you will not, for a period of 2 consecutive years following said termination, conduct business with any clients or customers of H.L. Staebler Company Limited that were handled or serviced by you at the date of your termination.

The damages for any breach of this undertaking shall be a sum equal to 1 1/2 times the commission income received by you or your subsequent employer on account of business conducted on

2008 ONCA 576 (CanLII)

behalf of persons or businesses that were clients/customers of H.L. Staebler Company Limited as at the time of your termination of employment.

[19] The first paragraph of clause 10 shall be referred to as the "Restrictive Covenant".

[20] Staebler obtained an injunction that lasted from October 29, 2003, to October 15, 2005. The injunction prevented the appellants from soliciting or accepting business from any Staebler client. [See Note 1 below]

[21] Staebler had a different restrictive covenant with five of its other commercial salespeople. Under the terms of that covenant, the commercial salesperson was allowed to solicit and conduct business with Staebler clients so long as he or she did not operate within a 50 mile radius of the Waterloo region for two years (the "50 mile radius clause").

The Trial Decision

[22] After setting out the facts and issues, the trial judge referred to Elsley Estate v. J.G. Collins Insurance Agencies Ltd., [1978] 2 S.C.R. 916, [1978] S.C.J. No. 47 for the governing principles. In accordance with those principles, he first determined that the Staebler book of business was an asset which it owned and was entitled to protect.

[23] Thereafter, the trial judge considered whether the Restrictive Covenant was reasonable as between the parties. He did this by asking whether it was reasonably required for Staebler's protection. He gave three reasons for concluding that it was.

[24] The first reason was that the Employees knew that they would not receive the benefit of "gifted" clients unless they signed employment contracts with Staebler.

[25] The second reason given for finding that the Restrictive Covenant was reasonably required for Staebler's protection was based on the close personal relationship between the Employees and their clients. This, the trial judge concluded, meant that

a non-solicitation clause was not sufficient to protect Staebler's [page113] proprietary interest. In so reasoning, the trial judge expressed the view that the Restrictive Covenant was a "hybrid" clause. At para. 23 of the reasons, he explained:

By this I mean the covenant in question is a combination of a non-solicitation and a non-competition clause. The clause prohibits the former employee from conducting business with any clients of Staebler that were handled or serviced by the employee at the date of his or her termination. It does not prevent solicitation. Nor does it stop the former employee from acting as an insurance broker selling commercial insurance, or accepting employment with a competing insurance brokerage, in the Region of Waterloo. The former employee is at liberty to contact other Staebler clients, not handled or serviced by him or her, with a view to enticing those clients to transfer their insurance business from Staebler.

[26] The third reason was that the trial judge found the Restrictive Covenant to be less restrictive than the Stevenson & Hunt restrictive covenant because the latter prohibited solicitation of anyone who was a client or customer or potential client or customer of Stevenson & Hunt in the 12-month period preceding termination of employment.

[27] Thereafter, the trial judge considered whether the Restrictive Covenant was reasonable with reference to the public interest. He concluded that it was reasonable because: (1) it did not prevent the Employees from obtaining lucrative new employment and the new employment was not contingent on the Employees bringing clients with them; and (2) the Restrictive Covenant's two-year duration fell within the industry norm, which he found was between 18 months and three years.

[28] Paragraph 10 of the employment contracts also provided that the damages suffered by Staebler would equal 1.5 times the commission earned by the new employer on account of business from the clients who transferred their accounts as a result of a breach of the Restrictive Covenant. The trial judge found

2008 ONCA 576 (CanLII)

that the actual damages suffered were less than the amount calculated using the damages clause. However, because he found that the stipulated amount was not extravagant and unconscionable when compared with what the actual loss could possibly have been, the trial judge ordered the appellants to pay the stipulated amount in accordance with the penalty clause.

[29] The trial judge concluded that Stevenson & Hunt was liable for inducing breach of contract because (1) Staebler had valid and enforceable contracts with the Employees; (2) Stevenson & Hunt was aware of the existence of these contracts; (3) Stevenson & Hunt intended to and did encourage the Employees to breach the contracts; and (4) Staebler suffered damages as a result of the breaches. [page114]

[30] Although he found the appellants' conduct was cold, calculating, and designed to catch Staebler unprepared to respond quickly, the trial judge did not find the conduct to be vindictive, reprehensible, malicious or sufficiently oppressive and high-handed so as to offend the court's sense of decency. In his view, Stevenson & Hunt made a business decision based on its view that the Restrictive Covenant was unenforceable. He also found that the appellants had litigated appropriately. In declining to award punitive damages, the trial judge was also influenced by the fact that the amount ordered as damages pursuant to the liquidated damages clause in the employment contract was in excess of the actual loss that he found Staebler had sustained.

The Issues

[31] The central issue on appeal is whether the trial judge erred in holding that the Restrictive Covenant was enforceable. If the trial judge was not in error on that matter, the court must determine whether he erred in enforcing the liquidated damages clause.

[32] The issue raised on the cross-appeal is whether the trial judge erred in declining to award punitive damages.

Is the Restrictive Covenant Enforceable?

The governing legal principles

[33] There is no dispute about the legal principles that apply when determining whether a restrictive covenant in an employment contract is enforceable, as those principles have long been settled. Several decades ago in Elsley, the seminal Canadian case on this matter, Dickson J. described the principles as "well-established". [See Note 2 below] He stated the test in plain terms: such a covenant is enforceable "only if it is reasonable between the parties and with reference to the public interest". [See Note 3 below]

[34] This test reflects the competing principles that must be balanced when a court is called on to decide the validity of such a covenant. On the one hand, there is the "important public interest in discouraging restraints on trade, and maintaining free and open competition unencumbered by the fetters of restrictive covenants". [See Note 4 below] Open competition benefits both society and the affected employees. Society benefits from having greater choice and [page115] employees benefit as they have greater employment opportunities. On the other hand, however, "the courts have been disinclined to restrict the right to contract, particularly when that right has been exercised by knowledgeable persons of equal bargaining power". [See Note 5 below]

[35] While an overly broad restraint on an individual's freedom to compete will generally be unenforceable, the courts must recognize and afford "reasonable protection to trade secrets, confidential information, and trade connections of the employer". [See Note 6 below] In the present case, there is no suggestion that trade secrets or confidential information is involved. It is Staebler's "trade connections" that warrant protection.

[36] Reasonableness is the mechanism by which a court decides whether a covenant is "overly broad" or is only that which is reasonably required for the employer's protection. But how is a court to determine whether any given restrictive covenant is "reasonable"? Elsley offers a framework for making such a determination. The starting point is "an overall assessment, of

2008 ONCA 576 (CanLII)

the clause, the agreement within which it is found, and all of the surrounding circumstances". [See Note 7 below] Thereafter, three factors must be considered. First, did the employer have a proprietary interest entitled to protection? Second, are the temporal or spatial features of the covenant too broad? And, third, is the covenant unenforceable as being against competition generally, and not limited to proscribing solicitation of clients of the former employer? [See Note 8 below]

[37] Before turning to an assessment of the Restrictive Covenant and a consideration of the three factors, two additional principles that operate in this area warrant mention.

[38] The first such principle relates to the nature of the restrictive covenant. A restrictive covenant may restrain either competition or solicitation. A non-competition clause restrains the departing employee from conducting business with former clients and customers whereas a non-solicitation clause merely prohibits the departing employee from soliciting their business.

[39] In Lyons v. Multari (2000), 50 O.R. (3d) 526, [2000] O.J. No. 3462 (C.A.), at para. 31, MacPherson J.A. explained the difference between the two types of clauses in these terms:

> The non-competition clause is a more drastic weapon in an employer's arsenal. Its focus is much broader than an attempt to protect the employer's [page116] client or customer base; it extends to an attempt to keep the former employee out of the business. Usually, non-competition clauses are limited in terms of space and time.

[40] Elsley makes it clear that a non-solicitation clause is normally sufficient to protect an employer's proprietary interest and that a non-competition clause is warranted only in exceptional circumstances. At pp. 925 and 926 S.C.R. of Elsley, Dickson J. wrote:

> The next and crucial question is whether the covenant is

2008 ONCA 576 (CanLII)

unenforceable as being against competition generally, and not limited to proscribing solicitation of clients of the former employer. In a conventional employer/employee situation the clause might well be held invalid for that reason.

. . . . .

Nevertheless, in exceptional cases, of which I think this is one, the nature of the employment may justify a covenant prohibiting an employee not only from soliciting customers, but also from establishing his own business or working for others so as to be likely to appropriate the employer's trade connection through his acquaintance with the employer's customers. This may indeed be the only effective covenant to protect the proprietary interest of the employer. A simple non-solicitation clause would not suffice.
(Emphasis added)

[41] Similarly, at para. 33 of Lyons, MacPherson J.A. states, "Generally speaking, the courts will not enforce a non-competition clause if a non-solicitation clause would adequately protect an employer's interests."

[42] In short, a general principle flowing from Elsley and reiterated in Lyons is that a non-solicitation clause -- suitably restrained in temporal and spatial terms -- is more likely to represent a reasonable balance of the competing interests than is a non-competition clause. An appropriately limited non-solicitation clause offers protection for an employer without unduly compromising a person's ability to work in his or her chosen field. A non-competition clause, on the other hand, is enforceable only in exceptional circumstances.

[43] The other legal principle that warrants mention is this: the fact that a clause might have been enforceable had it been drafted in narrower terms will not save it. The question is not whether a valid agreement might have been made but whether the agreement that was made is valid. [See Note 9 below]

The Restrictive Covenant considered in context

[44] In accordance with the framework provided by Elsley, I

begin my determination of the validity of the Restrictive Covenant [page117] by assessing it within the context of the employment relationship between Staebler and the Employees.

[45] For ease of reference, the Restrictive Covenant is set out again now:

> In the event of termination of your employment with the Company, you undertake that you will not, for a period of 2 consecutive years following said termination, conduct business with any clients or customers of H.L. Staebler Company Limited that were handled or serviced by you at the date of your termination.

[46] It will be recalled that the trial judge found that the Restrictive Covenant was a "hybrid" clause. I disagree. On a plain reading of the Restrictive Covenant, it is a non-competition clause. It does not purport to merely restrain the Employees from soliciting the clients and customers they had served when they worked at Staebler, it prohibits the Employees from "conduct[ing] business" with any such clients or customers.

[47] As has been mentioned, Elsley indicates that an assessment of the clause is to be done with due consideration of the "surrounding circumstances". This entails an examination both of the nature of the employer's business and the character of the employee's position. [See Note 10 below] The trial judge made two key findings in this regard: (1) the Employees knew that they would not receive the benefit of "gifted" clients unless they signed employment contracts with Staebler; and (2) the Employees enjoyed close personal relationships with their clients.

[48] In my view, neither finding justifies the trial judge's conclusion that the Restrictive Covenant was reasonable. The findings indicate only that an employment contract with some type of restrictive covenant was warranted. They do not, on their own, provide evidence of "exceptional" circumstances that would justify a non-competition clause, nor do they speak to the reasonableness of the limits of the Restrictive Covenant.

2008 ONCA 576 (CanLII)

In order to decide those matters, the three factors enunciated in Elsley must be considered. I turn to a consideration of those factors now.

A proprietary interest entitled to protection

[49] The trial judge found that Staebler had a proprietary interest in its book of business and that it was entitled to protect that asset. No appeal is taken from this finding.
[page118]

Temporal and spatial limits of the Restrictive Covenant

[50] As MacPherson J.A. noted in Lyons, non-competition clauses are generally limited in space and time. While the Restrictive Covenant has a two-year time limit, it has no geographical limit -- it prohibits the Employees from conducting business with former clients no matter where the Employees are located. Thus, unlike the 50 mile radius clause which Staebler had with other of its commercial salespeople, the Employees could not do business with their former clients even if they relocated outside of the 50 mile radius. By the terms of the Restrictive Covenant, the Employees were prohibited from doing business with their former clients even if they relocated to the far reaches of Ontario or, for that matter, elsewhere in Canada.

[51] Furthermore, there is no limit in the Restrictive Covenant on the type of work which the Employees are prohibited from conducting: the prohibition is against doing "business" with their clients and customers. Thus, had Messrs. Allan and Kienapple chosen to leave the field of commercial insurance and undertaken any other type of work, including work which in no way competed with Staebler, the breadth of the Restrictive Covenant is such that they would have been precluded from conducting business with their clients. To preclude the Employees from conducting business of any sort with their clients goes well beyond protecting Staebler's "trade connections". In this regard I disagree with the trial judge who found that the broad prohibition against "doing business" did not taint the reasonableness of the Restrictive Covenant.

2008 ONCA 576 (CanLII)

[52] I also disagree with the trial judge's conclusion that the Restrictive Covenant was reasonable because it was less restrictive than was the Stevenson & Hunt restrictive covenant. The trial judge was entitled to consider the Stevenson & Hunt restrictive covenant when assessing the reasonableness of the Restrictive Covenant: see Ash Temple Ltd. v. Croney, at para. 33. However, the Restrictive Covenant is a blanket non-competition clause whereas the Stevenson & Hunt covenant is limited to prohibiting solicitation and provision of competing services and products. As an unlimited prohibition on conducting business places a greater restraint on an individual, prima facie, the Restrictive Covenant is more restrictive than is the Stevenson & Hunt clause, even though the latter clause encompasses a wider class of people. Furthermore, the Restrictive Covenant is for a substantially longer period of time (two years as opposed to 18 months). In any event, as the validity of the Stevenson & Hunt clause has not been determined, its usefulness is constrained to being some evidence of industry standards. [page119]

[53] The absence of a geographical limit combined with the blanket prohibition on conducting business renders the Restrictive Covenant "overbroad" and unenforceable. It unreasonably restricts the Employees' economic interests and goes beyond that which is reasonably necessary to protect Staebler's proprietary interest. Accordingly, I find it unnecessary to deal with the appellants' submission that the two-year duration of the covenant was excessive in the industry and imposed an unreasonable restriction on the Employees.

Non-competition versus non-solicitation

[54] My view that Staebler has not discharged the burden of establishing that the Restrictive Covenant was reasonable [See Note 11 below] as between the parties is reinforced on a consideration of the third factor.

[55] A non-solicitation clause is sufficient in conventional employer/employee situations. [See Note 12 below] The Employees were two of ten commercial insurance salespeople that worked for

Staebler. They did not play an exceptional role in the Staebler business -- they were ordinary salespeople. They were not managers, directors or key employees. They did not stand in a fiduciary relationship with Staebler.

[56] Although the Employees had close personal relationships with their clients, that is the industry norm. Those relationships were not exclusive; other Staebler employees served the clients in various capacities. This is an important difference between the role that the Employees played at Staebler and that of Mr. Elsley who "was the business". [See Note 13 below] Another significant difference between the present case and Elsley is that the Employees had no special knowledge of or influence over the Staebler business whereas Mr. Elsley "[had] control . . . of [the employer's] trade connection[s]". [See Note 14 below] Furthermore, and again in contradistinction to Elsley, there was an imbalance of bargaining power between the Employees and Staebler when the employment contracts were negotiated whereas Mr. Elsley bargained as an equal when selling his business and then carried on as its general manager.

[57] The 50-mile-radius clause which Staebler had with five of its other commercial salespeople is significant. Under its terms, those employees could solicit their clients and customers and conduct business with Staebler clients so long as they did so outside [page120] of a 50-mile-radius of the Waterloo region. No explanation was given to justify this differential treatment among Staebler's commercial insurance salespeople which leads me to conclude that Staebler itself viewed the 50-mile-radius clause as sufficient protection of its interest. Clearly, the terms of the Restrictive Covenant are far more restrictive than are those of the 50-mile-radius clause. [See Note 15 below]

[58] Other provincial appellate courts have affirmed that suitably restricted non-solicitation clauses are likely to be found to be reasonable for "ordinary" salespeople in the insurance brokerage industry whereas non-competition clauses are not. See, for example, Valley First Financial Services Ltd. v. Trach, [2004] B.C.J. No. 1127, 2004 BCCA 312.

2008 ONCA 576 (CanLII)

[59] It follows from my determination that the Restrictive Covenant is not enforceable that Stevenson & Hunt are not liable for inducing a breach of contract.

Is the Damages Clause Enforceable?

[60] In light of my conclusion that the Restrictive Covenant is not enforceable, it becomes unnecessary to decide the validity of the liquidated damages clause.

The Punitive Damages Claim

[61] Similarly, in light of my conclusion on the main appeal, the cross-appeal falls away.

Disposition

[62] Accordingly, I would allow the appeal and set aside paras. 2 and 3 of the judgment. I would dismiss the cross-appeal. The appellants are entitled to costs of the appeal and cross-appeal which I would fix at $44,000, inclusive of disbursements and GST. In light of the result on appeal, they are also entitled to their costs of the trial.

[63] The trial judge indicated that he would deal with the matter of trial costs when he dealt with damages arising from the injunction. I accept counsel's joint submission that in view of that, the quantum of trial costs should be left to be determined by the trial judge. However, I would note that, in light of the submissions this court has heard on the "hard ball" tactics that may have been used by the respondent, the scale of such costs is a live issue.

Appeal allowed.

Notes

----------------

Note 1: The injunction was overly broad and on December 20, 2007, the trial judge ordered an inquiry into the appellants' damages arising from the overbreadth.

Note 2: At p. 923 S.C.R.

Note 3: Ibid.

Note 4: Ibid.

Note 5: Ibid.

Note 6: At p. 924 S.C.R.

Note 7: Ibid.

Note 8: At p. 925 S.C.R.

Note 9: Elsley, supra, at p. 925 S.C.R.

Note 10: See Ash Temple Ltd. v. Croney (2000), 46 O.R. (3d) 561, [2000] O.J. No. 38 (C.A.), at para. 33.

Note 11: Elsley, supra, at p. 928 S.C.R.

Note 12: Ibid., at p. 925 S.C.R.

Note 13: Ibid., at p. 920 S.C.R.

Note 14: Ibid., at p. 925 S.C.R.

Note 15: Nothing in these reasons should be taken as deciding the validity of the 50-mile-radius clause.

----------------

2008 ONCA 576 (CanLII)