IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AGJUNCTION LLC,                           )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          Case No.:  2:14-cv-02069-JAR-KGS
                                          )
AGRIAN INC.; JEFFREY DEARBORN;            )
AARON HUNT; MATTHEW DEDMON;               )
DAVID NERPEL; DERRICK ANDERSON            )
                                          )
                    Defendants.           )
_____ )

**MEMORANDUM IN SUPPORT OF**
**OPPOSITION TO MOTION TO DISMISS DEFENDANTS AARON D. HUNT AND**
**MATTHEW C. DEDMON FOR LACK OF PERSONAL JURISDICTION**

**INTRODUCTION**

Plaintiff AgJunction LLC ("AgJunction") filed a Complaint for Injunctive Relief, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Intentional Interference with Business Advantage and Relationships, Misappropriation of Trade Secrets, Unfair Competition, Breach of the Duty of Loyalty, Breach of Fiduciary Duty, Tortious Interference with Employment Contracts, and Conspiracy ("Complaint") against Defendants Agrian, Inc. ("Agrian"), and "Employee Defendants" Jeffrey Dearborn, Aaron Hunt, Matthew Dedmon, David Nerpel, and Derrick Anderson, (collectively, "Defendants") on February 16, 2014.

On March, 17, 2014, Employee Defendants Arron Dr. Hunt ("Hunt") and Matthew C. Dedmon ("Dedmon") moved this Court to dismiss all claims against them, claiming that the

Complaint does not allege facts sufficient in order to establish personal jurisdiction. AgJunction now opposes this motion and asks that the Court deny the Motion to Dismiss Defendants Hunt and Dedmon.  Defendants' Motion is unsupported by both the law and facts and should be denied.

## I.  FACTS

### *The Parties to the Litigation*

Plaintiff AgJunction LLC ("Plaintiff" or "AgJunction") is a limited liability company organized and existing under the laws of the State of Delaware.  AgJunction, as well as its predecessor Hemisphere GPS, Inc., has had a main office in Hiawatha, Kansas since 2008, the year of its formation in Kansas.  This main office is located at 2207 Iowa Street, Hiawatha, KS  66434.  This is also the current location of AgJunction's corporate headquarters.  (Dkt. 1 at ¶ 2, Heiniger Declaration In Support of Opposition to Motion to Dismiss Defendants Hunt and Dedmon ("Heiniger Decl.") ¶ 3).

In November of 2012, AgJunction relocated its corporate headquarters to its Hiawatha, Kansas office, from its Calgary, Alberta office.  AgJunction entirely closed its Calgary, Alberta office in mid-2013.  (Heiniger Decl. ¶ 4).

Defendant Agrian is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 2665 N. Air Fresno Drive, Suite 101, Fresno, California 93727.  Defendant Agrian is a reseller that markets, sells, and licenses agricultural software.  (Dkt. 1 at ¶ 3).

Defendant Jeffrey Dearborn is an individual and a resident of Mississippi.  Defendant Dearborn was employed by AgJunction, most recently as Director of AgJunction's Cloud Services Division, through December 2013.  (Dkt. 1 at ¶ 5).

Defendant Aaron Hunt ("Hunt") is an individual and a resident of Pennsylvania. Defendant Hunt was employed by AgJunction, most recently as Director of Technology of AgJunction's Cloud Services Division, through April 2013.  (Dkt. 1 at ¶ 6).

Defendant Matthew Dedmon ("Dedmon") is an individual and a resident of Pennsylvania.  Defendant Dedmon was employed by AgJunction, most recently as a Senior Developer, through August 2013.  (Dkt. 1 at ¶ 7).

Defendant David Nerpel is an individual and a resident of the State of Washington. Defendant Nerpal was employed by AgJunction, most recently as a Precision Account Manager, through August 2013. (Dkt. 1 at ¶ 8).

Defendant Derrick Anderson is an individual and a resident of Arkansas.  Defendant Anderson was employed by AgJunction, most recently as a Precision Account Manager, through December 2013. (Dkt. 1 at ¶ 9).

On January 24, 2012, Defendant Hunt entered into a Confidentiality and Intellectual Property Agreement with AgJunction as a condition of his continued employment by AgJunction.  In addition to maintaining the confidentiality and secrecy of AgJunction's intellectual property, Defendant Hunt also agreed to abide by conflict of interest, non-competition, and non-solicitation terms, which survive even after Defendant Hunt's departure from AgJunction.  (Dkt. 1 at ¶ 41-43, Ex. C to Dkt. 1).

On January 20, 2012, Defendant Dedmon entered into a Confidentiality and Intellectual Property Agreement with AgJunction as a condition of his continued employment by AgJunction.  In addition to maintaining the confidentiality and secrecy of AgJunction's intellectual property, Defendant Dedmon also agreed to abide by conflict of interest, non-competition, and non-solicitation terms, which survive even after Defendant Hunt's departure from AgJunction.  (Dkt. 1 at ¶ 44-46, Ex. D to Dkt. 1).

### AgJunction's Software

AgJunction's leading Web-based precision agricultural software systems assist growers in the United States and worldwide, among other things, to facilitate the management and reporting of agricultural field data, moving and stationary assets, field operations, and work order status and completion.  (Dkt. 1 at ¶ 12).

AgJunction's software system and the protected, confidential data collected by its system is accessed and used in connection with AgJunction's hardware, including AgJunction's GPS-based interface devices.  (Dkt. 1 at ¶ 13).

AgJunction is the owner of all right, title, and interest in its proprietary software and grants limited, non-exclusive, licenses to certain resellers and retailers to use and access AgJunction's software and related database.  (Dkt. 1 at ¶ 14).

A significant number of AgJunction's confidential and proprietary files are stored exclusively on its file servers which are located at its Hiawatha, Kansas headquarters.  This includes documents that are created by the Microsoft Office Suite of programs, including Microsoft Word files, Excel spreadsheets, PowerPoint presentations, and Outlook e-mail. (Heiniger Decl. ¶ 5).

***Defendants Hunt and Dedmon's Access to, and taking of AgJunction's Software***

Defendants Hunt and Dedmon, were employed by AgJunction and had access to AgJunction's confidential and proprietary information, much of which was stored in Kansas, during the course of their employment.  (Dkt. 1 at ¶ 26; Heiniger Decl. ¶ 5).

Defendants Hunt and Dedmon illegally gained unauthorized access to AgJunction's confidential and proprietary software system and the confidential, protected data contained therein, outside the scope of their respective employment agreements.  (Dkt. 1 at ¶ 28).

Defendants Hunt and Dedmon illegally copied AgJunction's confidential and proprietary software system and the confidential, protected data, a substantial amount of which is stored in Kansas, collected by the software system.  (Dkt. 1 at ¶ 29; Heiniger Decl. ¶ 5).

Defendants Hunt and Dedmon unlawfully provided, and continue to provide, Defendant Agrian access to AgJunction's confidential and proprietary software system and the confidential, protected data contained therein. (Dkt. 1 at ¶ 30).

***Tortious Activity Directed at AgJunction***

By immediately working for Agrian after resigning from AgJunction, Defendants Hunt and Dedmon have breached their respective duties to AgJunction not to compete and to maintain confidentiality.  (Dkt. 25-2 at ¶¶ 23-25).

Defendants Hunt and Dedmon had access to AgJunction's confidential and proprietary information, which would help Agrian create precision agronomy software designed to compete with AgJunction's software.  (Dkt. 25-2 at ¶¶ 13-15, 42, 44).

Less than a year after hiring Defendant Hunt in April 2013, Agrian was competing directly with AgJunction in a field in which it never before had a presence and in which AgJunction itself took a decade to establish its own precision software.  (Dkt. 25-2 at ¶¶ 10, 15).

Defendants Hunt and Dedmon's willful breach of their duties not to compete and to maintain confidentiality has resulted in unfair competition between AgJunction and Agrian. (Dkt. 25-1 at page 5).

As a direct and proximate result of Defendant Hunt and Dedmon's willful and tortious conduct, AgJunction suffered, and continues to suffer, harm in the state of Kansas. (Dkt. 25-1 at page 12).

<u>Trade Secrets</u>

Defendants Hunt and Dedmon had obligations to maintain the secrecy of AgJunction's confidential and proprietary information, including information regarding its software as well as its customer lists.  (Dkt. 25-2 at ¶¶ 16-22).  This information included, but was not limited to, compilations of data such as those embodied in AgJunction's proprietary databases, the methods or algorithms used by AgJunction's proprietary software, and AgJunction's proprietary customer lists including non-public information such as customer preferences.   (Dkt. 25-2 at ¶¶ 45, 47).   All of this constitutes trade secret information belonging to AgJunction.  (Dkt. 25-1 at page 14).

AgJunction derived independent economic value from this information.  First, it sold products that used the software that contained and utilized AgJunction's trade secret

information.   Second, the customer lists helped AgJunction to maintain its business relationships with its customers.  (Dkt. 25-2 at ¶¶ 3, 5).

AgJunction reasonably maintained the secrecy of this trade secret information.  For example, employees with access to the information were required to sign non-compete and confidentiality agreements before obtaining access.  (Dkt. 25-2 at ¶ 23).  Furthermore, this information was not, and is not, freely available to the public.  (Dkt. 25-1 at page 15).

<u>Duty of Loyalty</u>

As employees of AgJunction, Defendants Hunt and Dedmon owed duties of loyalty to AgJunction.  Defendants Hunt and Dedmon had a duty of loyalty to avoid conflicts between their duty to AgJunction and their own self-interest.  (Dkt. 25-2 at ¶¶ 23-24; and Exhibits C and D to Dkt. 1).

Instead of resolving the conflict of interest between AgJunction and Agrian in favor of AgJunction, the Defendants Hunt and Dedmon misappropriated confidential and proprietary information from AgJunction and shared it with Agrian.  (Dkt. 25-2 at ¶¶ 25-27, 42-47, 54-59).  As a result, AgJunction has suffered damage in the state of Kansas in the form of the loss of at least one large customer account and goodwill.  (Dkt. 25-2 at ¶¶ 48-50).

<u>Fiduciary Duty</u>

As a director level employee, Defendant Hunt had a fiduciary duty to AgJunction. (Dkt. 25-2 at ¶ 12).  Defendant Hunt had a fiduciary duty to maintain the confidentiality of AgJunction's proprietary information, to inform AgJunction if third parties were soliciting its employees, and to inform AgJunction if third parties were trying to access AgJunction's confidential or proprietary information.  (Dkt. 25-1 at page 16-17).

Defendant Hunt failed to inform AgJunction that Agrian was soliciting AgJunction's employees including Defendants Dedmon, Nerpel, and Anderson.  (Dkt. 25-2 at ¶¶ 31-33, 35-36).

To compound the suspicious nature of their departures from AgJunction, the five Employee Defendants named in the Complaint left AgJunction in seriatim from April 2013 through December 2013, with not one mentioning in their exit interviews that they intended to work shortly thereafter for Agrian.  (Dkt. 25-2 at ¶¶ 30-35).   Further, Agrian's miraculously quick entry into the agronomy software market with a product that touted the same features as AgJunction's software further suggests a coordinated effort by Defendants Dearborn and Hunt, who both owed a fiduciary duty to AgJunction, to unlawfully access and disclose AgJunction's confidential and proprietary information to Agrian.  (Dkt. 25-2 at ¶¶ 42-43).  As a result, AgJunction was harmed in the state of Kansas.

Tortious Interference with Employee

Defendant Hunt, as director-level employee, knew that Defendants Dedmon, Anderson, and Nerpel had employment contracts with AgJunction, headquartered in Kansas, which contained such provisions as a duty of loyalty, non-competition, and maintenance of confidentiality.  (Dkt. 25-2 at ¶¶ 12, 22-23).  Defendant Hunt intended to have the other Employee Defendants breach the duties set forth in their employment agreements.  The nefarious nature of this inducement is demonstrated by the coordinated and serial manner in which the defendants left AgJunction, the fact that all defendants misrepresented where they were going to work, and the rapidity with which Agrian was able to produce a competing software product.  (Dkt. 25-2 at ¶¶ 30-36, 42-43).   AgJunction subsequently suffered

damage, in the state of Kansas, in the form of at least one large customer account and lost goodwill.  (Dkt. 25-2 at ¶¶ 48-50).

<u>Conspiracy by All Defendants</u>

The Defendants are comprised of one entity and five employees, satisfying the first element of a claim of conspiracy.  From the resultant harm that AgJunction has suffered, the object of the conspiracy was to unlawfully obtain AgJunction's confidential and proprietary information to the benefit of Agrian.  The serial manner in which the five Employee Defendants left AgJunction for Agrian suggests that they had a meeting of the minds to conspire in stealing AgJunction's confidential and proprietary information.  (Dkt. 25-2 at ¶¶ 30-36).  Further, the fact that all five Employee Defendants neglected to mention to AgJunction that they were going to work for Agrian suggests collusion.  (Dkt. 25-2. ¶ 35).  In furtherance of this collusion, Defendant Dearborn, acted in furtherance of the conspiracy while he was in Kansas, by failing to inform AgJunction during his exit interview that he would be working for Agrian.  (Heiniger Decl. ¶¶ 20-21).  Finally, their unlawful taking of AgJunction's confidential and proprietary information, a substantial amount of which is stored in Kansas, and thus the taking occurred in Kansas, has resulted in AgJunction's loss of at least one large customer account as well as industry goodwill.  (Heiniger Decl. ¶ 5; Dkt. 25-2 at ¶¶ 48-50).

***Contact with Kansas***

As more fully set forth in the accompanying Declaration of Heiniger, Defendants Hunt and Dedmon's contacts with the state of Kansas were not minimal as suggested in their Motion to Dismiss.  For example, in addition to receiving their paychecks from AgJunction's

accounts located at US Bank in Topeka, Kansas, both Defendants Hunt and Dedmon **REDACTED**  (Heiniger Decl. ¶¶ 8-13).  In addition, **REDACTED**.  (Heiniger Decl. ¶¶ 14-15).

Furthermore, from at least January 2013 through April 2013, the time Defendant Hunt resigned from AgJunction, he was an active participate in *weekly*, telephonic conferences between AgJunction's offices in Pennsylvania, Arizona and Kansas.  These weekly telephonic conferences were organized and run by Mr. John Lueger, a current employee of AgJunction in Hiawatha, Kansas.  During these meetings, Defendant Hunt reported to Mr. Lueger at the Hiawatha, Kansas headquarters.  (Heiniger Decl. ¶¶ 16-18).

Additionally, after Defendant Hunt left AgJunction, Defendant Dedmon was selected for a special project which required him to obtain an Apple Developer Certification. AgJunction, from its headquarters in Kansas, authorized a payment of $20,000 to be given to Defendant Dedmon and arranged for him to receive the Apple Developer Certification. (Heiniger Decl. ¶ 19).

## II.  ARGUMENT

### A.  *The Court Has Personal Jurisdiction over Hunt and Dedmon*

#### i.  **Standard of Review**

For the purposes of resolving a motion to dismiss, the Court must accept as true all well-pleaded facts and view those facts in the light most favorable to the Plaintiff. *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor Servs.,* 175 F.3d 848, 855 (10th Cir. 1999). The Court may not grant relief "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (*quoting Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)).

### ii.  Standard

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1192).  A plaintiff need only make a *prima facie* showing that jurisdiction exists in order to defeat a motion to dismiss.  *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).   In order to defeat a *prima facie* showing of proper jurisdiction, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir. 1998).

In a diversity jurisdiction case, as here, whether the Court has personal jurisdiction over Defendants is determined by the law of Kansas. *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982) (the law of Kansas is used to determine whether the court has personal jurisdiction over a nonresident defendant as it represents the "law of the forum state.").

"In Kansas, a two-step analysis is used to determine whether a court has personal jurisdiction over a defendant. 'First, the court must determine whether it has jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b). Second, the court must determine whether the exercise of personal jurisdiction comports with constitutional guarantees of due process.' " *Environmental Ventures, Inc. v. Alda Services Corp.*, 19 Kan. App. 2d 292, 295 (Kan. App. 1994); *see also Merriman v. Crompton Corp.*, 146 P.2d 162, 168 (Kan. 2006). A state may exercise two different types of personal jurisdiction over a non-resident defendant: specific or general. *Merriman*, 146 P.2d at 168. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the state. *Id.* The Kansas long-arm statute, K.S.A. § 60-308(b), defines when Kansas exercises specific jurisdiction over a nonresident defendant. *Merriman*, 146 P.2d at 168.

The Kansas long-arm statute is to be liberally construed to assert personal jurisdiction over nonresidents to the full extent permitted by the due process clause of the Fourteenth Amendment to the U. S. Constitution. *Merriman*, 146 P.2d at 179; *Environmental Ventures, Inc.*, 19 Kan. App. 2d at 295; *OMI Holdings*, 149 F.3d at 1090. "This goal can be achieved only by a broad interpretation of the long arm statute that provides for service in the widest possible set of circumstances and in as many cases as the literal wording of the statute permits. This interpretation comports with the general view that a case 'should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable construction of the language could it be said to fall within the statute's terms.'" *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 239-40 (1991).

The due process clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a non-resident defendant so long as there exist minimum contacts between the defendant and the forum state.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  The due process clause may not be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."  *Id.* at 473; *see also Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1358 (10th Cir. 1990).  A single act can support jurisdiction, and a defendant may not avoid jurisdiction "*merely because [he] did not physically enter the forum State*."  *Burger King*, 471 U.S. at 476 n.18 (emphasis added).

Where an individual purposefully directs his activities toward forum residents, a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Burger King Corporation*, 471 U.S. at 473. "[I]f a defendant's actions cause foreseeable injuries in another state, it is, 'at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries.'" *Equifax Services, Inc.*, 905 F.2d at 1358.

For the present situation, it is evident both that the Kansas long-arm statute provides for specific jurisdiction over Defendants and that the Court's assertion of just jurisdiction is constitutionally proper and does not violate due process.

### B.  *Specific Jurisdiction – Kansas Long-Arm Statute*

The Kansas long-arm statute (K.S.A. § 60-308) provides in the relevant part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: . . .
>
> (2) commission of a tortious act within this state; . . . .

K.S.A. § 60-308(b)

Kansas courts have routinely held that Kansas' long-arm jurisdiction is properly invoked under § 60-308(b) where a plaintiff alleges the commission of tortious activity outside Kansas that causes injury within Kansas. *Merriman*, 146 P.2d at 180; *Ling v. Jan's Liquors*, 703 P.2d 731, 734 (Kan. 1985); *Dazey Corp. v. Wolfman*, 948 F. Supp. 969, 973 (D. Kan. 1996). In *Merriman*, the Kansas Supreme Court held that jurisdiction can be obtained under § 60-308(b) regardless of whether physical or just economic injury occurs in Kansas as a result of the tortious activity outside the state. *Merriman*, 146 P.2d at 180.

Here, AgJunction has asserted claims against Defendants Hunt and Dedmon, of breach of contract (Count III of the Complaint – Dkt. 1), intentional interference with business advantage (Count IV of the Complaint – Dkt. 1), Violation of the Kansas Uniform Trade Secrets Act K.S.A. § 60-3320, *et seq.*, (Count V of the Complaint – Dkt. 1), common law unfair competition (Count VI of the Complaint – Dkt. 1), breach of duty of loyalty (Count VII of the Complaint – Dkt. 1), breach of fiduciary duty (as to Defendant Hunt) (Count VIII of the Complaint – Dkt. 1), tortious interference with employment contracts (as to Defendant Hunt) (Count IX of the Complaint – Dkt. 1), and conspiracy (Count X of the Complaint – Dkt. 1), and has further alleged that Defendants Hunt and Dedmon intentionally

caused AgJunction economic injury in Kansas.  There is no reasonable debate that these allegations satisfy the requirements of the Kansas long-arm statute.

### i.   The "tortious act" provision of the Kansas long-arm statute

Pursuant to subsection (b) of the Kansas long-arm statute , K.S.A. § 60-308, a party submits to the jurisdiction of the courts of Kansas if that party, or its agent or instrumentality, commits a tortious act within this state.  "An injury which occurs in Kansas as a result of a tortious act outside the state falls within this subsection of the Kansas long-arm statute. *Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir. 1990) (*citing Ling* 703 P.2d at 734 (Kan. 1985)).  Thus, "if the injury attributable to the tortious activity is felt by a Kansas complainant, the nonresident defendant's physical presence within the forum state is not required for the purposes of K.S.A. § 60-308(b)(2)." *Thermal Components Co. v. Griffith,* 98 F.Supp.2d 1224, 1228 (D. Kan. 2000); *see also Ammon v. Kaplow,* 468 F.Supp 1304, 1309 (D. Kan. 1979)(New York defendants' allegedly false advertisement in national publication causing financial injury to Kansas resident satisfies tortious act provision); *J.E.M. Corp. v. McClellan,* 462 F.Supp. 1246, 1248-54 (D. Kan. 1978) (Illinois defendant's phone call to Kansas resident during which fraudulent representations were made falls within K.S.A. § 60-308(b)(2)).

### 1.   Torts asserted by Plaintiff AgJunction

Plaintiff AgJunction's complaint asserts against both Defendants Hunt and Dedmon the following tortious actions that caused injury to Plaintiff in Kansas: Count IV, intentional interference with business advantage; Count V, violation of the Kansas Uniform Trade

Secrets Act; Count VI, common law unfair competition; Count VII, breach of duty of loyalty. Plaintiff AgJunction's complaint asserts these further tortious actions against Defendant Hunt: Count VIII, breach of fiduciary duty; and Count IX, tortious interference with employment contracts. These tortious activities, for which plaintiff has already pled *prima facie* cases for, all fall under the Kansas long-arm statute and subject Defendants Hunt and Dedmon to personal jurisdiction in the State of Kansas. *See, e.g., Thermal Components*, 98 F.Supp.2d at1228 ("Plaintiff claims that the [former employee] defendants' tortious activities, including misappropriation of trade secrets, interference with business expectancies, breach of fiduciary duty and conversation, subject them to jurisdiction under the tortious act provision of the Kansas long-arm statute. The Court agrees.")

### 2. Civil Conspiracy

In addition to pleading the above tortious activities, Plaintiff AgJunction's complaint also asserts against Defendants Hunt and Dedmon a cause of action arising from civil conspiracy (*see* Count X of Complaint), which warrants its own analysis. As has been routinely held by the courts of this state, "[t]he 'agent or instrumentality' clause [of the Kansas long-arm statute] encompasses civil conspirators." *Aeroflex Wichita, Inc. v. Filardo*, 275 P.3d 869, 881 (Kan. 2012). "A civil conspiracy claim generally requires a plaintiff to establish facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of a common design, intention or purpose of the alleged conspirators." *Id.* at 881-82, *citing Waddoups v. Amalgamates Surger Co.,* 54 P.3d 1054, 1604 (Utah 2002). A claim for civil conspiracy is an actionable tort. *Id.* From a jurisdictional standpoint, Kansas courts have held that "if one conspirator commits acts in

Kansas in furtherance of the conspiracy and that conspirator falls under the long-arm statute, jurisdiction can be obtained as to all conspirators." *Id. citing Merriman,* 282 Kan. at 464*; see also* Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983).

As is established in the Complaint, and further in the attached Declaration of Rick Heiniger, the count of civil conspiracy provides a further avenue for the Court to assert personal jurisdiction of Defendants Hunt and Dedmon. As the Complaint establishes in paragraphs 117 through 124, the Employee Defendants (including Hunt and Dedmon), planned, agreed and conspired to breach their individual employment contracts by agreeing to cease employment with AgJunction and obtain employment with Defendant Agrian immediately following their respective cessations of employment with AgJunction.[1,2] (Dkt. 1 at ¶¶ 118-119). The Complaint further establishes that these actions were taken in order to unfairly compete with AgJunction. (Dkt. 1 at ¶ 119). The Complaint further establishes that at each of the Employee Defendants' exit interviews, the Defendants stated that they did not know where they would next be employed, but that each Employee Defendant knew they would be leaving AgJunction for Agrian. (Dkt. 1 at ¶ 120). At least Employee Defendant Dearborn made this material misrepresentation to Plaintiff AgJunction while in the State of Kansas in or about August 2013, thus constituting an act committed in Kansas in furtherance of the conspiracy. (Heiniger Decl. ¶¶ 20-21).

---

[1] Plaintiff notes that Defendant Hunt's Motion to Dismiss and Declaration in support of same admit this portion of the complaint by stating that Hunt ceased his employment with AgJunction in April, 2013, and started his employment with Defendant Agrian that very same month. (*See* Dkt. 20 at page 3; Dkt. 20-1 ¶ 7).
[2] Plaintiff notes that Defendant Dedmon's Motion to Dismiss and Declaration in support of same also admits this portion of the complaint by stating that Dedmon ceased his employment with AgJunction in August, 2013, and started his employment with Defendant Agrian on August 15, 2013. (*See* Dkt. 20 at page 3; Dkt. 20-2 ¶ 8).

Furthermore, the Complaint establishes that the Employee Defendants shared, disclosed, or otherwise conveyed AgJunction's confidential and proprietary information and secrets to Defendant Agrian.  (Dkt. 1 at ¶ 122).  The Complaint further establishes that the Employee Defendants continue to access, use and disclose to Defendant Agrian AgJunction's proprietary, confidential and secret information.  (Dkt. 1 at ¶ 123).  As established in the accompanying Heiniger Declaration, a substantial portion of AgJunction's confidential and proprietary information and secrets were, at the time alleged in the complaint, and are currently stored in the State of Kansas.  (Heiniger Decl. ¶ 5).  As currently established by the Complaint and by the accompanying declaration of Heiniger, at least the Employee Defendants committed acts in the State of Kansas in furtherance of the conspiracy.  This provides further justification for the Court to find personal jurisdiction over Defendants Hunt and Dedmon.

### C.   Specific Jurisdiction – Due Process Considerations

Once a court determines that defendants' conduct falls within the reach of the Kansas long-arm statute, the court next turns to the issue of whether the exercise of personal jurisdiction comports with due process requirements.  The Tenth Circuit utilizes a two-fold inquiry to determine whether it is appropriate to exercise specific personal jurisdiction over a non-resident defendant.  *OMI Holdings*, 149 F.3d at 1091; *Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1162 (D. Kan. 2002).  First, the court must determine whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there.  *OMI Holdings*, 149 F.3d at 1091; *Rainy Day Books*, 186 F. Supp. 2d at 1162. Within this inquiry, the court must determine

whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claims arise out of or result from actions by the defendant that create a substantial connection with the forum state. *Rainy Day Books*, 186 F. Supp. 2d at 1162. Second, if the defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Id*. This second inquiry requires a determination of whether the exercise of personal jurisdiction is reasonable in light of the circumstances surrounding the case. *Id*.

### i.   Torts other than Civil Conspiracy – Minimum Contacts

Due process' "minimum contacts" are established only where the nonresident defendant has "purposefully availed itself of the privilege of conducting activities in the forum state."  *Burger King*, 471 U.S. at 475.  The "purposeful availment" portion of this the two-part test is necessary so that a nonresident defendant will not be forced to defend himself in a forum where his contacts are only "random, fortuitous, or attenuated."  *Id.*  Where a nonresident defendant causes "foreseeable injuries in another state, it is, 'at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries.'" *Equifax Servs. Inc. v. Hitz,* 905 F.2d 1355, 1359 (10th Cir. 1990) (*quoting Burger King* 471 U.S. at 480).

The situation at hand has much akin to the situation in *Thermal Components Co.*, 98 F.Supp.2d 1224, where the court found personal jurisdiction applied to non-resident former employees and a non-resident competitor that the former employees left plaintiff to work for. There, the court found that the "plaintiff has made the required prima facie showing that the

individual [former employee] defendants' contacts with this state are sufficient to subject them to personal jurisdiction in Kansas.  By misappropriating the trade secrets to which the individual defendants became privy to only as a result of their employment by the plaintiff, and by using that information to interfere with Thermal Components' pre-existing and future contractual relations, defendants' purposeful tortious conduct toward, as well as the individual defendants' previous employment relationship, with a Kansas resident ***establishes the requisite contacts with the forum state***." *Id.* at 1229 (emphasis added).  There, much like here (*see, e.g.,* Heiniger Declaration at ¶¶16-19), each defendant "maintained regular contact with Thermal Components' Kansas office by telephone, mail and electronic data communications." *Id.*  Likewise, the defendants' "payroll and benefits records were maintained and processed by plaintiff's Kansas office." *Id.*

The court in *Thermal Components* went further, however, and found that the "defendants' use of confidential information ***gained as a result of defendants' employment with plaintiff*** to divert clients from Thermal Components constitutes a breach of the duty of loyalty, a duty arising from the individual defendants' previous agency relationship with the plaintiff." *Id*. at 1230 (emphasis added).  As the defendants in *Thermal Components* were former employees of the plaintiff, they "were surely aware that any deleterious effects resulting from the acts complained of here would certainly be realized by the plaintiff ***in its home state.***" *Id.* (emphasis added).

As already mentioned, the situation at hand has much in common with the situation in *Thermal Components.*  Here, as there, the employee defendants, including Defendants Hunt and Dedmon, left their employment with AgJunction to work for an out of state competitor.

Defendants Hunt and Dedmon admitted that they began working for Defendant Agrian in a short time span after leaving AgJunction.  Likewise, Plaintiff AgJunction alleges that the Employee Defendants, including Defendants Hunt and Dedmon, took confidential, proprietary and secret information belonging to AgJunction to Agrian in order for Agrian to rapidly develop a product in direct competition with AgJunction's product, and that Agrian's development of its software within a few months could not have happened without receiving AgJunction's proprietary, confidential and secret information from the Employee Defendants.   In addition, Plaintiff AgJunction also alleges that the Employee Defendants breached their duties of loyalty to AgJunction, and interfered with AgJunction's business relationships and contracts.  Thus, the "constitutionally-required minimum contacts are present here despite the fact" that defendants worked for AgJunction in out-of-state offices. *Id.* at 1230.

### ii.   Civil Conspiracy

In *Merriman*, the Kansas Supreme Court held that the theory of conspiracy jurisdiction can be used to satisfy due process concerns.  *Merriman*, 146 P.2d at 186.  Under this theory, "allegations of a conspiracy to commit a business tort which had foreseeable consequences in Kansas" are sufficient to support a finding of personal jurisdiction over a nonresident defendant.  *Professional Investors Life Ins. Co., Inc. v. Roussel*, 528 F. Supp. 391, 404 (D. Kan. 1981); *see also Professional Investors Life Ins. Co., Inc. v. Roussel*, 445 F. Supp. 687, 696 (D. Kan. 1978) (noting that courts should not allow conspirators to insulate themselves from Kansas process by manipulating the degree of their involvement with the more direct acts of others); *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727

(10th Cir. 1984) ("In meeting the threshold burden of establishing in personam jurisdiction in a diversity action, a Kansas **plaintiff need only make out a prima facie case of the jurisdictional fact of conspiracy** . . .") (emphasis added). This is precisely what AgJunction alleges in this case.

"The conspiracy theory rests in part upon the legal premise that the acts of a conspirator are imputed to all the other co-conspirators. . . . Thus, a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws." *Instituto Bancario Italiano v. Hunter Eng. Co.*, 449 A.2d 210, 225 (Del. 1982); see also *Mackey v. Compass*, 391 Md. 117, 892 A.2d 479 (Md. 2006) ("The conspiracy theory of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.")

In the present matter, as set forth above, the Employee Defendants, including Defendants Hunt and Dedmon, conspired with Defendant Agrian to commit torts designed to injure AgJunction in Kansas.  Defendants admit knowing that AgJunction is headquartered in Kansas, and through such knowledge, know that any harm AgJunction suffered as a result of their conspiracy would occur in Kansas.  The Employee Defendants, including Defendants Hunt and Dedmon, by virtue of their employment agreements with AgJunction, had access to AgJunction's confidential, proprietary and secret information.  Defendants took AgJunction's confidential, proprietary and secret information, which was stored in Kansas, and which they had access to solely because of their employment with AgJunction, with them when they left to joint Defendant Agrian.  Defendant Dearborn likewise acted in furtherance of the

conspiracy in Kansas during his exit interview.  (Heiniger Decl. ¶ 20-21).  The very purpose of the conspiracy was to commit intentional torts against a Kansas resident.  Thus, the Defendants should have reasonably anticipated, and in fact expected, to be haled into court in Kansas to account for their tortious actions.

### iii.  Reasonableness

As has been set forth above, once a plaintiff has demonstrated that a defendant has sufficient minimum contacts with the forum state, the court must then determine whether the exercise of jurisdiction comports with "traditional notices of fair play and substantial justice. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984).  As AgJunction has demonstrated above, the minimum contacts with the forum state of Kansas have been established for Defendants Hunt and Dedmon.  The burden now shifts to the defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.  Defendant has not done so here.

When judging the reasonableness of asserting personal jurisdiction over Defendants Hunt and Dedmon, the court weighs five factors: ""(1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1161 (10th Cir. Wyo. 2010).  As AgJunction has already established minimum contacts, Defendants Hunt and Dedmon's burden is now higher.

1) Burden on the defendant.  Defending this action in Kansas will not be a significant burden on Defendants Hunt or Dedmon.  A single attorney represents all defendants in this action, and Plaintiff supposes that Defendant Agrian is paying all legal bills associated with this case.  This court has recognized the burden of defending a case away from home is not as large a burden as it once was.  *Proud Veterans, LLC v. Ben-Menashe,* 2014 U.S. Dist. LEXIS 24909, 36 (D. Kan. Feb. 26, 2014).  This factor should weigh in favor of Plaintiff.

2) The forum state's interest.  In the present situation, Kansas has a large interest in the outcome of this action.  All of the Defendant Employees, including Defendants Hunt and Dedmon, were employees of a corporation that is headquartered in Kansas.  As alleged in the complaint, these Defendant Employees acted in concert in order to steal confidential, proprietary and secret information from AgJunction for the express purpose of taking that information to another corporation with the intent and outcome of establishing a competing product with AgJunction.  This has resulted in direct economic and reputational harm to AgJunction in Kansas.  States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.  *OMI Holdings*, 149 F.3d at 1096.  Despite Defendants Hunt and Dedmon's assertions, the choice of venue provision in their employment agreements only state that disputes "*may* be brought in Alberta."  The fact that AgJunction is no longer headquartered in Alberta, and no longer has any offices or employees in Alberta means that Alberta has no interest in the outcome of this case.  This factor weighs in favor of AgJunction.

3) Plaintiffs interest: Defendants Hunt and Dedmon admit that Kansas is "the most convenient forum for Plaintiff."  (Dkt. 20 at 13).  Despite Defendants' assertions, Alberta is

no longer a convenient forum as Plaintiff no longer has any presence in Alberta, and neither are any of the Defendants located in Alberta.  Defendants Hunt and Dedmon seem to suggest that AgJunction should have filed separate lawsuits against each Employee Defendant and Defendant Agrian, despite the nexus of operative facts and despite the fact that this would go against the well-established notions of judicial economy, and would also require AgJunction to litigate the same facts in different jurisdictions under different sets of laws.  This factor weighs in favor of AgJunction.

4) Most efficient resolution: In evaluating this factor, the Court considers: "(1) the location of the witnesses, (2) the location of the wrong underlying the lawsuit, (3) what forum's law applies, and (4) whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* The first two elements favor AgJunction as, unlike in *Proud Veterans,* there are witnesses located in Kansas that witnessed the actions of Defendants.  The third factor favors AgJunction as well, and is at worst neutral, as the employment contracts only state that actions to enforce the agreement "***may*** be brought in the Courts of Alberta," not that they must be brought there.  *See* Exhibits C and D to Dkt. 1.  Finally, despite Defendant Hunt and Dedmon's protestations, piecemeal litigation would be a byproduct of bringing this suit in Alberta.  More specifically, any Court in Alberta would have a hard time asserting jurisdiction over Defendant Agrian, which would require AgJunction to bring an additional suit.[3]

5) Share interest of the several states: This factor also weighs in favor of AgJunction. Although the case revolves around a business dispute, it must be noted that the claim of civil

---

[3] This is also ignoring that AgJunction no longer has any presence in Alberta, nor do Defendants Hunt or Dedmon.

conspiracy, to which Plaintiff has made a *prima facie* showing, would favor this case staying in Kansas.  If it were known that Defendants of multiple states could force their victim of civil conspiracy to litigate in each defendants' home state, this would provide incentive for civil conspirators to multiply so long as they all reside in different states.

As shown above, it would not violate the traditional notions of fair play and substantial justice for Defendants Hunt and Dedmon to be haled into court in Kansas.

### III. Distinguishing *Proud Veterans*

In their Memorandum In Support of Motion to Dismiss, Defendants Hunt and Dedmon rely heavily upon *Proud Veterans* in support of their motion.  However, *Proud Veterans* has several key distinguishing features that differ from the litigation at hand.  Perhaps the most importance distinction between the case at hand and *Proud Veterans* is that the current matter deals the Defendant Employees conspiring to leave AgJunction and take with them AgJunction's confidential, proprietary and secret information to their new employer, Defendant Agrian, in order to provide Agrian with the information to interfere with AgJunction's business.  Conversely, *Proud Veterans* has a very complex factual pattern involving a business deal for the purchase of soybeans falling through, but notably *does not* deal with, or even remotely touch upon, the subject of employees leaving a corporation and violating their employment contracts by taking with them vital information owned by their former employer to bring to their current employer.

### IV. Conclusion

For the above reasons, Plaintiff AgJunction respectfully requests that the Court deny Defendants Hunt and Dedmon's Motion to Dismiss.  Kansas' long-arm statute provides the

grounds for establishing personal jurisdiction of Defendants Hunt and Dedmon.  Defendants

Hunt and Dedmon, by virtue of their employment by a company that was and is

headquartered in Kansas, had every reason to believe they could reasonably be haled to court

in Kansas by AgJunction.  Further, by and through their actions, Defendants Hunt and

Dedmon caused harm to AgJunction, and had reason to know that the harm suffered by

AgJunction as a result of their actions would occur in Kansas.  Thus, it would not violate due

process to force Defendants Hunt and Dedmon to litigate this case in Kansas.

Date:   April 7, 2014                          Respectfully submitted,

                                                      s/ Mark Brown
                                                      Mark Brown (Kansas Bar No. 9638)
                                                      mark@midwestip.com
                                                      Chris Debacker (Kansas Bar No. 24095)
                                                      chris@midwestip.com

                                                      LAW OFFICE OF MARK BROWN, LLC

4700 Belleview #210
Kansas City, MO 64112
Telephone: (816) 268-8950
Facsimile:  (816) 502-7898

Gerald P. Dodson (admitted *pro hac vice*)
jdodson@carrferrell.com
Robert J. Yorio (admitted *pro hac vice*)
yorio@carrferrell.com
Christine Watson (admitted *pro hac vice*)
cwatson@carrferrell.com
Bryan J. Boyle (admitted *pro hac vice*)
bboyle@carrferrell.com

CARR & FERRELL LLP
120 Constitution Drive
Menlo Park, CA 94025
Telephone:  (650) 812-3400
Facsimile:  (650) 812-3444

*Attorneys for Defendant AgJunction LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Mark Brown
Attorney