# EXHIBIT A



1 of 1 DOCUMENT

IN THE MATTER OF a Commercial General Insurance Policy Issued to the Town of Rocky Mountain House by Alberta Municipal Insurance Exchange for the Period Following January 30, 2002 Between The Town of Rocky Mountain House, Applicant, and Alberta Municipal Insurance Exchange and Zurich Insurance Company of Canada, Respondents

**INDEXED AS:** Rocky Mountain House (Town) v. Alberta Municipal Insurance Exchange

Docket: 0603 12891 ; Registry: Edmonton

Alberta Court of Queen's Bench
Judicial District of Edmonton

**JUDGES:** G.A. Verville J.

*[2007] A.J. No. 992; 2007 ABQB 548; 2007 AB.C. LEXIS 1019*

**DATE INFORMATION:** July 20, 2007 Judgment: September 6, 2007. Released: September 7, 2007.

**JUDGMENT DATE:** September 6, 2007

**COUNSEL:**
[*1]

Sydney A. Sabine (Duncan & Craig LLP): for the Applicant.

Shawn R. Sipma (Parlee McLaws LLP): for the Respondents.

**JUDGMENT:**
**Reasons for Judgment**

G.A. VERVILLE J.:--

**INTRODUCTION**

[1] The Town of Rocky Mountain House (the "Town") seeks an order against Alberta Municipal Insurance Exchange ("MUNIX") and Zurich Insurance Company of Canada ("Zurich"), ("the Insurers") declaring *inter alia*:

    a.   that the Insurers have an obligation to defend the Town in an action between Diamond J. Industries ("Diamond") and the Town ("Action") under a commercial general liability policy and excess policy issued to the Town; and

    b.   that the Insurers must pay to the Town all expenses incurred by the Town to date in defence of the Action including legal fees on a solicitor and his own client basis, together with all other reasonable expenses.

**BACKGROUND**

[2] MUNIX insured the Town under a commercial general liability policy (the "Policy") between January 30, 2002 and December 31, 2006. Zurich issued an excess commercial general liability policy ("the Excess Policy") which was in

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

effect at the material time in question. Counsel have advised that the material wording in both policies is [*2]   the same with respect to the issue of coverage.

[3] The Action against the Town was commenced by way of Statement of Claim on May 2, 2003. The Town advised MUNIX of the Action in about May of 2003. Diamond filed an Amended Statement of Claim on November 30, 2004.

[4] Diamond alleges loss and damage associated with loss of possession of a parcel of land owned by the Town (the "Land"). The Insurers have denied a duty to defend the Town, maintaining that the true nature of the alleged claims sound in breach of contract, for which coverage is not provided for in the Policy.

**OVERVIEW OF FACTS AS PLED IN AMENDED STATEMENT OF CLAIM**

[5] Commencing on December 11, 1986, Diamond leased land from TransAlta Utilities Corporation ("TransAlta") under a series of agreements for the purpose of carrying out a gravel mining operation. On March 20, 1995 TransAlta granted Diamond a right of first refusal to purchase the Land should TransAlta ever elect to sell (the "ROFR").When TransAlta decided to sell the Land, Diamond was advised of same and on March 8, 2001 Diamond exercised the ROFR.

[6] After Diamond had exercised the ROFR, the Town approached Diamond and requested that Diamond abandon [*3]   its agreement with TransAlta to purchase the Land so that the Town could purchase the Land directly. In exchange, the Town promised that it would grant Diamond a lease for a 10 year term on the same terms as its current lease agreement with TransAlta. Diamond agreed to this arrangement and sometime after May 5, 2001, the Town purchased the Land from TransAlta.

[7] On March 18, 2002 the Town provided Diamond with a written lease which was not in accordance with the terms the parties had agreed to. Thereafter, despite repeated requests by Diamond that the Town provide it with a written lease on the same terms as the lease it had with TransAlta, no written lease was forthcoming.

[8] From May 5, 2001 until April 22, 2004 Diamond remained in possession of the Land and conducted its operations in accordance with the terms of the lease it held with TransAlta. On April 22, 2004 the Town provided Diamond with an eviction notice advising that Diamond must vacate the Land no later than May 31, 2004.

[9] As a result of Diamond's loss of possession of the Land, it has suffered loss and damages including but not limited to loss of profits, loss of reputation and goodwill, loss of use of the land,   [*4]   relocating and moving costs and reclamation costs.

ISSUES

[10] The primary issue to be determined is whether the Insurers have a duty to defend the Town against the claims brought by Diamond. In arriving at the ultimate conclusion several sub-issues will need to be answered including:

1.   What claims in the Amended Statement of Claim are properly pleaded?

2.   Does the insuring agreement in the Policy cover contractual liability?

3.   Are any of the properly pled claims derivative in nature?

4.   Are there any properly pled non-derivative claims which are covered by the Policy?

**RELEVANT PROVISIONS OF THE POLICY**

[11] The relevant provisions of the Policy are as follows:

**1. Insuring Agreement**

The insurers agree to pay on behalf of the Insured or Indemnify, where required, all sums that the Insured shall become legally obligated to pay or assumed by the Insured under any Contract (as defined herein) as damages because of:

(a) Bodily Injury (as defined herein);

(b) Personal Injury and Advertising Injury (as defined herein);

(c) Property Damage (as defined herein);

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

caused by an Occurrence (as defined herein) within the Policy Territory (as defined herein),   [*5] subject to the Limits of Insurance, Exclusions, Conditions and other terms contained herein.

**4. Exclusions**

(f) This insurance does not apply under Section (c) of the Insuring Agreement to claims:

(i) **Failure to Perform**

For loss of use of tangible property that has not been physically injured or destroyed resulting from:

1)   a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

2)   the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet a specific level of performance, fitness or durability warranted or represented by the Named Insured;

but this Exclusion does not apply to loss of use of other tangible property resulting from physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured.

(ii) **Owned Custody or Control**

For physical injury to or destruction of or loss of use of:

1)   property owned, occupied by or leased to the Insured;

2)   any other property used by or in the care, custody or control [*6]   of the Insured.

It is specifically agreed, however, that only that particular part of any property on premises owned by or rented to the Insured upon which operations are being performed by or on behalf of the Insured at the time of the damage thereto or destruction thereof arising out of such operations shall be considered to be in the care, custody or control of the Insured.

**5. Definitions**

(e) **Property Damage**

"Property Damage" means:

(i) injury to or destruction or loss of use of property caused by an accident during the Policy Period; or

(ii) physical injury to or destruction of tangible property caused by an occurrence during the Policy Period, including loss of use thereof at any time resulting therefrom; or

(iii) loss of use of tangible property that has not been injured or physically destroyed provided such loss of use is caused by an occurrence during the Policy Period.

(f) **Contract or Agreement**

"Contract" or "Agreement" means:

(i) any agreement which is a lease of premises, easement, agreement required by municipal ordinance, railway sidetrack agreement, elevator maintenance agreement; and

(ii) any other agreement assuming the liability of others.   [*7]

(g) **Occurrence**

With respect of Bodily Injury or Property Damage, "Occurrence" includes an accident, including continuous or repeated exposure to substantially the same general harmful conditions, a happening or an event.

...

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

## CONTRACTUAL INTERPRETATION

### General Principles of Contractual Interpretation

[12] The object of the court when interpreting any written contract is to determine and give effect to the intention of the parties. This intention must be found by reading the document as a whole and giving effect and meaning to each provision if at all possible. Therefore, individual terms or provisions in a written contract must be construed in light of their relationship to other terms or provisions. Furthermore, the words in the contract must be given their plain and ordinary meaning: *Scurry-Rainbow Oil Ltd. v. Kasha (1996), 184 A.R. 177, (1996) 135 D.L.R. (4th) 1 (C.A.) at para. 44; Alberta v. Western Irrigation District, 2002 ABCA 200, 312 A.R. 358 at para. 21.*

### Principles Specific to Insurance Contracts

[13] The rules of contractual interpretation  [*8]  applicable to insurance contracts are the same as one would employ when construing any other contract. However, there are additional principles which may be applied given the special nature of the an insurance contract: *Jesuit Fathers of Upper Canada v. Guardian Insurance Co. of Canada, 2006 SCC 21, [2006] 1 S.C.R. 744 at para. 27.* These additional interpretative principles include the following:

    -    The general purpose of insurance: when interpreting an insurance policy the court must keep in mind the underlying economic rational for insurance. Insurance is typically seen as a mechanism for transferring fortuitous risks so that usually the only losses which are covered are unforeseen or accidental: *Non-Marine Underwriters, Lloyd's of London v. Scalera, 2000 SCC 24, [2000] 1 S.C.R. 551* ("*Scalera*"), at paras. 68-69;

    -    Contra Proferentem: insurance contracts typically involve an inequality of bargaining power and accordingly ambiguities are to be construed against the insurer. A corollary of this principle is that coverage provisions (i.e. insuring agreement) are to be broadly [*9]   construed whereas exclusion clauses are to be construed narrowly: *Scalera*, at para. 70; and

    -    Reasonable Expectations of the Parties: in cases where there is ambiguity a court should strive to give effect to the reasonable expectation of the parties. In other words, the court should "be loath to support a construction which would either enable the insurer to pocket the premium without risk or the insured to achieve a recovery which could neither be sensibly sought nor anticipated at the time of the contract": *Scalera*, at para. 71.

## THE DUTY TO DEFEND

[14] The starting point in an analysis of whether an insurer's duty to defend has been triggered is the pleadings: *Scalera*, at para. 74; *Monenco Ltd. v. Commonwealth Insurance Co., 2001 SCC 49, [2001] 2 S.C.R. 699 at para. 28.* In other jurisdictions there has been some debate and confusion as to whether the "pleadings" include all pleadings filed in an action or is limited to the Statement of Claim. In Alberta, the Court of Appeal in *Wi-Lan Inc. v. St. Paul Guarantee Insurance Co., 2005 ABCA 352, 380 A.R. 256* [*10]   has definitively stated that the only relevant pleading is the Statement of Claim: paras. 39-42.

[15] If there is a mere possibility that the facts alleged in the Statement of Claim would require the insurer to indemnify the insured for the claim, the duty to defend is triggered. In this regard, the duty to defend is wider than the duty to indemnify, because it does not matter whether the facts pled in the Statement of Claim differ from the actual facts proven at trial, or whether the claim is frivolous or vexatious. In determining whether the duty to defend has been triggered, a court must assume the facts pled in the Statement of Claim to be true. This rule was articulated in *Bacon v. McBride* (1984), 51 B.C.L.R. 228, *6 D.L.R. (4th) 96,* and adopted by the Supreme Court in *Scalera, supra*. It is set out as follows:

    The pleadings govern the duty to defend -- not the insurer's view of the validity or nature of the claim or by the possible outcome of the litigation. If the claim alleges a state of facts which, if proven, would fall within the coverage of the policy the insurer is obligated to defend [*11]   the suit regardless of the truth or falsity of such allegations. If the allegations do not come within the policy coverage the insurer has no such obligation ...

[16] The following three-step process was set out by the Supreme Court in *Scalera* at paras. 50-52 to determine whether or not a given claim could trigger indemnity:

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

1.    First, a court should determine which of the plaintiff's legal allegations are properly pleaded. In doing so, courts are not bound by the legal labels chosen by the plaintiff. When ascertaining the scope of the duty to defend, a court must look beyond the choice of labels, and examine the substance of the allegations contained in the pleadings. This does not involve deciding whether the claims have any merit; all a court must do is decide, based on the pleadings, the true nature of the claims;

2.    Second, the court should determine if any claims are entirely derivative in nature. The duty to defend will not be triggered simply because a claim can be cast in terms of both negligence and intentional tort. If the alleged negligence is based on the same harm as the intentional tort, it will not allow the insured to avoid the exclusion clause   [*12]   for intentionally caused injuries; and

3.    Third, the court must decide whether any of the properly pleaded, non-derivative claims could potentially trigger the insurer's duty to defend.

### Step One -- Which of the Allegations in the Statement of Claim are Properly Pleaded?

1.    *Claim for Breach of Contract*

[17] The allegations with respect to breach of contract in the Amended Statement of Claim include the following:

-    Diamond has alleged that there was an exchange of promises whereby Diamond agreed to give up its ROFR in exchange for the Town's promise to grant a ten year lease to Diamond (the consideration for the contract);

-    Diamond fulfilled its part of the agreement by giving up its ROFR and abandoning its agreement with TransAlta to purchase the Land;

-    The Town failed to fulfill its part of the agreement, namely, providing Diamond with a 10 year lease on similar terms as the one it previously had with TransAlta (the alleged breach of the contract by the Town); and

-    As a result of the Town's failure to provide Diamond with a 10 year lease, Diamond has suffered loss and damage as set out in the Amended Statement of Claim.

[18] It is [*13]   clear that all the requisite elements for a claim in breach of contract are made out in the Amended Statement of Claim.

2.    *Claim for Negligent Misrepresentation*

[19] The requisite elements for a claim in negligent misrepresentation were set out by the Supreme Court of Canada in *Queen v. Cognos Inc., [1993] 1 S.C.R. 87, 99 D.L.R. (4th) 626 at p. 110* as follows:

1.    There must be a duty of care based on a "special relationship" between the representor and the representee;

2.    The representation must be untrue, inaccurate or misleading;

3.    The representator must have acted negligently in making the representation;

4.    The representee must have relied in a reasonable manner on the negligent misrepresentation; and

5.    The reliance must have been detrimental to the representee in the sense that damage resulted.

[20] The facts as alleged in the Amended Statement of Claim include the following;

-    The Town owed Diamond a duty of care to make accurate and not misleading representations;

-    The Town's representations that it would provide Diamond with a 10 year lease on similar terms as the lease Diamond [*14]   had with TransAlta was untrue because despite repeated demands no lease was ever provided;

-    The Town's representations that it would provided Diamond with a 10 year lease were negligently made;

-    Diamond relied on the representation made by the Town; and

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

- As a result of relying on the Town's representation, Diamond has suffered loss and damage.

[21] I find that the requisite elements for a claim in negligent misrepresentation as set out in *Cognos* are satisfied.

### 3.   *Claim for Proprietary Estoppel*

[22] The three elements which must be satisfied to make out a claim for proprietary estoppel are cited in ***Eberts v. Carleton Condominium Corp. No. 396 (2000), 136 O.A.C. 317* at para. 23 and *Williston v. Canada (Minister of Indian Affairs & Northern Development), 2005 FC 829, 274 F.T.R. 260* at para. 13, aff'd *2006 FCA 316, 354 N.R. 180.* They are as follows:

1.   The owner of land induces, encourages or allows the claimant to believe that he has or will enjoy some right or benefit over the owner's property;

2.   In reliance upon this belief,   [*15]   the claimant acts to his detriment to the knowledge of the owner; and

3.   The owner then seeks to take unconscionable advantage of the claimant by denying him the benefit which he expected to receive.

[23] The facts alleged in the Amended Statement of Claim include the following:

- Diamond was told by the Town that if they relinquish their right to exercise the ROFR they would be granted a 10 year lease on the Land;

- Diamond relied on the Town's representation relinquishing its ROFR in the belief that it would be granted a 10 year lease; and

- Despite repeated requests the Town failed to provide Diamond with a 10 year lease.

[24] I find that the three elements for proprietary estoppel are properly pled in the Amended Statement of Claim.

### 4.   *Claim for Trespass*

[25] The tort of trespass to land is commonly defined as "entering upon, remaining upon or placing or projecting any object upon land that is in the possession of another without lawful justification": *Lim v. Titov, [1997] A.J. No. 963, 208 A.R. 338* at para. 15. In the Amended Statement of Claim Diamond alleges that the Town agreed to remove [*16] topsoil from the Land on a number of occasions but failed to do so and as a result, the cost of removing the topsoil is estimated at $ 160,000.00. Diamond termed this failure to remove topsoil as a "trespass" in the Amended Statement of Claim.

[26] Despite Diamond's label of "trespass" the foregoing facts cannot be said to constitute a trespass as it is commonly defined. In my opinion, this claim can properly be characterized as a simple breach of contract.

### 5.   *Claim for Eviction*

[27] A review of the Amended Statement of Claim suggests that the claim for wrongful eviction is not necessarily a claim in and of itself as much as it is a fact establishing damages arising from the other claims. In other words, before there could be a "wrongful eviction" there first had to be a right to be in possession of the Land. This right could be established based on a contract or arising in equity such as estoppel. I find that the claim for eviction is not properly pled.

#### *Conclusion on Properly Pleaded Claims*

[28] I find that the claims in breach of contract, negligent misrepresentation and proprietary estoppel are property pled in the Amended Statement of Claim.

### *Step   [*17]   Two -- Are any of the Claims Derivative in Nature?*

[29] In determining whether any of the properly pled claims in the Amended Statement of Claim are derivative in nature, it must first be determined whether any of those claims are expressly excluded from coverage in the Policy. The parties are in agreement that the major issue is whether contractual liability is included.

### 1.   *Coverage for Damages Arising out of Breach of Contract*

[30] In *Canadian Indemnity Insurance Co. v. Andrews & George Co., [1953] 1 S.C.R. 19, [1952] 4 D.L.R. 690* ("*Andrews & George*"), the insured, who was in the business of making glue for use in the manufacturing of plywood,

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

sold glue to a lumber company which was defective. The insured settled with the lumber company and then sought to recover that amount from the insurer under a comprehensive business liability policy. The specific policy wording at issue was clause 1 of Endorsement 10 which provided as follows:

TO INDEMNIFY the Insured against the liability imposed by law upon the Insured for damage to or destruction of property of others caused by accident during the policy   [*18]   period.

Endorsement 10 was also subject to the following exclusion clause:

Damage to or destruction of property where the Insured has assumed a liability therefor under the terms of any contract or agreement.

[31] The issue before the Supreme Court of Canada was whether the phrase "imposed by law" in Endorsement 10 included contractual liability. In concluding that contractual liability was not covered, Kerwin and Rand JJ. in concurring reasons considered the wording of Endorsement 11 which reads:

TO PAY on behalf of the Insured all sums which the Insured shall be obligated to pay by reason of the **liability imposed by law upon the Insured or by written contract** for damage to or destruction of property of others of any or every description not hereinafter excepted, resulting solely and directly from an accident due to the operations of the Insured as stated in the said Policy, provided such damage or destruction occurs during the policy period; (emphasis added)

[32] Both Kerwin and Rand JJ. noted the significance of the distinction between "liability imposed by law" in Endorsement 10 and "liability imposed ... by written contract" in Endorsement 11. Accordingly,   [*19]   when reading the policy as a whole, it was clear that the phrase "liability imposed by law" in Endorsement 10 did not contemplate contractual liability: pp. 23 and 25.

[33] Rand J., noted that the lumber company would have an action against the insured in both contract and tort. However, the exclusion clause, which prevents claims in which the insured has a assumed liability under a contract would operate to deny the claim: p. 26. Section 21 of the *Sale of Goods Act*, R.S.B.C. 1948, c. 294, implied a warranty as to the quality or fitness for any particular purpose. Kerwin J. found that this implied warranty constituted an assumption of liability under contract and accordingly barred the claim for indemnity: p. 23.

[34] In *Dominion Bridge Co. Ltd. v. Toronto General Insurance Co., (1962), 32 D.L.R. (2d) 374*, 37 W.W.R. 673 (B.C.C.A.), aff'd *[1963] S.C.R. 362, 40 D.L.R. (2d) 840* ("*Dominion Bridge*"), the insured contracted with the British Columbia Toll Highways and Bridges Authority to supply and install the structural steel work, commonly referred to as "false work", for the Second Narrows Bridge [*20]   in Vancouver. The insured misjudged the strength of steel required for the project and during construction a partially built span collapsed damaging the concrete piers owned by the Authority on which the span was resting. The insured admitted fault, repaired the damaged piers at a significant cost and then brought an action against the insurer under a contractor's public liability policy for indemnity.

[35] The wording at issue in the policy provided as follows:

To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon the Insured by law for damages because of injury to or destruction of property, caused by accident occurring within the Policy Period and while this Endorsement is in force and resulting from or while at or about the work or operations of the Insured designated as an insured risk under a Section or Sections of Statement 4.

[36] An exclusion clause in the policy provided *inter alia* that the above endorsement:

shall not extend to nor cover any claims arising or existing by reason of: ...

(1) liability or obligation assumed by the Insured under any contract or agreement.

[37] The [*21]   trial judge allowed the insured to recover under the policy by distinguishing *Andrews & George, supra.* He found that when an insured is under a liability imposed by law within the coverage, i.e. negligence, and is also under a liability assumed under contract, but the exclusion clause only excludes liability assumed under contract, the exclusion clause will not prevent the claim in negligence.

[38] The Court of Appeal disagreed with the trial judge's comments and interpretation of *Andrews & George*, and held that *Andrews & George* decided that where there is are similarly worded insuring and exclusion clauses in a policy

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

and "there is a happening by reason of which a liability is imposed by law upon the insured, but the insured has entered into a contract assuming a liability or obligation in respect of such a happening then notwithstanding that there is a liability imposed upon the insured by law it is not covered by the insuring clause": p. 377.

[39] It held that on a plain reading, the intent of the insuring agreement read in conjunction with the exclusion clause is that "coverage shall not extend to indemnify [*22]   the insured for a liability imposed by law for damage arising out of an accident, for which at the time it took place the insured would by contract be liable or under obligation to the person whose property is damaged": p. 377.

[40] Pursuant to specific clauses in the contract between the insured and the Authority, the insured had assumed responsibility for any damage to the bridge structure resulting from faulty work. Accordingly, the exclusion clause applied and the insured was not entitled to be indemnified.

[41] In *Moffat Tank Co. v. Canadian Indemnity Co.*, [1974] 1 W.W.R. 688, *208 A.R. 260* (Alta. C.A.) the insured contracted to supply fuel oil storage tanks which turned out to be unfit for their intended use. The insurer refused to indemnify the insured with respect to a judgment entered against it. The relevant policy wording at issue was as follows:

> 2.    Damage to Property of Others - All sums resulting from the liability imposed by law upon the Insured for damage to or destruction of property of others of any or every description, including the loss of use thereof, caused solely and directly by an accident.

> 6.    Products Damage to Property [*23]   of Others - All sums resulting from the liability imposed by law upon the Insured for damage to or destruction of property of others, including the loss of use thereof, arising out of:

> (a) the handling or use of, or the existence of any condition in merchandise, products, or containers, manufactured, sold, handled or distributed by the Insured, which damage or destruction is caused by accident occurring during the policy period but after the Insured has relinquished possession of such merchandise, products, or containers to others and away from premises owned by, leased to, or controlled by the Insured.

> Exclusions

> 10(i)    Under Insuring Agreement No. 6: damage to or destruction of the merchandise, products, containers or completed work out of which the accident arises.

> 10(ii)    Under Insuring Agreement No. 6(a): damage to or destruction of property where the Insured has assumed liability therefor under the terms of any contract or agreement.

> This exclusion shall not apply to liability for a breach of a warranty of condition implied under the sale of goods act.

[42] The trial judge held that the phrase "liability imposed by law" included liability arising under contract.   [*24]   The primary ground of appeal was that the trial judge was required to accept the restricted interpretation of that phrase as pronounced in *Andrews & George, supra:* p. 690.

[43] In dismissing the appeal the Alberta Court of Appeal noted that the inclusion of the phrase "or by written contract" contained in Endorsement 11 and its corresponding absence in Endorsement 10 "loomed large" in the reasoning of Kerwin and Rand JJ. leading to the conclusion in that case that "liability imposed by law" in Endorsement 10 did not include contractual liability: p. 692. The Court of Appeal further noted that insuring clause at issue in this case was "significantly different" than the one in *Andrews & George, supra,* and that if the restricted meaning of "liability imposed by law" were applied, the result would be that the exclusion found in 10(ii) would be meaningless: p. 694.

[44] In this regard Clement J.A. noted at page 699 that:

> An exclusion presupposes a broader coverage from which the specified category of liability is withdrawn. If the insurer did not intend the phrase to include   [*25]   liability arising by contract, there was no need to have made specific provision for such exclusion. More specifically, when the liability of the insured arises by virtue of contract, but in the circumstances of the case liability may also be imposed by the common law or statute, then such liability is within the coverage of "liability imposed by law." In that case, if the contractually assumed liability is to be excluded from the coverage, special provision to that end must be made.

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

[45] Accordingly, "liability imposed by law" included contractual liability. In the end the insured was entitled to coverage because of the exception to exclusion 10(ii) which applied in cases where liability arose because of a breach of warranty implied under the Sale of Goods Act.

[46] In *Acklands Ltd. v. Canadian Indemnity Company* (1985), 64 Man.R. (2d) 315, 16 D.L.R. (4th) 637 (C.A.) ("*Acklands*") the insured terminated approximately 1300 employees as part of a major reorganization resulting in numerous wrongful dismissal claims. The insured requested that the insurer defend these claims and accept responsibility to pay any judgments. The [*26] insurer refused. The specific provision under dispute was "Coverage B - Personal Injury Liability":

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed by law upon the insured or assumed by the insured under contract or agreement, for damages because of personal injury, including but not by way of limitation:

> (a) false arrest, malicious prosecution, wrongful detention, imprisonment, dismissal or humiliation;

> (b) invasion of privacy, wrongful eviction or wrongful entry;

> (c) libel, slander or defamation of character;

> (d) discrimination, except in such jurisdictions whereby legislation, court decisions, or administrative ruling such insurance is prohibited or held to violate the law or public policy of any jurisdiction.

[47] The Court of Appeal accepted the conclusion of the trial judge that the phrase "liability imposed by law" did not include liability resulting from a breach of contract. *Andrews & George, supra,* was cited in support of this conclusion: p. 639.

[48] The phrase "or assumed by the insured under contract or agreement" was also considered [*27] and interpreted to include "tortious liability imposed upon some third party, the responsibility for which had been assumed by the insured under a contract or agreement": p. 639. The Court of Appeal defended this interpretation against suggestions that it is two narrow on two bases. First, such an interpretation is consistent with the fundamental concept of liability insurance as pronounced in the text Insurance Law in Canada (1982), by Brown and Menezes:

> Insurance is a mechanism for transferring fortuitous contingent risks. Losses that are neither fortuitous nor contingent cannot economically be transferred because the premium would have to be greater than the value of the subject matter in order to provide for marketing and adjusting costs and a profit to the insurer. It follows, therefore, that even where the literal wording of a policy might appear to cover certain losses, it does not in fact do so if: (a) the loss is from the inherent nature of the subject matter being insured, or (b) it result from the intentional actions of the insured.

Second, this interpretation is consistent with the language used in the insuring agreement in that the heading "personal injury liability" [*28] and the enumerated list thereunder all suggest tortious, rather than contractual liability: p. 640.

[49] As the claims for wrongful dismissal did not fall within the confines of the interpretation placed on the phrase "assumed by the insured under contract or agreement", the insurer was not required to defend or pay any judgments arising from the suits.

[50] The ruling in *Acklands, supra,* that "liability imposed by law" does not include contractual liability was followed in *Capital Regional District v. General Accident Assurance Co., (1987), 39 D.L.R. (4th) 619,* 15 B.C.L.R. (2d) 224 (C.A.) ("*Capital Regional District*") (which was also a case involving a wrongful dismissal action and nearly identical wording of the insuring agreement); and *Kentville (Town) v. Gestas Inc. (1989), 96 N.S.R. (2d) 339* (S.C.), aff'd *(1990) 96 N.S.R. (2d) 338* (C.A.) (also involving a wrongful dismissal claim).

[51] In *Cultus Lake Park Board v. Gestas Inc*. (1995), 15 B.C.L.R. (3d) 89 (C.A.) the insured was sued for breach of a restrictive [*29] covenant in a lease. At trial the insured was found liable and damages were assessed at $ 30,000.00. The insured then sought to have this amount plus costs, interest, legal fees and disbursements paid under a municipal liability insurance policy. The insurer asserted that the policy at issue did not provide coverage for contractual liability. The insuring agreement under the policy provided as follows:

> To pay, on behalf of the Insured, all sums which the Insured is legally obligated to pay to a third party as damages for any claim resulting from:

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

Coverage C: Municipal Administration

[52] Municipal administration was defined as:

> Any act, duty, privilege or decision incumbent on persons elected to the municipal council or legally
> appointed to administrative functions or to a board, commission or special purpose body insured under
> this policy, when acting within the scope of their functions, concerning the general administration of the
> municipality, including in particular administration of municipal finances and public funds, supervision,
> the charging of taxes and the control of expenses, the awarding of approval of permits, bids and any oth-
> er task carried out on behalf of [*30]   the municipality.

[53] In concluding that "legally obligated to pay" included both tortious and contractual liability, *Acklands, supra,*
*Andrews & George, supra,* and *Capital Regional District, supra,* were distinguished. The Court of Appeal determined
that the results in those cases turned on the reading of the coverage terms as a whole and when the insuring agreement
was taken in the context of the policy as a whole it was clear that the particular indemnity sought by the insured was not
provided by the policy, stating:

> This was because it was clear on the face of the coverage provisions that the parties had contem-
> plated coverage for claims in contract in certain cases but not in the particular cases for which the insured
> sought indemnity. Thus the words "obligated to pay by reason of the liability imposed by law" were con-
> strued not to include the particular contractual liability for which the insured sought indemnity. To put it
> another way, in those cases it was clear by the coverage words that the parties had put their mind to con-
> tractual [*31]   liability in certain circumstances, and when those circumstances did not exist the courts
> were not prepared to read into the words "liability imposed by law" a contractual liability that was not
> provided for in other coverage provisions: para. 24.

[54] The Court of Appeal determined that when the phrase "legally obligated to pay" was read in the context of the
entire policy, it was clear that contractual and tortious liability were intended to be covered. In particular, it was noted
that the words used in the definition of "municipal administration" were so expansive that it could not be suggested that
a claim for indemnity in the circumstances of this case could be excluded: paras. 25-26.

[55] In my opinion, while the reasoning and outcome of the cases discussed above can assist a court in determining
whether the phrases "legally obligated to pay" or "imposed by law" include contractual liability, one must still employ
general principles of contractual interpretation and construe the wording of the insuring clause in the context of the pol-
icy as a whole. This is the only way to definitely determine the intention of the parties. By way of example, this ap-
proach can be seen in [*32]   the following cases discussed above:

> -   *Andrews & George* in which the majority of the Supreme Court of Canada construed the lan-
>     guage in Endorsement 10 in the context of the policy as a whole and the inclusion of "by written con-
>     tract" elsewhere in the policy led to the result that contractual liability was not included;

> -   *Moffat Tank* in which the Alberta Court of Appeal refused to apply the meaning the Supreme
>     Court of Canada attributed to "imposed by law" because the insuring clause at issue was "significantly
>     different" and to do so would render the exclusion clause meaningless; and

> -   *Cutless Lake* where the British Columbia Court of Appeal explicitly decided the outcome of
>     that case by construing the insuring clause in the context of the particular policy and indicating that case
>     law in which "legally obligated to pay" has been interpreted to exclude contractual liability, was done so
>     based on the specific policy at issue.

[56] In addition to the case law discussed above, other cases have specifically mentioned the necessity to construe
words and phrases in a CGL policy in the context of the policy as a whole and that general principles of what [*33]
insurance contracts typically cover cannot ultimately determine coverage: *Bridgewood Building Corp. (Riverfield) v.*
*Lombard General Insurance Co. of Canada, [2005] O.J. No. 2083* (S.C.J.) at para. 34, aff'd (2006), *266 D.L.R. (4th)*
*182, 79 O.R. (3d) 494; Alie v. Bertrand and Frere Construction Co., (2003), 222 D.L.R. (4th) 687, 62 O.R. (3d) 345 at*
*para. 26; Westridge Construction Ltd. v. Zurich Insurance Co., 2005 SKCA 81, 269 Sask.R. 1 at para. 34*
("*Westridge*"); *S.(J.A.) v. Gross, 2002 ABCA 36, 299 A.R. 111 at para. 29.* If this were not the case it would be difficult
for an insurer to provide coverage for claims which courts have not typically decided to be within CGL policies.

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

[57] By way of example in *Vancouver General Hospital et al. v. Scottish & York Insurance Co., (1987), 41 D.L.R. (4th) 657,* 15 B.C.L.R. (2d) 178 (B.C.S.C.), the court rejected the insurer's argument that the principle that insurance coverage [*34] typically only covers losses which are accidental and unexpected should govern the result. The British Columbia Court of Appeal reversed the ultimate conclusion in this case but expressly upheld the trial judge's response to the insurer's argument. The trial judge's response was as follows:

> As a general proposition, it is true that liability insurance policies usually provide the insured with protection against responsibility for accidental or unexpected losses caused by the insured. Such a general proposition cannot, however, assist me in the interpretation of the language used in this insurance policy. The defendant does not suggest that an insurer may not lawfully provide protection against a loss resulting from an intentional act of the insured. The question is not what liability polices usually cover, but rather, what this particular policy covers. To answer that question one must look to the specific wording of the policy at issue.

[58] While it is true that cases involving consideration of identical or nearly identical policy wording will be highly persuasive, caution must still be used. By way of example, the insuring agreement in *Acklands, supra,* [*35] ("the insured shall become obligated to pay by reason of the liability imposed by law upon the insured or assumed by the insured under contract or agreement") is very similar to the one contained in the Policy ("the Insured shall become legally obligated to pay or assumed by the Insured under any Contract"). However the remainder of the wording in the policies in each case is different.

[59] It is therefore necessary to apply the case law and the principles of contractual interpretation to the Policy. The question which needs to be determined is whether the insuring agreement in the Policy covers contractual liability and if so, what type of contractual liability is covered.

[60] In my opinion the main clue as to what the parties intended by the phrase "assumed by the Insured under any Contract" can be gleaned by a close examination of the definition of "contract or agreement" set out in definition 5(f) in the Policy. The list of agreements set out in 5(f)(i) are of a type commonly referred to as "insured contracts" in other CGL policies and the common factor among all of them is that in such an agreement it would be customary for the insured to assume the tortious liability of [*36] others: Gordon Hilliker, *Liability Insurance Law in Canada*, 4th ed. (Markham: LexisNexis Canada Inc., 2006) at 212, n. 8.

[61] This list of insured contracts in 5(f)(i) is followed by 5(f)(ii) stating "and; any other agreement assuming the liability of others." As such, the *ejusdem generis* rule of construction may be invoked. The *ejusdem generis* rule has been said to apply in cases where a provision lists series of particular items that share a common characteristic and the list is then completed by a more general phrase. In such a case this rule operates so that the scope of the general phrase is limited by the common characteristics of the particularized items: John D. McCamus, *The Law of Contracts* (Toronto: Irwin Law Inc., 2005) at 724-725. In *Alberta (Treasury Branches) v. SevenWay Capital Corp., 2000 ABCA 194, 261 A.R. 278* (C.A.) at para. 18, the Alberta Court of Appeal noted that the following three elements must be present before this rule will apply:

> (a) the specific words have some common characteristic which constitutes them as a genus;
>
> (b) the specific words do not exhaust a whole genus; and
>
> (c) [*37] there is no indication that the opposite was intended by the parties.

[62] In my view it is an appropriate in this case to invoke the *ejusdem generis* rule and hence, the phrase "any other agreement assuming the liability of others" should refer to the assumption of tortious liability on behalf of another. As such, when this is taken in light of the phrase "assumed by the Insured under any Contract" I find that this refers to tortious liability imposed upon some other party, the responsibility for which had been assumed by the insured under a contract or agreement.

[63] This assumption of a legal obligation is, of course different than direct contractual liability of the insured. I am cognizant of the fact that in *Dominion Bridge, supra* the Supreme Court of Canada found that the phrase "liability or obligation assumed by the Insured under any contract or agreement" referred to the direct contractual liability of the insured. However, given that this phrase appeared in an exclusion clause (as opposed to the insuring agreement) in *Dominion Bridge*, coupled with the principle that the intention of the parties must be discerned by the [*38] wording of the contract in each given case, I find that this case is distinguishable.

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

[64] What is clear from the case law discussed above is that "legally obligated to pay" includes tortious liability. As I have concluded that "assumed by the insured under any contract" refers to contracts in which the insured has taken on the tortious liability of another party, it would not make sense that "legally obligated to pay" would include contractual liability. It is my view that if contractual liability was included, the phrase "assumed by the insured under any contract" would be redundant. Blacks law dictionary defines "contract" as "any agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Under this definition a contract assuming third party liability would also be covered. Accordingly, in this case I find that "legally obligated to pay" does not include contractual liability.

[65] As the rules of contractual interpretation require that the terms or provisions considered must be construed in terms of the entire contract, it is important that ensure that exclusion 4(f)(i) has meaning. This exclusion excludes claims for loss [*39]  of use of tangible property that has not been physically injured or destroyed resulting from a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement.

[66] In my view the contractual liability which is covered in the Policy involves contracts assuming the tortious liability of other parties. Accordingly, I am of the view that this exclusion clause excludes claims where the tortious liability of the third party which the insured in responsible for arose because of a delay in or lack of performance by the insured. Such an interpretation is in keeping with the economic purpose of insurance which is to insure against fortuitous events. If the insured was the party responsible for creating the tortious liability in the first instance by a voluntary act, it should not be covered.

[67] It is clear from the facts alleged in the Amended Statement of Claim that we are not dealing with a situation in which the Town assumed the tortious liability of another. Accordingly I find that the contractual liability alleged in the Amended Statement of Claim is not covered by the Policy.

### The Test for Derivative Claims

[68] In determining whether one [*40]  claim is derivative of another, the Supreme Court in *Scalera, supra* set out the following guidelines in the context of their analysis of whether a claim for negligence was derivative of an intentional tort:

> ... a claim for negligence will not be derivative if the underlying elements of the negligence and of the intentional tort are sufficiently disparate to render the two claims unrelated. If both the negligence and intentional tort claims **arise from the same actions and cause the same harm**, the negligence claim is derivative, and it will be subsumed into the intentional tort for the purposes of the exclusion clause analysis: para. 85 (emphasis added).

[69] A helpful way of determining whether two claims "arise from the same actions and cause the same harm" is set out in *Unrau v. Canadian Northern Shield Insurance Co., 2004 BCCA 585, 246 D.L.R. (4th) 412*. In *Unrau*, the plaintiff sued two insureds alleging bodily injury resulting from their failure to take action when the plaintiff was being assaulted with a baseball bat. As in *Scalera, supra*,  [*41]   the issue before the Court was whether the claim in negligence set out in the Statement of Claim was derivative of the claim for intentional tort which was expressly excluded by the policy. In conducting its analysis the question asked was whether, it you take away the facts which set out the factual basis for the intentional tort, there are remaining facts sufficient to support the claim in negligence. If so, the two claims are independent of each other.

[70] As I have found that contractual liability of the nature set out in the Amended Statement of Claim is not covered by the insuring agreement, the next step is to determine whether the claims for negligent misrepresentation or proprietary estoppel are derivative of the breach of contract claim.

[71] An issue arose during argument as to whether the alleged breach of contract by the Town was an "intentional" breach of contract. The parties appear to have diverted down this path in an attempt to bring the facts of this case on par with those in *Scalera, supra*, which considered whether claims for negligence and breach of fiduciary duty were derivative of an intentional tort. In [*42]  my view it is unnecessary to determine whether the Town's alleged breach of contract was "intentional" or not, as two other appellant courts in Canada have employed the *Scalera, supra*, analysis to determine whether claims for negligent misrepresentation were derivative of claims for breach of contract: *Westridge, supra*, and *Dionne Farms Ltd. v. Fermes Gervais Ltee, 2002 NBCA 98, 255 N.B.R. (2d) 6*.

[72] In *Westridge, supra*, the insured was sued for damages relating to the premature failure of the roof and walls of a swine barn which the insurer was hired to construct. The Statement of Claim alleged facts relating to claims for breach

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

of contract and negligent misrepresentation. The trial judge determined that the claim for contractual liability was excluded and that the claim for negligent misrepresentation was derivative of the contract claim and accordingly excluded. On appeal the trial judge was overruled as the Court found that the claims in tort and contract arose from two separate [*43]  sets of facts meaning that the claims for contract and tort were independent of one another: paras. 21-24. The Court in *Westridge, supra*, applied the analysis of derivative claims set out in *Scalera, supra*, despite the fact that an intentional tort was not at issue. Accordingly, it is my view that nothing turns on whether the Town's breach of contract was "intentional."

### Are the Claims for Negligent Misrepresentation and Proprietary Estoppel Derivative of the Claim in Breach of Contract?

[73] Based on the dicta in *Unrau, supra*, the question which must be answered is, whether if you take away the facts underlying the breach of contract claim, is there any basis for the claims in negligent misrepresentation and proprietary estoppel?

[74] In this case the comparison between the claim for breach of contract and negligent misrepresentation in the Amended Statement of Claim are as follows:

    1.   Breach of contract:

-    There was an exchange of promises whereby Diamond agreed to give up its ROFR in exchange for the Town's promise [*44]  to grant a ten year lease to Diamond;

-    Diamond completed its part of the bargain by giving up its ROFR;

-    The Town breached its agreement by failing to live up to its promise, namely granting a ten year lease; and

-    Diamond sustained losses defined in the Amended Statement of Claim as the "Losses".

    2.   Negligent misrepresentation:

-    The Town represented to Diamond that if Diamond gave up its ROFR, the Town would grant Diamond a ten year lease;

-    In relying on this representation, Diamond gave up its ROFR;

-    This was a misrepresentation because the Town failed to provide Diamond. with a ten year lease; and

-    As a result of this misrepresentation, Diamond sustained losses defined in the Amended Statement of Claim as the "Losses".

[75] In my view it is clear from the above comparison that if the facts supporting the breach of contract claim were removed, there would be no facts left over sufficient to support the claim for negligent misrepresentation. Accordingly, I find that the claim for negligent misrepresentation is derivative of the breach of contract claim.

[76] Using the same analysis with respect to the claim for proprietary estoppel, as discussed [*45]  at paragraph 22, in my view it is clear that once the facts supporting the claim for breach of contract are removed, there are no facts remaining to support the propriety estoppel claim. Again I find that the claim for proprietary estoppel is derivative of the breach of contract claim.

### Step Three

[77] In this case I find that there are no properly pled non-derivative claims which are covered by the Policy.

### CONCLUSION

[78] I have found that the claims for breach of contract as contained in the Amended Statement of Claim are not covered by the insuring agreement and that the claims for negligent misrepresentation and proprietary estoppel are both derivative of the breach of contract claim. Further I have found that there are no properly pled non-derivative claims which are covered by the Policy.

[79] Accordingly, I find that MUNIX and Zurich do not have a duty to defend the Town in the Action brought against it by Diamond.

[2007] A.J. No. 992; 2007 ABQB 548;
2007 AB.C. LEXIS 1019, *

**COSTS**

[80] If the parties cannot agree on costs they are at liberty to speak with me in this regard within 60 days of this decision.

G.A. VERVILLE J.