IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AGJUNCTION LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:14-cv-02069-JAR-KGS |
| | ) | |
| AGRIAN INC.; JEFFREY DEARBORN; | ) | |
| AARON HUNT; MATTHEW DEDMON; | ) | |
| DAVID NERPEL; DERRICK ANDERSON | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF AGJUNCTION'S OPPOSITION TO MOTION TO DISMISS FOR**

**FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.      Statements of Facts and the Nature of the Matter before the Court .................................. 1

II.     Question Presented .......................................................................................................... 2

III.    Argument ........................................................................................................................ 2

        A.      Standard For Dismissal Under Rule 12(B)(6) ....................................................... 2

        B.      Count I Breach Of Contract By Agrian ................................................................. 4

        C.      Count II Breach Of Covenant Of Good Faith And Fair Dealing
                By Agrian ................................................................................................................ 8

        D.      Count III Breach of Contract by Employee Defendants ..................................... 10

        E.      Count IV Intentional Interference with Business Advantage by
                All Defendants ..................................................................................................... 14

        F.      Count V Violation Of The Kansas Uniform Trade Secrets Act
                K.S.A. §§ 60-3320, Et. Seq. By All Defendants .................................................. 15

        G.      Count VI Common Law Unfair Competition Against All Defendants ............... 16

        H.      Count VII Breach Of Duty Of Loyalty By Employee Defendants ...................... 18

        I.      Count VIII Breach Of Fiduciary Duty By Defendants Dearborn
                And Hunt ............................................................................................................... 19

        J.      Count IX Tortious Interference With Employee Contracts By
                Defendants Agrian, Dearborn And Hunt ............................................................. 20

        K.      Count X Conspiracy By All Defendants ............................................................. 21

IV.     Conclusion ..................................................................................................................... 23

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*All W. Pet Supply Co. v. Hill's Pet Prods. Div.*,
  840 F. Supp. 1433, 1438 (D. Kan. 1993) ................................................................. 18

*American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*,
  No. 8490-VCG, 2014 WL 354496, at *5 (De. Ch. Feb. 3, 2014) ........................... 10

*Anderson v. Commerce Constr. Servs.*,
  531 F.3d 1190, 1194 (10th Cir. 2008)................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ............................................. 2, 3, 4, 5, 8, 21, 27

*Ayers v. AG Processing Inc.*,
  345 F. Supp. 2d 1200, 1210 (D. Kan. 2004) ...................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555, 570 (2007) ........................................ 2, 3, 4, 8, 11,15 , 21, 27

*Burcham v. Unison Bancorp, Inc.*,
  77 P.3d 130, 151 (Kan. 2003) ........................................................................ 17

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
  706 F.3d 1231, 1235 (10th Cir. 2013)................................................................... 2

*Carson v. Lynch Multimedia Corp.*,
  123 F. Supp. 2d 1254, 1261 (D. Kan. 2000) .......................................................... 25

*Cf. Diederich v. Yarnevich*,
  196 P. 3d 411, 420 (Kan. Ct. App. 2008)............................................................... 26

*Cincinnati Ins. Co. v. Gage Ctr. Dental Grp., P.A.*,
  2013 U.S. Dist. LEXIS 156844, at * 36 (D. Kan. Nov. 1, 2013)............................ 22

*CoBank, ACB v. Reorganized Farmers Coop. Ass'n*,
  334 F. Supp. 2d 1273, 1277–78 (D. Kan. 2004) ................................................... 22

*Dias v. City & Cnty. of Denver*,
  567 F.3d 1169, 1178 (10th Cir. 2009)................................................................... 3

*Dickens v. Snodgrass, Dunlap & Co.*,
  872 P.2d 252, 257 (Kan. 1994) ........................................................................... 24

*Duran v. Carris*,
   238 F.3d 1268, 1270 (10th Cir. 2001)............................................................... 3

*Elsey v. J.G. Colins Insurance Agencies Ltd.*,
   (1978), 2 S.C.R. 916............................................................................................ 14

*Fireworks Spectacular*,
   147 F. Supp. 2d at 1065 ................................................................................... 18

*Fireworks Spectacular, Inc.* v. *Premier Pyrotechnics, Inc.*,
   86 F. Supp. 2d 1102, 1106 n. 2 (D. Kan. 2000) ........................................... 20

*Globex Foreign Exchange Corporation v. Keleher*,
   *2009* ABQB 471 (Can.)................................................................................... 14

*HL. Staebler Company Ltd v. Allan*,
   (2008), 92 O.R. 3d 107 (Can. Ont. C.A.) .................................................... 15

*Kan. Penn Gaming, LLC v. Collins*,
   656 F.3d 1210, 1214 (10th Cir. 2011)........................................................... 3

*Khalik v. United Air Lines*,
   671 F.3d 1188, 1190 (10th Cir. 2012)....................................... 3, 4, 21, 27

*Ling v. Jan's Liquors*,
   703 P.2d 731, 735 (Kan. 1985) ..................................................................... 16

*Lyons v. Multari*,
   (2000), 50 O.R. 3d 526 (Can. Ont. C.A.) .................................................... 15

*Miller v. Dorr*,
   262 F. Supp. 2d 1233, 1238 (D. Kan. 2003) .............................................. 16

*Price Org. v. Universal Computer Servs.*,
   No. 12505, 1993 Del. Ch. LEXIS 216, at *16 (Del. Ch. Oct. 1, 1993) ..................... 9

*Rajala v. Gardner*,
   2013 U.S. Dist. LEXIS 93223, at *57 (D. Kan. July 3, 2013)..................... 21

*Robbins v. Oklahoma*,
   519 F.3d 1242, 1247 (10th Cir. 2008)........................................................... 4

*Rocky Mountain House (Town) v. Alberta Mun. Ins. Exch.*;
   2007 AB.C. LEXIS 1019, at *12 (Alberta Court of Queen's Bench 2007)............ 12

*S. Track & Pump, Inc. v. Terex Corp.*,
  623 F. Supp. 2d 558, 562 (D. Del. 2009) ................................................................ 9

*SEC v. Shields*,
  2014 U.S. App. LEXIS 3369 (10th Cir. Feb. 24, 2014).......................................... 1

*Shafron v. KRG Insurance Brokers (Western) Inc.*,
  2009 SCC 6 (Can.) ............................................................................................... 15

*Tatone v. SunTrust Mortgage, Inc.*,
  857 F. Supp. 2d 821, 828 (D. Minn. 2012) ......................................................... 20

*Turner v. Halliburton Co.*,
  722 P.2d 1106, 1115 (Kan. 1986) ....................................................................... 16

*Unicredit Bank AG v. Deborah R. Eastman, Inc.*,
  2013 U.S. Dist. LEXIS 82919, at *21 (D. Kan. Jan. 22, 2013) ............................ 9

*Vetter v. Morgan*,
  913 P.2d 1200, 1206 (Kan. Ct. App. 1995)......................................................... 25

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*,
  840 A.2d 606, 612 (Del. 2003)............................................................................. 5

*Wayman v. Amoco Oil Co.*,
  923 F. Supp. 1322, 1359 (D. Kan. 1996), *aff'd*, 145 F.3d 1347 (10th Cir. 1998) ..................... 9

*Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*,
  45 F. Supp. 2d 1164, 1199 (D. Kan. 1999) ......................................................... 19

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................ 2

I.     **STATEMENTS OF FACTS AND THE NATURE OF THE MATTER BEFORE THE COURT**

On February 16, 2014, Plaintiff AgJunction LLC ("AgJunction") filed a Complaint for Injunctive Relief, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Intentional Interference with Business Advantage and Relationships, Misappropriation of Trade Secrets, Unfair Competition, Breach of the Duty of Loyalty, Breach of Fiduciary Duty, Tortious Interference with Employment Contracts, and Conspiracy ("Complaint") against Defendants Agrian, Inc. ("Agrian"), and "Employee Defendants" Jeffrey Dearborn, Aaron Hunt, Matthew Dedmon, David Nerpel, and Derrick Anderson, (collectively, "Defendants").

On March 26, 2014 AgJunction filed a motion for a preliminary injunction and supporting memorandum against Defendants to protect it from irreparable harm that is occurring as a result of Defendants' conduct.  On April 7, 2014 Defendants moved to dismiss AgJunction's complaint for failure to state a claim under Rule 12(b)(6).

The thrust of Defendants' motion to dismiss under Rule 12(b)(6) is that AgJunction's Complaint "reveals a gross lack of specificity."  Def.'s Mem. at 1.  The Defendants charge that "the Complaint itself appears to be a fishing expedition initiated in the hopes that discovery might reveal wrongdoing."  *Id.*  Consequently, Defendants claim that they lack fair notice of the claims made and are not in a position to defend against them.  *Id.* at 2.

To the contrary, AgJunction's Complaint, along with the attached exhibits, which include a Master Services and Licensing Agreement between AgJunction and Agrian, employment agreements between AgJunction and Defendants Dearborn, Hunt, Dedmon, Nerpal and Anderson, amply meet the pleading standard recently reiterated and further clarified by the Tenth Circuit in *SEC v. Shields,* 2014 U.S. App. LEXIS 3369 (10th Cir. Feb. 24, 2014).

II.   **QUESTION PRESENTED**

Whether Defendants have made a showing sufficient to support a grant of their motion to dismiss when none of Plaintiff's causes of action require a heightened pleading standard, Defendants have discounted large sections of the Complaint, all of Plaintiff's facts from the Complaint must be accepted as true, and the Tenth Circuit has recently acknowledged that dismissal would be a harsh remedy requiring cautious study.

III.   **ARGUMENT**

A.   **Standard For Dismissal Under Rule 12(B)(6)**

In *Shields*, the Tenth Circuit reiterated that "[we] accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." 2014 U.S. App. LEXIS 3369, at *12 (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)). A pleading is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")). Indeed "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (alteration in original) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)).

In *Khalik v. United Air Lines*, the Tenth Circuit explained that under *Iqbal* and *Twombly* "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to

2

survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (second alteration in original) (quoting *Twombly*, 550 U.S. at 570). The Court noted that "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). The complaint must set forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Tenth Circuit further explained in *Khalik* that "[i]n applying this new, refined standard, we have held that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (internal quotation marks omitted) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). Notably, in recognition that "[t]here is disagreement as to whether this new standard requires minimal change or whether it in fact requires a significantly heightened fact-pleading standard," *id.*, the Court clarified: "[T]he *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do," *id.* "In other words, Rule 8(a)(2) still lives. . . . [U]nder Rule 8, [s]pecific facts are

3

not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. at 1191-92 (internal quotation marks omitted) (omission and second alteration in original).

The Tenth Circuit has stressed that the "nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming*, 656 F.3d at 1215. Making that determination "requires the reviewing court to draw on its judicial experience and common sense." *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).   When these principles are applied to AgJunction's Complaint and supporting exhibits, Defendants' motion to dismiss for failure to state a claim should be denied.

### B.   <u>Count I Breach of Contract By Agrian</u>

Count I alleges breach of contract as against Defendant Agrian.  The Master Services and Licensing Agreement (Attachment A to Complaint; "Wilbur-Ellis Agreement") between AgJunction and Agrian contains a "Governing Law and Venue" clause, stating "[t]his Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware." (Wilbur-Ellis Agreement at 8).  Since the Wilbur-Ellis Agreement contains a choice-of-law provision designating Delaware law as the governing law, Delaware law applies.

Under Delaware law, the plaintiff must demonstrate: (1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) resultant damage to the Plaintiff.  *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Agrian entered into the Wilbur-Ellis Agreement with AgJunction on December 31, 2012. (Complaint ¶ 18).  AgJunction has alleged that Agrian breached the provision of the Wilbur-Ellis Agreement requiring it to access and use AgJunction's confidential and protected information

4

solely for the purpose of administering its reseller agreements with Wilbur-Ellis Company. (Complaint ¶¶ 14, 20-21). The fact that Agrian had no presence in the field of AgJunction's agronomy software, yet was able to develop a product within the span of a few short months after hiring five of AgJunction's employees is highly probative of the fact that Agrian obtained and used AgJunction's confidential and proprietary information to develop its own, competing software. (Complaint ¶ 17, 56, 92). Moreover, AgJunction has already been damaged through its loss of at least one customer along with its associated goodwill. (Complaint ¶¶ 25, 79-80).

Defendants misrepresent AgJunction's Complaint as containing only one alleged breach of the Wilbur-Ellis Agreement in paragraph 56 of the Complaint and then mischaracterize the scope of the breach as not alleging facts in sufficient detail to put them on notice of wrongdoing. Count I includes paragraphs 1 through 52 incorporated therein and paragraphs 54 through 60. (Complaint ¶¶ 53-60). Paragraphs 18 through 22 and 23 through 25 of the Complaint are respectively entitled "The AgJunction-Agrian Agreement" and "Agrian Breach of the Agreement," and set forth multiple breaches of the Wilbur-Ellis Agreement.

The AgJunction-Agrian Agreement

18.    AgJunction entered into a Master Services and Licensing Agreement with Defendant Agrian in or about December 2012 ("Agreement"), wherein AgJunction agreed to grant Defendant Agrian, as reseller, a non-exclusive, non-transferrable limited license to access and use AgJunction's Web-based hosted agricultural software system for the purpose of sublicensing AgJunction's software system to Wilbur-Ellis Company, who in turn could further sublicense AgJunction's software system to its own customers. A true and correct copy of the Agreement is attached to this Complaint as Attachment A and incorporated herein by reference.

19.    Pursuant to the terms of the Agreement, Defendant Agrian's access and use of AgJunction's software is limited.

20.    Specifically, Section 2.1 of the Agreement, titled, "License," states in pertinent part

5

> "Reseller [Agrian]'s access and use of the Licensed Services shall only be for its internal use and for purposes of supporting Client [Wilbur-Ellis Company] and [Wilbur-Ellis Company's customer sublicensees'] use of the Licensed Services."

21.    Further, Defendant Agrian's access and use of AgJunction's confidential information, including software code, is restricted.

22.    Section 9.1 of the Agreement, titled, "Disclosure and Use," states in pertinent part,

> "[Agrian] shall use Confidential Information of [AgJunction] only in performing under this Agreement and shall retain the Confidential Information in confidence and not disclose to any third party."

Agrian's Breach of the Agreement

23.    AgJunction is informed and believes that Agrian, without AgJunction's knowledge or consent, illegally gained unauthorized access to AgJunction's confidential and proprietary software system.

24.    AgJunction is informed and believes that Agrian unlawfully copied and used the illegally accessed information to create its own "Agrian Software" with the same features and functionality as AgJunction's software licensed to Agrian in the Agreement.

25.    AgJunction is further informed and believes that Agrian markets, advertises, sells, offers to sell, licenses, and/or offers to license its "Agrian Software" to agricultural and agrichemical customers, including Agrian's customers and potential customers.

54.    On or about December 31, 2012, AgJunction and Defendant Agrian entered into a written Master Services and Licensing Agreement.

55.    AgJunction performed all of its obligations under the Agreement, except for those obligations that AgJunction was excused or prevented from performing due to Defendant Agrian's actions and/or omissions.

56.    Defendant Agrian has breached the terms of the Agreement by failing, among other things, to honor obligations set forth in the Agreement to access and use AgJunction's confidential and protected information solely for the purpose of administering its reseller agreements with its client, Wilbur-Ellis Company.

57.    AgJunction is informed and believes that Defendant Agrian has developed its own precision agronomy software that offers the same features and functionalities of AgJunction's proprietary software that it licensed to Defendant Agrian pursuant to the Agreement.

6

58.     AgJunction is informed and believes that Defendant Agrian developed its
own precision agronomy software through the unlawful access and use of
AgJunction's proprietary software.

59.     AgJunction is further informed and believes that Defendant Agrian
unlawfully accessed, stored, and/or copied the data collected by AgJunction's
precision agronomy software and maintained in AgJunction's proprietary
database.

In the face of these allegations, Agrian contends that AgJunction did not disclose what
specific information it provided or made available to Agrian which Agrian then "misused" under
that which even Agrian admittedly labels the Wilbur-Ellis Agreement. Def.'s Mem. at 5. And
Agrian complains that there was no mention that any information was marked as confidential or
proprietary.

Specifically, Section 2.1 of the Agreement, titled, "License," states in pertinent part:

"Reseller [Agrian]'s access and use of the Licensed Services shall only be for its
internal use and for purposes of supporting Client [Wilbur-Ellis Company] and
[Wilbur-Ellis Company's customer sublicensees'] use of the Licensed Services."

In paragraphs 18 through 25 and paragraphs 54 through 59, AgJunction alleged that
Reseller Agrian has misused the Licensed Services in using them for other than its internal use
and for supporting the Wilbur-Ellis Company and the Company's customer sublicensees.
(Complaint ¶¶ 18-25 and 54-59).   In addition, Section 2.4 of the Wilbur-Ellis Agreement, titled
"Security," provides that "[i]n order to access the Licensed Services, user-identification and
passcodes must be used as instructed by AgJunction." A plain reading of the Wilbur-Ellis
Agreement did not include a license to Agrian to use AgJunction's software and services to build
and market a competing system and software as AgJunction has alleged Agrian has done.  Now
Agrian claims it had an absolute right to do so simply because, allegedly, the licensed services
and software were not stamped confidential or proprietary.   "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to draw the reasonable inference

7

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here, a reasonable inference based upon the factual content recited above is that Defendant Agrian has breached the Wilbur-Ellis agreement at least by not limiting its access and use of the Licensed Services for its internal use and for purposes of supporting the Wilbur-Ellis Company.

      C.      <u>Count II Breach of Covenant of Good Faith And Fair Dealing By Agrian</u>

Count II alleges breach of the covenant of good faith and fair dealing by Agrian. Paragraphs 61-65 allege that there was an implied covenant of good faith and fair dealing in the Wilbur-Ellis Agreement.  Under Delaware law, "the duty of good faith and fair dealing . . . is implied in every contract." *S. Track & Pump, Inc. v. Terex Corp.*, 623 F. Supp. 2d 558, 562 (D. Del. 2009).[1]  Under the implied covenant of good faith and fair dealing, "courts will read terms into contracts that clearly would have been included had the parties negotiated with respect to them." *S. Track & Pump,* 623 F. Supp. 2d at 563 (quoting *Price Org. v. Universal Computer Servs.*, No. 12505, 1993 Del. Ch. LEXIS 216, at *16 (Del. Ch. Oct. 1, 1993)).  The implied covenant therefore imposed upon Agrian a duty to refrain from improperly accessing, using, or disclosing AgJunction's confidential and proprietary information since, had the parties negotiated specifically on this point, such a duty would have been included in the Wilbur-Ellis Agreement.

Agrian's ability to so quickly develop agronomy software that had the same features as AgJunction's software is highly indicative of the fact that Agrian obtained an unfair "head start" through the unlawful use of AgJunction's confidential and proprietary information.  (Complaint

---

[1] Kansas law recognizes a similar implied duty.  *Unicredit Bank AG v. Deborah R. Eastman, Inc.*, 2013 U.S. Dist. LEXIS 82919, at *21 (D. Kan. Jan. 22, 2013) (citing *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996), *aff'd*, 145 F.3d 1347 (10th Cir. 1998)).

¶¶ 17, 24-25, 92).   Additionally, Agrian's hiring away of five of AgJunction's employees, who possessed extensive knowledge of AgJunction's confidential and proprietary information, showed that Agrian obtained a means for unlawfully accessing this information. (Complaint ¶¶ 31-34).  This provides substantial evidence that Agrian breached the covenant of good faith and fair dealing with respect to improperly accessing, using, or disclosing AgJunction's confidential and proprietary information.   Finally, as discussed previously, AgJunction has been damaged directly by this breach.  (Complaint ¶ 65).

Agrian's contention that AgJunction has now conceded that the conduct of using confidential information "for purposes beyond the limited scope of the acceptable access and use defined in the Agreement" is specifically covered by the Wilbur-Ellis Agreement and therefore not covered by a duty of good faith and fair dealing is simply an exercise in sophistry that attempts to conceal Agrian's breach, which is alleged to have occurred here.  Even *American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.,* No. 8490-VCG, 2014 WL 354496, at *5 (De. Ch. Feb. 3, 2014), cited by Defendants to limit the protections of the covenant of good faith and fair dealing to those situations in which it is clear that "the parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter," supports AgJunction's allegations.  It is clear that AgJunction and Agrian would have agreed to prohibit the use of AgJunction's licensed system and software to build a competing system, had they thought to negotiate that term, since it is plain on the face of the Wilbur-Ellis Agreement that the agreement was limited solely to servicing the Wilbur-Ellis Company. AgJunction's complaint therefore sets forth sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

D.    **Count III Breach of Contract by Employee Defendants**

By contract, each Employee Defendant had a duty to maintain the confidentiality of AgJunction's confidential and proprietary information.  (Complaint ¶¶ 26-52).  Further, each Employee Defendant had a contractual duty to abide by conflict of interest, non-competition, and non-solicitation terms, which survive each employee's departure from AgJunction (Complaint ¶¶ 26-52).

AgJunction's employee contracts with the Employee Defendants contain a choice-of-law provision stating "[t]his Agreement will be governed and interpreted in accordance with the laws of the Province of Alberta [Canada]."  *See, e.g.*, Attachment C to AgJunction's Complaint (Docket No. 1-1).  As discussed previously, a choice-of-law provision supersedes Kansas's general rule of *lex loci contractus*.  However, the elements of a breach of contract in Alberta are similar to those under Kansas law.  First, there must be a contract and consideration; second, plaintiff must have fulfilled its part of the agreement; third, defendant must have breached its obligations; and finally, plaintiff must have suffered damage.  *See Rocky Mountain House (Town) v. Alberta Mun. Ins. Exch.*; 2007 AB.C. LEXIS 1019, at *12 (Alberta Court of Queen's Bench 2007), a copy of which is filed concurrently with Plaintiff's Notice of Applicable Alberta Law on Breach of Contract.

AgJunction and the Employee Defendants all had viable contracts in the form of the respective employee agreements.  Attachments B-F to AgJunction's Complaint (Docket No. 1-1).  The consideration for the Employee Defendants' services was continued employment, and AgJunction fulfilled its obligations through employing each Employee Defendant until each voluntarily resigned his position.  (Complaint ¶ 69).  Initially, the Employee Defendants, through the act of joining Agrian shortly after leaving AgJunction, breached their duties to abide by the

10

non-competition and conflict-of-interest terms of their contracts.  (Complaint ¶¶ 68-75).  Further, the rapid development of Agrian's agronomy software that performs all of the features of AgJunction's software strongly evidences the Employee Defendants' participation in the development of Agrian's software, which constitutes a breach of their respective employment agreements and their obligations to maintain the confidentiality of AgJunction's confidential and proprietary information.  (Complaint ¶¶ 68-74, 92).  Finally, as discussed previously, AgJunction has suffered harm directly as a result of this loss of confidential and proprietary information to Agrian.  (Complaint ¶ 75).

Agrian's contention that AgJunction has improperly grouped all the Employee Defendants into one breach of contract claim in Count III ignores the allegations in the Complaint directed to each employee.  Agrian's contention also ignores the fact that AgJunction has accused each Employee Defendant of breaching his employment agreement with AgJunction.  (Complaint ¶¶ 70-74).  Specifically, paragraphs 38 through 52 of the Complaint set forth each employee's obligations under the employment agreements attached to the Complaint.  Defendants are not left to guess the respective roles of the individual Employee Defendants.  For example, Dearborn and Hunt were directors with fiduciary duties.  (Complaint ¶ 103).  Defendant Dearborn "led a coordinated effort by Agrian and the Employee Defendants to unlawfully solicit Defendants Hunt, Dedmon, Nerpel, and Anderson for employment by Agrian."  (Complaint ¶ 105).

Contrary to Agrian's assertions, AgJunction's allegations are not "formulaic recitation[s] of breach of contract elements providing no specific allegations."  Specifically, in paragraphs 70-74 of the Complaint, AgJunction alleges that

70.    The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to maintain the confidentiality of AgJunction's proprietary, and/or secret information and to

11

only access and use AgJunction's confidential information for purposes limited to the scope of their duties as employees of AgJunction.

71.     The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly compete, prepare to compete, or in any way directly or indirectly assist others to compete or prepare to compete, with AgJunction's business or anticipated business.

72.      The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly engage in, advise, invest in, participate, or perform services for any person or entity that is engaged in any business or enterprise that competes with or plans to compete with AgJunction, or in which any disclosure of AgJunction's proprietary information would be of material value to any person or entity other than AgJunction.

73.     The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly solicit, accept from, do business with, or accept business relationships with any person or entity or client with which/whom the Employee Defendants know or should know that AgJunction did any similar business with or competed for business with.

74.     The Employee Defendants, and each of them, have breached the terms of their respective employment agreements by failing, among other things, to honor their obligations set forth in their respective employment agreements to not directly or indirectly hire, engage, or solicit for employment or engagement any person or entity who was an employee or consultant of AgJunction.

Defendants' contention that AgJunction's claims for breach of contract are foreclosed as a matter of Canadian law is contradicted by the very case law they cite.  Def.'s Mem. at 8.  In *Globex Foreign Exchange Corporation v. Keleher,* 2009 ABQB 471 (Can.), attached as Exhibit 1 to Defendants' Memorandum in Support of Defendants' Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (Dkt. No. 34), the Court noted that, according to the Supreme Court in *Elsey v. J.G. Colins Insurance Agencies Ltd.* (1978), 2 S.C.R. 916, the reasonableness of a restrictive covenant is to be assessed against three criteria:

1.      Does the employer have a proprietary interest entitled to protection?

2.      Are the temporal or spatial features of the clause too broad?

3.      Is the covenant unenforceable as being against competition generally, and not limited to proscribing solicitation of clients of the former employer?

The employment agreements between AgJunction and the Defendant Employees were executed to protect the proprietary interest of AgJunction.  (Attachments B-F to Complaint (Dkt. No. 1-1)).  The agreements are temporally limited; they expire between 6 and 12 months following the cessation of employment.  *Id.*  Moreover, the covenants are not against competition generally.

In *HL. Staebler Company Ltd v. Allan,*(2008), 92 O.R. 3d 107 (Can. Ont. C.A.), attached as Exhibit 4 to Defendants' Motion to Dismiss, the Court expressly stated that "[w]hile an overly broad restraint on an individual's freedom to compete will generally be unenforceable, **the courts must recognize and afford 'reasonable protection to trade secrets, confidential information, and trade connections of the employer.'**"  Dkt. 34-4 page 11 of 19 (emphasis added).  *Lyons v. Multari* (2000), 50 O.R. 3d 526 (Can. Ont. C.A.), attached as Exhibit 2 to Defendants' Motion to Dismiss, is also inapposite since it entailed a broad non-competition clause, and involved no trade secrets or confidential information.  Dkt. 34-2 page 16 of 19.  Additionally, *Shafron v. KRG Insurance Brokers (Western) Inc.,* 2009 SCC 6 (Can.), attached as Exhibit 5 to Defendants' Motion to Dismiss, involved an ambiguous restrictive covenant which was held to be unenforceable by definition.  Dkt 34-5 page 19 of 24.

Agrian's argument that all of the contract provisions on which Plaintiff relies are "facially" unenforceable as drafted is a gross misconstruction of Canadian law.   AgJunction's

13

Complaint sets forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

      E.      <u>Count IV Intentional Interference With Business Advantage By All Defendants</u>

In tort cases, Kansas courts apply the traditional choice-of-law rule of *lex loci delicti*. *Anderson v. Commerce Constr. Servs.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (citing *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)).  "According to this rule, the law of the state where the tort occurred governs the merits of the litigation." *Id.*  Although a majority of states have abandoned this rule in favor of other approaches, the rule "is well established under Kansas law and there is no indication that Kansas intends to abandon the rule." *Id.* (citing *Miller v. Dorr*, 262 F. Supp. 2d 1233, 1238 (D. Kan. 2003)).  Under this rule, the law of the state in which the plaintiff suffered injury applies. *Id.*

Thus, in this case, Kansas law applies to the tort causes of action because AgJunction has been injured in Kansas.  Under Kansas law, tortious interference with prospective business advantage or relationship is intended to protect future or potential contractual business relationships. *Ayers v. AG Processing Inc.*, 345 F. Supp. 2d 1200, 1210 (D. Kan. 2004) (citing *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986)).  The elements essential for recovery are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct. *Ayres*, 345 F. Supp. 2d at 1210 (citing *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003)).

14

Agrian and Employee Defendants have already succeeded in convincing one of AgJunction's largest customers to switch its contracts regarding agronomic software from AgJunction to Agrian. (Complaint ¶ 25, 79-80). Agrian benefitted from the confidential and proprietary knowledge that the Employee Defendants very likely shared with Agrian, since Defendant Dearborn had access to AgJunction's confidential and proprietary list of customers. (Complaint ¶ 26, 79-80).

It is reasonably certain that AgJunction would have been able to maintain its relationship with its customers but for Defendants' intentional interference with business advantage. This Court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." *Burnett*, 706 F.3d at 1235.

    **F.**    <u>**Count V Violation Of The Kansas Uniform Trade Secrets Act K.S.A. §§ 60-3320, Et. Seq. By All Defendants**</u>

"In an action claiming unauthorized use of a trade secret, the threshold inquiry is whether or not there [is] a trade secret to be misappropriated." *Fireworks Spectacular*, 147 F. Supp. 2d at 1065 (alteration in original). K.S.A. <u>§ 60-3320(4) defines "</u>trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* at 1065-66. Customer lists and other customer information can constitute a trade secret. *Id.* at 1066 (citing *All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 840 F. Supp. 1433, 1438 (D. Kan. 1993)).

As discussed previously, all Defendants had obligations to maintain the secrecy of AgJunction's confidential and proprietary information, including information regarding its software as well as its customer lists. (Complaint ¶¶ 20-22, 26-52). This information included, but was not limited to, compilations of data such as those embodied in AgJunction's proprietary databases, the methods or algorithms used by AgJunction's proprietary software, and AgJunction's proprietary customer lists including non-public information such as customer preferences. (Complaint ¶¶ 28-31; 56-59, Attachments B-F to Complaint (Docket No. 1-1). All of this constitutes trade secret information belonging to AgJunction.

AgJunction derived independent economic value from this information. First, it sold products that used the software that contained and utilized AgJunction's trade secret information. Second, the customer lists helped AgJunction maintain its business relationships with its customers. (Complaint ¶¶ 25, 73).

Finally, AgJunction reasonably maintained the secrecy of this trade secret information. For example, employees with access to the information were required to sign non-compete and confidentiality agreements before obtaining access. (Complaint ¶¶ 38, 41, 44, 47, 50). Furthermore, this information was not, and is not, freely available to the public.

## G.    Count VI Common Law Unfair Competition Against All Defendants

Misuse of proprietary matters can be the basis of a claim involving the tort of common law unfair competition. *Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.,* 45 F. Supp. 2d 1164, 1199 (D. Kan. 1999). The Employee Defendants all had access to proprietary information owned by AgJunction, including the data and methods involved in the creation and operation of its agronomy software. (Complaint ¶ 26-27). Agrian hired the Employee Defendants shortly after they resigned in a serial fashion from AgJunction. (Complaint ¶¶ 30-36). Having never

16

competed with AgJunction in the agronomy software market prior to the hiring of the Employee Defendants, Agrian quickly created a competing product in a suspiciously short amount of time, subsequently inducing one of AgJunction's largest customers to discontinue its relationship with AgJunction in favor of Agrian.  (Complaint ¶ 80, 92).

Agrian contends that Count VI should be dismissed because it is preempted by the Kansas Uniform Trade Secrets Act (KUTSA), citing *Fireworks Spectacular, Inc.* v. *Premier Pyrotechnics, Inc.,* 86 F. Supp. 2d 1102, 1106 n. 2 (D. Kan. 2000).  *Fireworks Spectacular* suggests that the KUTSA "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of trade secret." *Id.*  There are no appellate rulings affirming this conclusion.  Moreover, AgJunction's unfair competition claim extends beyond trade secret misappropriation to unfair competition by Agrian's development and offer for sale of a product that competes with or is comparable to AgJunction's precision agronomy software system.  (Complaint ¶ 92).

Agrian again contends that all of AgJunction's allegations are general as to all Defendants.  As discussed above, Agrian ignores the fact that AgJunction's allegations are specific to the conduct of individual Employee Defendants.  (Complaint ¶¶ 26-52).  Defendants rely on *Tatone v. SunTrust Mortgage, Inc.,* 857 F. Supp. 2d 821, 828 (D. Minn. 2012), for their contention that the allegations in the Complaint fail to satisfy Rule 8.  Def.'s Mem. at 11-12.  However, in *Tatone,* the objection was to a "shot gun" approach raising all allegations against all defendants.  *Id.*  Here, Defendants are not left to guess the respective roles of the individual Defendants.  Dearborn and Hunt were directors with fiduciary duties.  (Complaint ¶ 103).  Defendant Dearborn "led a coordinated effort by Agrian and the Employee Defendants to

17

unlawfully solicit Defendants Hunt, Dedmon, Nerpel, and Anderson for employment by Agrian." (Complaint ¶ 105).

### H.    Count VII Breach Of Duty Of Loyalty By Employee Defendants

A duty of loyalty contemplates that the one holding the duty must avoid conflicts of interest with respect to the one to whom the duty is owed.  *See, e.g.*, *Rajala v. Gardner*, 2013 U.S. Dist. LEXIS 93223, at *57 (D. Kan. July 3, 2013).  The Employee Defendants had a duty of loyalty to avoid conflicts between their duty to AgJunction and their own self-interest. (Complaint ¶¶ 98-99 and Attachments B-F to Complaint (Docket No. 1-1)).  Instead of resolving the conflict of interest between AgJunction and Agrian in favor of AgJunction, the Employee Defendants misappropriated confidential and proprietary information from AgJunction and shared it with Agrian.  (Complaint ¶¶ 100-101).  As a result, AgJunction has suffered damage in the form of the loss of at least one large customer account and goodwill.  (Complaint ¶ 80-81, 101).

Agrian contends that AgJunction's Complaint fails to give notice of the basis of Plaintiff's breach of duty of loyalty claim.  Def.'s Mem. at 14.  Defendants contend that AgJunction's Complaint "merely" states that the Employee Defendants "took actions, such as competing directly with AgJunction . . .  and secretly providing information to Agrian . . . . " *Id.* The actions taken are included in paragraphs 26-52 of the Complaint and provide sufficient notice to Employee Defendants.  In *Khalik* the Tenth Circuit clarified: "the *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of elements of a cause of action, which the Court stated will not do.  In other words, Rule 8(a)(2) still lives . . .  Under Rule 8, specific facts are not necessary; the statement need only give

defendant fair notice of what the . . .  claim is and the grounds upon which it rests."  671 F.3d at 1191-92.

## I.      <u>Count VIII Breach Of Fiduciary Duty By Defendants Dearborn And Hunt</u>

In Kansas, to establish a fiduciary duty, Plaintiff must show:  (1) the existence of a fiduciary relationship; (2) a duty arising out of the fiduciary relationship; (3) a breach of that duty; and (4) damages proximately caused by the breach of the duty.  *CoBank, ACB v. Reorganized Farmers Coop. Ass'n*, 334 F. Supp. 2d 1273, 1277–78 (D. Kan. 2004); *accord Cincinnati Ins. Co. v. Gage Ctr. Dental Grp., P.A.*, 2013 U.S. Dist. LEXIS 156844, at * 36 (D. Kan. Nov. 1, 2013).

Defendants Dearborn and Hunt were director-level employees of AgJunction and therefore had a fiduciary duty to the company.  (Complaint ¶ 103).  As such, Defendants Dearborn and Hunt had a fiduciary duty to maintain the confidentiality of AgJunction's proprietary information, to inform AgJunction if third parties were soliciting its employees, and to inform AgJunction if third parties were trying to access AgJunction's confidential or proprietary information.

In breaching their duties, Defendants Dearborn and Hunt failed to inform AgJunction that Agrian was soliciting AgJunction's employees including Defendants Dedmon, Nerpel, and Anderson.  (Complaint ¶¶ 104-105).  Evidence also suggests that Defendant Dearborn actively participated in Agrian's solicitation of Defendants Hunt, Dedmon, Nerpel, and Anderson.  (Complaint ¶ 105).  To compound the suspicious nature of their departures from AgJunction, the five Employee Defendants left AgJunction in seriatim from April 2013 through December 2013, with not one mentioning in their exit interviews that they intended to work shortly thereafter for Agrian.  (Complaint ¶¶ 106, 120).  Further, Agrian's miraculously quick entry into the agronomy

19

software market with a product that touted the same features as AgJunction's software further suggests a coordinated effort by Defendants Dearborn and Hunt to unlawfully access and disclose AgJunction's confidential and proprietary information to Agrian. (Complaint ¶¶ 17, 24-25, 92).

Agrian contends that the allegations against Hunt in Count VIII are insufficient.  Agrian ignores the fact that Count VIII incorporates paragraphs 41-43, which include Hunt's obligations under his employment agreement that he breached. (Complaint ¶¶ 41-43).  Both Hunt and Dearborn, as directors of AgJunction, owed fiduciary duties to AgJunction.  (Complaint ¶ 103). As to Dearborn, again Count VIII incorporates Dearborn's obligations under his employment agreement.  (Complaint ¶¶ 38-40).  As the non-moving party to Defendants' motion to dismiss, the Court must take all of the well-pleaded allegations in AgJunction's Complaint as true and view them in the light most favorable to AgJunction.  *See Shields*, 2014 U.S.App. LEXIS 3369, at *12.

**J.** **Count IX Tortious Interference With Employee Contracts By Defendants Agrian, Dearborn And Hunt**

Under Kansas law, the elements necessary to establish tortious interference with a contract are: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994) (quoting 45 Am. Jur. 2d Interference § 39).  In addition to the five elements, an action for "[t]ortious interference with a contract is predicated on malicious conduct by the defendant." *Id.*

Defendants Dearborn and Hunt, as director-level employees, knew that Defendants Dedmon, Anderson, and Nerpel had employment contracts with AgJunction that contained such provisions as a duty of loyalty, non-competition, and maintenance of confidentiality.  (Complaint

20

¶¶ 26, 104, 105).   Similarly, Agrian likely knew about those employment contracts through Defendants Dearborn and Hunt.   Defendants Agrian, Dearborn, and Hunt intended to have the other defendants breach the duties set forth in their employment agreements.   The nefarious nature of this inducement is demonstrated by the coordinated and serial manner in which the defendants left AgJunction, the fact that all Defendants misrepresented where they were going to work, and the rapidity with which Agrian was able to produce a competing software product. (Complaint ¶¶ 92, 105-108, 120).   AgJunction subsequently suffered damage in the form of at least one large customer account and loss of goodwill.   (Complaint ¶¶ 80-82, 116).

Agrian contends that AgJunction has not alleged "the existence of any agreement with Agrian that prohibited it from soliciting Plaintiff's employees, all of whom by the terms of their agreement were at-will employees." Def.'s Mem. at 16.   In paragraph 112 of the Complaint, AgJunction alleges that Defendant Agrian "knew of the Employee Defendants' employment agreements based on, among other things, its prior working relationship with Employee Defendants pursuant to the Agreement and the fact that each of them, all left the employ of AgJunction to immediately begin employment with Agrian."  (Complaint ¶ 112).   All of those employment agreements contained covenants not to compete or solicit, as well as restrictions on the use of AgJunction's confidential and proprietary information during the course of their employment and following termination of their employment.   (Complaint ¶¶ 26 -52)

### K.     Count X Conspiracy By All Defendants

"To state a claim for civil conspiracy under Kansas law, a plaintiff must allege facts sufficient to establish five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Carson v. Lynch Multimedia Corp.*, 123 F.

Supp. 2d 1254, 1261 (D. Kan. 2000).  In addition, the defendants must have committed a wrong that gives rise to a cause of action independent of the conspiracy claim.  *Id.*  "When all elements are present, any act done by a member of the conspiracy in furtherance of the common object and in accordance with the general plan becomes the act of all, and each conspirator is responsible for the act."  *Vetter v. Morgan,* 913 P.2d 1200, 1206 (Kan. Ct. App. 1995).

The Defendants are comprised of one entity and five employees, satisfying the first element of a claim of conspiracy.  From the resultant harm that AgJunction has suffered, the object of the conspiracy was to unlawfully obtain AgJunction's confidential and proprietary information to the benefit of Agrian.  The serial manner in which the five Employee Defendants left AgJunction for Agrian suggests that they had a meeting of the minds to conspire in stealing AgJunction's confidential and proprietary information.  (Complaint ¶¶ 118-124).  Further, the fact that all five Employee Defendants neglected to mention to AgJunction that they were going to work for Agrian suggests collusion.  (Complaint ¶¶ 120-21).  Finally, their unlawful use and disclosure of AgJunction's confidential and proprietary information has resulted in AgJunction's loss of at least one large customer account as well as industry goodwill.  (Complaint ¶¶ 80-81).

Defendants argue that Count X should be dismissed because AgJunction has failed to sufficiently plead any of the tort claims as independent "wrongs" in support of the alleged conspiracy.  As detailed above, Counts IV through IX, particularly paragraph 113 of Count IX, tortious interference with employment contracts as against Defendants Agrian, Dearborn and Hunt, AgJunction specifically alleges that Dearborn, Hunt, and Agrian "agreed, planned, and executed a coordinated effort to unlawfully solicit the Employee Defendants by Agrian." (Complaint ¶ 113).  AgJunction has alleged much more than that the employees had simply breached their employment agreements.  *Cf. Diederich v. Yarnevich*, 196 P. 3d 411, 420 (Kan.

22

Ct. App. 2008) ("Diederich has not alleged anything other than the Defendants breached the agreements they all entered into when organizing as a corporation.").

IV.    **CONCLUSION**

     In *Khalik*, 671 F.3d at 1190, the Tenth Circuit explained that under *Iqbal* and *Twombly* "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570).

     AgJunction's claims are well across the line from conceivable to plausible.

Date:  April 21, 2014               Respectfully submitted,

                           s/ Mark Brown
                           Mark Brown (Kansas Bar No. 9638)
                           mark@midwestip.com
                           Chris Debacker (Kansas Bar No. 24095)
                           chris@midwestip.com

                           LAW OFFICE OF MARK BROWN, LLC
                           4700 Belleview #210
                           Kansas City, MO 64112
                           Telephone: (816) 268-8950
                           Facsimile:  (816) 502-7898

                           Gerald P. Dodson (admitted *pro hac vice*)
                           jdodson@carrferrell.com
                           Robert J. Yorio (admitted *pro hac vice*)
                           yorio@carrferrell.com
                           Christine Watson (admitted *pro hac vice*)
                           cwatson@carrferrell.com
                           Bryan J. Boyle (admitted *pro hac vice*)
                           bboyle@carrferrell.com

                           CARR & FERRELL LLP
                           120 Constitution Drive
                           Menlo Park, CA 94025
                           Telephone:  (650) 812-3400
                           Facsimile:  (650) 812-3444

                           *Attorneys for Defendant AgJunction LLC*

23

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 21, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Mark Brown
Attorney

24