# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

AGJUNCTION LLC,

        Plaintiff,

v.

AGRIAN INC., ET AL.

        Defendant.

Case No. 14-CV-2069-DDC-KGS

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion to Dismiss for Failure to State a Claim (Doc. 33) filed by Defendants Agrian Inc., Jeffrey A. Dearborn, Aaron D. Hunt, Matthew C. Dedmon, David J. Nerpel, and Derrick B. Anderson. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants have moved to dismiss all ten counts asserted by Plaintiff AgJunction LLC in its Complaint. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss in part and denies it in part.

    **I.    Background Facts**

The following facts are taken from the Complaint. For purposes of a Rule 12(b)(6) motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws reasonable inferences in favor of the plaintiff. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008).

Plaintiff AgJunction LLC and Defendant Agrian, Inc. are makers and sellers of agronomy-related software. In addition to selling its own products, Agrian sometimes acts as a software reseller. In December 2012, AgJunction and Agrian entered into the "Master Services and Licensing Agreement" (the "Agreement"), under which AgJunction granted Agrian a license to

access and use AgJunction's software for the purpose of reselling or sublicensing the software to other companies.

The Agreement placed limits on Agrian's use of AgJunction's proprietary software. Section 2.1 of the Agreement provides that: "Reseller [Agrian's] access and use of the [software] shall only be for its internal use and for purposes of supporting" specified clients and customers. Section 9.1 states, "[Agrian] shall use Confidential Information only in performing under this Agreement and shall retain the Confidential Information in confidence and not disclose to any third party."

AgJunction filed this lawsuit on February 16, 2014, alleging that Agrian unlawfully copied AgJunction's proprietary software to create and begin selling a nearly identical competing product. The lawsuit also brings claims against five former AgJunction employees who now work for Agrian (the "Employee Defendants"). Each Employee Defendant entered into a "Confidentiality and Intellectual Property Agreement" with AgJunction (the "Employee Agreements"), under which they agreed not to disclose confidential information about AgJunction's software to third parties. The Employee Defendants had access to such information in their job duties at AgJunction.

One by one, from April 2013 through December 2013, the Employee Defendants resigned from AgJunction and began working for Agrian. AgJunction alleges that the Employee Defendants took confidential information about AgJunction's proprietary software with them when they departed AgJunction and provided it to Agrian in order to create competing software.

AgJunction's Complaint asserts various contract and tort theories against Defendants. Defendants have responded by filing this motion to dismiss all of AgJunction's claims.

2

## II. Legal Standards

Under Rule 12(b)(6), a defendant may move to dismiss any claim which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts sufficient for the court reasonably to infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This plausibility standard reflects the requirement in Fed. R. Civ. P. 8 that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir. 2012); *see also* Fed R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain [a] short and plain statement of the claim showing that the pleader is entitled to relief….").

Under Rule 12(b)(6), a district court must accept as true all factual allegations in the complaint, but need not afford such a presumption to any legal conclusions it may assert. *Iqbal*, 556 U.S. at 678. Viewing the complaint in this manner, a court must decide whether the plaintiff's allegations give rise to more than speculative possibilities. *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). If the allegations in the complaint at issue are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (quoting *Twombly*, 550 U.S. at 570).

### III. Discussion and Analysis

#### A. Breach of Contract Claims

In Counts I and II of its Complaint, AgJunction claims that Defendant Agrian (1) breached the Agreement it executed with AgJunction and (2) breached the covenant of good faith and fair dealing implied in the Agreement. In Count III, AgJunction claims that the Employee Defendants breached their Employee Agreements.

The parties agree that the Agreement's choice of law provision provides that the Agreement is to be construed under the laws of the state of Delaware. In addition, the parties agree that the Employee Agreements' choice of law provisions provide that the Employee Agreements are to be construed under the laws of the Canadian province of Alberta.

"Under Kansas law,[1] the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue." *Griffin v. Bank of America*, 971 F. Supp. 492, 496 (D. Kan. 1997). The Court determines that the forum selected by the respective choice of law provisions bears a reasonable relation to the Agreement and Employee Agreements. The Court therefore will apply Delaware law to Counts I and II and Alberta's law to Count III.

**Count I – Breach of Contract**

A claim for breach-of-contract under Delaware law requires a plaintiff to show (1) the existence of a contract, (2) the breach of an obligation imposed by the contract, and (3) damages

---

[1] A federal court exercising diversity jurisdiction applies the choice of law rules from the state where the court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, our Court looks to the choice of law principles adopted by Kansas law.

Kansas law generally honors contractual choice of law provisions, *National Equipment Rental, Ltd. v. Taylor*, 587 P.2d 870 (Kan. 1978), and no party contends that a different result is required here.

the plaintiff suffered as a result of the breach. *Osram Sylvania Inc. v. Townsend Ventures, LLC*, No. 8123, 2013 WL 6199554, at *6 (Del. Ch. Nov. 19, 2013).

Defendants take issue with Paragraph 56 of the Complaint, which alleges that: "Defendant Agrian has breached the terms of the Agreement by failing, among other things, to honor the obligations set forth in the Agreement to access and use AgJunction's confidential and protected information solely for the purpose of administering its reseller agreements…." Defendants argue that Paragraph 56 is the lone allegation of breach in the Complaint and that it "does not allege facts in sufficient detail so as to put Agrian on notice of the specific conduct [AgJunction] claims constitutes the breach."[2]

This argument misapprehends the pleading requirements of *Twombly*. Under Rule 8, the pleading need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). The Complaint alleges that AgJunction and Agrian entered the Agreement, the Agreement restricted the use of confidential and proprietary information, and that Agrian violated the terms of the Agreement by using the confidential and proprietary information to create its own competing software. Furthermore, Count I incorporates the preceding allegations in the Complaint, which describe the nature of the software and assert that Agrian misappropriated it to craft a competing product. Taken together, AgJunction has sufficiently "nudged [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the Court denies Defendants' motion to dismiss Count I.

---

[2] Doc. 34 at p. 4-5 (Memorandum in Support of Defendants' Motion to Dismiss).

**Count II – Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count II, AgJunction alleges that Agrian breached its obligation of good faith and fair dealing by misappropriating AgJunction's confidential and proprietary software system in violation of the Agreement.

The covenant of good faith and fair dealing is implied in every contract governed by Delaware law and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441-42 (Del. 2005). "However, the implied covenant of good faith and fair dealing … serves a gap-filling function by creating obligations *only where* the parties to the contract did not anticipate some contingency, and had they thought of it, the parties would have agreed at the time of contracting to create that obligation" (emphasis added). *Am. Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*, No. 8490, 2014 WL 354496, at *5 (Del. Ch. Feb. 3, 2014).

Thus, to plead a breach of the implied covenant of good faith and fair dealing adequately, a plaintiff must allege that the defendant committed some act not covered by the existing contract that, nevertheless, would have been prohibited had the parties thought of it at the time of contracting. AgJunction's Complaint falls short of this standard.

The Complaint's sole allegation of breach states that "Agrian has breached the implied covenant of good faith and fair dealing by unlawfully accessing and using AgJunction's confidential and proprietary software system for purposes beyond the limited scope of acceptable access and use *defined in the Agreement*…." (emphasis added).[3] Crucially, AgJunction never alleges any violations of the contract that are not specifically covered by the terms of the Agreement.

---

[3] Doc. 1 at ¶ 63 (Complaint).

Sections 2.1 and 9.1 of the Agreement provide that Agrian's "access" and "use" of AgJunction's software is restricted to internal purposes and must remain confidential. In Paragraph 63, AgJunction asserts nothing more than that Agrian accessed and used the proprietary software for its own gain, in violation of the Agreement. As a result, no implied contract terms are required to reach the conduct alleged, and AgJunction has failed to plead facts that "plausibly give rise to an entitlement to relief" under its implied good faith theory.

The Court recognizes that AgJunction may possess the wherewithal to ameliorate the shortcoming of the Complaint's current edition of Count II. Given the early and developing status of this lawsuit, the Court:

   (a) sustains Agrian's motion to dismiss Count II as currently pleaded; but also

   (b) grants AgJunction leave to amend its Complaint by repleading the cause of action
       Count II was intended to assert in the fashion mandated by *Twombly* and *Iqbal*.

If AgJunction chooses to replead its implied duty of good faith theory, it shall file an Amended Complaint within 10 days after this Order has issued.

**Count III – Breach of Contract By the Employee Defendants**

As stated above, this claim is governed by the laws of the Canadian province of Alberta. Each of the Employee Agreements contains an Alberta choice of law provision. Defendants argue that the Court should dismiss this Count for two reasons: (1) Count III is not pleaded with sufficient particularity because it asserts claims against all five Employee Defendants without specifically describing the conduct for which each is in breach and (2) non-competition agreements are unenforceable in Canada as a matter of law.

First, Defendants claim that AgJunction "tries to assert claims against five separate individuals" but "pleads no facts with respect to what acts performed by each individual Defendant

actually constitutes a contractual breach."[4] Looking at the Complaint as a whole, however, AgJunction alleges that each of the Employee Defendants provided confidential information to Agrian in violation of their Employee Agreements.[5] At this stage of the litigation, AgJunction has pleaded enough facts about each of the defendants to give the Employee Defendants fair notice of the claim and the grounds upon which it rests.

Second, Defendants claim that "portions of this count (¶¶ 71, 72 and 73) cannot state a claim as a matter of Canadian law."[6] The cited paragraphs allege that the Employee Defendants violated the non-compete and non-solicitation portions of their Employee Agreements. Defendants have cited a variety of authority that purports to render non-compete provisions unenforceable under Canadian law.

The Court need not reach that issue to decide this motion because Defendants do not dispute that Paragraph 70 of Count III states a valid and recognized claim of breach. Paragraph 70 alleges that the Employee Defendants have breached the terms of their Employee Agreements by failing to "maintain the confidentiality of AgJunction's proprietary, and/or secret information…."[7] Defendants never argue that confidentiality agreements are unenforceable as a matter of law in Canada. Count III plausibly asserts a viable theory of breach of contract and that alone is sufficient to deny Defendants' motion. As a result, the Court denies Defendants' motion to dismiss Count III.

---

[4] Doc. 34 at p. 7-8 (Memorandum in Support of Defendants' Motion to Dismiss).

[5] *See* Doc. 1 at ¶¶ 38-52, 70-74 (Complaint).

[6] Doc. 34 at p. 9 (Memorandum in Support of Defendants' Motion to Dismiss).

[7] Doc. 1 at ¶ 70 (Complaint).

### B. Tort Claims

Counts IV through X of the Complaint assert tort causes of actions against Defendants. The parties agree that Kansas substantive law governs these claims, and the Court concurs.[8]

**Count IV – Intentional Interference with Business Advantage by All Defendants**

Under Kansas law, the elements for intentional interference with a business advantage are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by the plaintiff as a direct or proximate cause of defendant's misconduct." *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003).

Defendants argue the Court should dismiss Count IV's claim because "[AgJunction] fails to identify a single business expectancy it has lost…."[9] To survive a motion to dismiss, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Here, AgJunction fails to provide specific allegations to support a claim that it has suffered any harm.

AgJunction merely alleges that had Defendants not unlawfully copied AgJunction's proprietary software, AgJunction "would have been reasonably certain to have continued its rela-

---

[8] With tort claims, the Court looks to Kansas' general tort conflicts rule to determine what substantive law governs. The Kansas Supreme Court has held that the law of the state where the tort occurs controls. *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (1985). Under this rule, the tort occurs where the wrong was felt. *Id.* In the case of alleged financial harm, as is the case here, the court looks to the state in which the plaintiff experienced the harm. *Ayres v. AG Processing Inc.*, 345 F. Supp. 2d 1200, 1210 (D. Kan. 2004). For each of the torts alleged, AgJunction asserts it experienced the alleged injuries in Kansas.

[9] Doc. 34 at p. 11 (Memorandum in Support of Defendants' Motion to Dismiss).

9

tionships with its existing customers, renewed its expiring relationships with existing customers, or realized the expectancy of new customer relationships."[10] "As a direct and proximate result of Defendants' unlawful conduct, AgJunction has suffered and will continue to suffer damages in an amount to be determined at trial."[11]

However, these allegations simply advance bare assertions that AgJunction suffered damages, without reciting any specific allegations to back up the claim. From Paragraph 81 of the Complaint, it is possible to infer a blanket allegation that a business expectancy was lost due to Defendants' conduct. But, AgJunction offers no more than that—it fails to identify a single specific existing or prospective customer that it lost as a result of Defendants' conduct.

In fairness, AgJunction's Complaint makes one try to strengthen its harm allegations in Paragraph 80. There AgJunction asserts that it "is informed and believes that Defendant Agrian and/or the Employee Defendants *solicited* business from one or more of AgJunction's existing and/or potential customers" (emphasis added).[12] The ordinary meaning of the word "solicit" means to ask for or try to obtain something from someone. Thus, the mere fact that Defendants "solicited" business from existing customers in no way establishes that AgJunction actually lost an existing or prospective customer. AgJunction's conclusory allegations that it suffered harm as a result of Defendants' conduct are not enough to raise the right to relief "above the speculative level," as *Iqbal* and *Twombly* require.

Tacitly recognizing this, AgJunction tries to supplement its allegations in its Opposition to Defendants' Motion to Dismiss. Citing to Paragraphs 26, 79, and 80 of the Complaint, it claims that Defendants "have already succeeded in convincing one of AgJunction's largest cus-

---

[10] Doc. 1 at ¶ 81 (Complaint).

[11] Doc. 1 at ¶ 82 (Complaint).

[12] Doc. 1 at ¶ 80 (Complaint).

10

tomers to switch its contracts" from AgJunction to Defendants.[13] This misportrays the allegations in its pleading. The cited paragraphs merely assert that Defendants "*solicited*" business. They never allege the factual premise that AgJunction lost one its biggest customers to Agrian and neither does any other aspect of the Complaint.

The Court recognizes that AgJunction may possess the wherewithal to ameliorate the shortcoming of the Complaint's current edition of Count IV. Given the early and developing status of this lawsuit, the Court:

      (a) sustains Agrian's motion to dismiss Count IV as currently pleaded; but also

      (b) grants AgJunction leave to amend its Complaint by repleading the cause of action Count IV was intended to assert in the fashion mandated by *Twombly* and *Iqbal*.

If AgJunction chooses to replead its intentional interference with business expectancy theory, it shall file an Amended Complaint within 10 days after this Order has issued.

**Count V – Violation of Kansas Uniform Trade Secrets Act By All Defendants**

Defendants argue that the Court should dismiss Count V for two reasons: (1) AgJunction does not plead sufficient details to establish the existence of a trade secret and (2) AgJunction provides no facts alleging how each Defendant, individually, misappropriated trade secrets.

First, Defendants argue that AgJunction "does not even attempt to specifically identify a trade secret" under the KUTSA.[14] The Complaint asserts, however, that AgJunction claims its proprietary agronomy software and related data as a trade secret. For instance, it states that "the Employee Defendants … illegally copied AgJunction's confidential and proprietary software system and the confidential, protected data collected by the software system."[15] In addition, the

---

[13] *See* Doc. 41 at p. 15 (AgJunction's Opposition to Motion to Dismiss).

[14] Doc. 34 at p. 13 (Memorandum in Support of Defendants' Motion to Dismiss).

[15] Doc. 1 at ¶ 29 (Complaint).

Employee Defendants "unlawfully provided … Defendant Agrian access to AgJunction's confidential and proprietary software system and the confidential, protected data contained therein."[16] Later in the Complaint, AgJunction asserts that Agrian "disclosed AgJunction's secret information, including information relating to AgJunction's software, databases, and customer information…."[17] AgJunction has provided sufficient factual detail to make the existence of a trade secret plausible.

Second, Defendants claim that "[AgJunction] asserts this claim as to all Defendants generally, but provides no distinction regarding which of the defendants specifically did what acts that are claimed to violate the Kansas Uniform Trade Secrets Act."[18] The Court disagrees. AgJunction alleges that Defendant Agrian "disclosed AgJunction's secret information, including information relating to AgJunction's software, databases, and customer information" and that Agrian "received AgJunction's secret information from the Employee Defendants during the term of the Employee Defendants' employment with AgJunction."[19] Thus, contrary to Defendants' claim, the Complaint distinguishes among the Defendants: Agrian knowingly received secret information provided by each of the Employee Defendants. Additional factual detail is unnecessary at this early stage of litigation. Therefore, the Court denies Defendants' motion to dismiss Count V.

**Count VI – Common Law Unfair Competition Against All Defendants**

Defendants again argue that AgJunction has not alleged the necessary specific conduct by each of the five Employee Defendants to state a claim against them. This is a rerun of Defend-

---

[16] Doc. 1 at ¶ 30 (Complaint).

[17] Doc. 1 at ¶ 84 (Complaint).

[18] Doc. 34 at p. 11 (Memorandum in Support of Defendants' Motion to Dismiss)

[19] Doc. 1 at ¶¶ 84, 85 (Complaint).

ants' attack on Count V. As explained above, AgJunction's Complaint states that each Employee Defendant unlawfully took proprietary information and provided it to Agrian. This level of detail is sufficient to survive a motion to dismiss.

Defendants next argue that the Kansas Uniform Trade Secrets Act preempts this claim. Section 60-3326(a) of the KUTSA provides that "[e]xcept as provided in subsection (b), this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." But, subsection (b)(2) of the KUTSA provides explicitly that "other civil remedies that are not based upon misappropriation of a trade secret" are not preempted. K.S.A. § 60-3326(b)(2).

Our Court previously has explained how Kansas views this common law claim:

Unfair competition … does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

*Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, 144 F. Supp. 2d 1268, 1271 (D. Kan. 2001).

One fairly can read AgJunction's allegations to extend beyond a trade secret claim. For instance, AgJunction states that "Agrian now markets, advertises, offers to sell, sells, offers to license, and licenses a software product with allegedly comparable features and functionality to AgJunction's software system, which it licensed from AgJunction under the Agreement."[20] These allegations differ from those in AgJunction's KUTSA claim and could constitute a distinct form of wrongdoing. At this stage of the litigation, given the "open-ended" nature of an unfair competition claim, the Court finds that AgJunction has pleaded sufficient facts to establish this claim as "plausible." As a result, the Court denies Defendants' motion to dismiss Count VI.

---

[20] Doc. 1 at ¶ 92 (Complaint).

13

**Count VII – Breach of Duty of Loyalty Against All Employee Defendants**

Defendants again raise the argument that AgJunction has improperly lumped the Employee Defendants together, without making specific allegations against each one. The Court rejects this argument for the same reasons stated above.[21]

In addition, Defendants argue that the Complaint fails to give them notice of how they breached the duty of loyalty. The Complaint reveals the opposite. AgJunction alleges that "the Employee Defendants took actions, such as competing directly with AgJunction while still employed at AgJunction and secretly providing information to Agrian…"[22] The Complaint contains numerous allegations that the Employee Defendants illegally took AgJunction's proprietary software and gave it to Agrian.[23] Therefore, the Court concludes that AgJunction has pleaded sufficient facts to give Defendants fair notice of the claim and the grounds upon which the claim rests. The Court denies Defendants' motion to dismiss Count VII.

**Count VIII – Breach of Fiduciary Duty Against Defendants Dearborn and Hunt**

Defendants argue that this claim lacks sufficiently specific allegations about both Hunt and Dearborn. First, Defendants claim that the Court should dismiss the claim against Hunt because AgJunction has made no specific allegations of breach against him. However, Count VIII reincorporates the rest of the Complaint, and elsewhere the Complaint asserts that Defendant Hunt misappropriated AgJunction's proprietary software and gave it to Agrian.[24] This specific factual allegation plausibly states a breach of fiduciary duty claim against Hunt, satisfying *Twombly*.

---

[21] *See supra* at p. 10 ("Thus, contrary to Defendants' claim, the Complaint distinguishes among the Defendants: Agrian knowingly received secret information provided by each of the Employee Defendants.").

[22] Doc. 1 at ¶ 100 (Complaint).

[23] *See* Doc. 1 at ¶¶ 26-52 (Complaint).

[24] *See, e.g.* Doc. 1 at ¶ 100 (Complaint).

In addition, Defendants argue that AgJunction has failed to plead sufficient facts to state a claim against Defendant Dearborn. This argument is not persuasive. AgJunction has alleged that "Defendant Dearborn led a coordinated effort by Agrian and the Employee Defendants to unlawfully solicit Defendants Hunt, Dedmon, Nerpel, and Anderson for employment by Agrian."[25] The fact that each Employee Defendant left AgJunction for Agrian in the span of several months lends plausibility to the claim that Dearborn breached its fiduciary duty. As a result, the Court denies Defendants' motion to dismiss Count VIII.

**Count IX – Tortious Interference with Employment Contracts Against Agrian, Dearborn and Hunt**

The elements for a claim of tortious interference with contract are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) its intentional procurement of the breach; (4) the absence of justification for the breach; and (5) damages resulting therefrom. *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 150 (Kan. 2003). Defendants argue that the Court should dismiss Count IX because AgJunction cannot prove an essential element of a claim for contract interference: that breach of the contracts occurred or was procured.

The Court rejects this argument. AgJunction alleges that the Defendants "agreed, planned, and executed a coordinated effort to unlawfully access, use, disclose, and/or copy AgJunction's confidential and proprietary information … for the benefit of Agrian and the Employee Defendants."[26] Earlier in the Complaint, AgJunction alleged that that the Employee Agreements prohibited disclosure of proprietary AgJunction software to other parties. Thus, AgJunction has asserted facts that, if true, would establish that: (1) the Employee Agreements prohibited disclosure of AgJunction's software; and (2) the Defendants coordinated to access and

---

[25] Doc. 1 at ¶ 105 (Complaint).

[26] Doc. 1 at ¶ 114 (Complaint).

use the protected software in a manner not prohibited by the Agreement. AgJunction has satisfied its burden under *Twombly*, and thus the Court denies Defendants' motion to dismiss Count IX.

**Count X – Conspiracy Against All Defendants**

To properly plead a claim for conspiracy, a plaintiff must allege that one or more unlawful acts occurred as a result of the conspiracy. *Kincaid v. Dess*, 298 P.3d 358, 369 (Kan. Ct. App. 2013). Defendant's sole argument for dismissing this Count is that AgJunction has failed to plead any of the tort claims in its Complaint sufficiently.

As explained above, the Court has concluded that AgJunction adequately pleaded the tort claims asserted in Counts V – IX of the Complaint. Therefore, the Court denies Defendants' motion to dismiss Count X.

### IV. Summary

For the reasons set forth above, the Court grants Defendants' Motion to Dismiss in part and denies it in part. The Court grants Defendants' Motion to Dismiss AgJunction's claims for Breach of the Covenant of Good Faith and Fair Dealing (Count II) and Intentional Interference with Business Advantage (Count IV). The Court denies Defendants' Motion to Dismiss Count I, Count III, and Counts V – X.

**IT IS ACCORDINGLY ORDERED** that Defendants' Motion to Dismiss (Doc. 33) is hereby granted in part and denied in part. But, as explained elsewhere in this Order, the Court also grants AgJunction leave to replead the claims asserted in Count II and Count IV to rectify the shortcomings identified in the portions of this Order discussing those two claims. AgJunction must file and serve any such amendments within 10 days of the issuance of this Order. Nat-

16

urally, AgJunction may replead the claims asserted in Count II and Count IV only if it complies with the standards set forth in the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**Dated this 6th day of June, 2014, at Topeka, Kansas**

*/s/ Daniel D. Crabtree*
**Daniel D. Crabtree**
**United States District Judge**