Case 2:14-cv-02069-DDC-KGS  Document 144-1  Filed 07/10/14  Page 1 of 8

|  |  |  |
|---|---|---|
| 1935<br>*Feb. 13, 14.<br>*June 10. | ROBERT W. MAGUIRE (DEFEND-<br>ANT) .............................. | APPELLANT; |
|  | AND |  |
|  | NORTHLAND DRUG COMPANY,<br>LIMITED (PLAINTIFF) ............ | RESPONDENT. |

ON APPEAL FROM THE COURT OF APPEAL FOR MANITOBA

*Contract—Bond given by employee not to set himself up in like business or work—Consideration—Enforceability—Public policy—Restraint of trade—Rights of employer—Onus.*

The appellant, after being in the employment of the respondent company for about eleven months in its retail drug business in Flin Flon, signed a bond under seal in the sum of $5,000 which, after reciting that the respondent company had agreed to take him into its employment as a druggist, stated the condition of the bond was that if he should leave or be dismissed from the respondent's services he would not set himself up in like business or work for anyone else within 25 miles from Flin Flon within a period of five years after such leaving or dismissal. The appellant understood that his refusal to execute the covenant would lead to an early termination of his employment. About four years later the respondent company terminated the employment by giving the appellant one month's notice, and soon after his dismissal, the appellant entered service with another drug company which had opened a drug store immediately adjoining the respondent's store. Alleging breach of covenant, the respondent company brought action on the bond for the penal

---

*PRESENT:—Duff C.J. and Lamont, Cannon and Davis JJ. and Dysart J. *ad hoc.*

(1) [1911] 1 K.B. 19.



Case 2:14-cv-02069-DDC-KGS   Document 144-1   Filed 07/10/14   Page 2 of 8

1935
⌣
MAGUIRE
*v.*
NORTHLAND
DRUG
CO. LTD.

Davis J.

sum of $5,000, and, at the trial, was allowed to ask for additional relief by way of injunction. The trial judge dismissed the action on the ground that there was no consideration for the bond. The majority of the Court of Appeal held that the bond was sufficiently supported by consideration and was otherwise enforceable.

*Held* that there was in this case legal consideration for the bond; but, reversing the judgment of the Court of Appeal ([1934] 2 W.W.R. 298), that, under the circumstances of this case, the bond was unreasonable and unenforceable.

*Per* Davis J.—A master is not permitted to impose restraint outside of reasonable limits upon his servant, after discharge, from turning his skill and knowledge to the best account and the respondent company failed to establish facts and circumstances surrounding the employment of the appellant sufficient for the Court to say that the agreement was reasonable.

APPEAL from the judgment of the Court of Appeal for Manitoba (1), reversing the judgment of the trial judge, Adamson, J. (2) and maintaining respondent's action by awarding damages in the sum of $2,000 for past breach, and granting an injunction against further breach, of a covenant in restraint of trade as between an employer and an employee.

The material facts of the case and the questions at issue are stated in the above head-note and in the judgments now reported.

*O. M. Biggar K.C.* and *M. B. Gordon* for the appellant.

*E. F. Newcombe K.C.* for the respondent.

The judgment of Duff C.J. and Lamont and Cannon JJ. and Dysart J. *ad hoc* was delivered by

DYSART J. *ad hoc*—This is an appeal from the Court of Appeal for Manitoba (1) pronounced the 14th day of May, 1934, setting aside a judgment of Adamson J. (2), and awarding damages in the sum of $2,000 for past breach, and granting an injunction against future breach, of a covenant in restraint of trade as between an employer and an employee.

The Northland Drug Company, a partnership, was doing retail drug business at the town of The Pas in Northern Manitoba in January, 1928, and had planned to open up branch stores at Flin Flon and other mining localities in that part of the province. In January, the company engaged the appellant, a pharmaceutical druggist, to enter its

(1) [1934] 2 W.W.R. 298.        (2) [1933] 3 W.W.R. 82

1935
MAGUIRE
*v.*
NORTHLAND
DRUG
CO. LTD.

Dysart J.

employ with the view of taking charge of the Flin Flon store when opened. The hiring was by the month at a monthly salary of $200 and certain living privileges. After a few weeks spent at The Pas, the appellant was placed in charge of the newly-opened Flin Flon store and there continued in the capacity of manager until September, 1932, when he was dismissed on one month's notice. In the interval, in May, 1928, the said partnership was changed to an incorporated company, and in December of that year, nearly eleven months after the commencement of his employment, the appellant executed the covenant in question.

The covenant is in the form of a bond under seal, and is conditioned as follows, that,

> The said Robt. W. Maguire shall not while in the employment of the said Northland Drug Company, Limited, or its successors in business, whether in his present or any other capacity, or during the period of five years after he shall * * * have ceased to be so employed, directly or indirectly, and whether as principal, agent, director of a company, traveller, servant or otherwise, carry on, or be engaged, or concerned, or take part in the business of retail druggist, or such sundry business as is usual to the retail drug within 25 miles of Flin Flon Mine, except on behalf of or with the consent in writing of the said Northland Drug Company, Limited, or its successor in business.

The circumstances in which the bond was executed were as follows: the general manager of the respondent, in one of his frequent visits to the Flin Flon store for the purposes of inspection and overseeing, produced the document which he had had prepared for the occasion, and requested the appellant to sign it, stating that all branch managers of the respondent were required to sign similar bonds. This was the first intimation the appellant had of any such requirement. Nevertheless, he signed without protest or objection. Thereafter he continued in his employment, without change in the tenure thereof or in the scope of duties, until dismissed nearly three years later.

The appellant's duties are not clearly defined in evidence. His work at the store at The Pas was presumably intended as preparatory for his work at the Flin Flon, and we may assume that he was there made acquainted with many of his employer's business methods and practices. At Flin Flon he is said to have been "in charge of" the store as "manager," but the bond recites that he was employed "in the capacity of druggist." It appears that he gave orders for the purchase of merchandise from time to time, but always subject to the supervision and directions of

the respondent's general manager; and also that he acted as salesman in the store. The scope and nature of the business carried on at the Flin Flon store are variously supposed to include the sundry businesses usual to a retail drug store, adapted to the needs of a frontier mining town.

1935

MAGUIRE
v.
NORTHLAND
DRUG
CO. LTD.

Dysart J.

Soon after his dismissal, the appellant entered service in another drug store, which then opened at Flin Flon immediately adjoining the respondent's store, in which employment his duties were quite similar to those which he had performed for the respondent. Alleging breach of covenant, the respondent brought action on the bond for the penal sum of $5,000, and, at the trial, was allowed to ask for additional relief by way of injunction. The learned trial judge (1), feeling that he was bound by the decision of the Manitoba Court of Appeal in the case of *Copeland-Chatteton* v. *Hickok* (2), dismissed the action on the ground that there was no consideration for the bond. On appeal, the majority of the learned judges distinguished the *Copeland-Chatteton* case (2) and held that the bond was sufficiently supported by consideration and was otherwise enforceable. Trueman and Robson JJ. dissenting, differed on the point of consideration, but were both of opinion that the covenant was unreasonable and therefore unenforceable.

There was ample consideration for the bond. Although the necessity of proving consideration for the covenant is not dispensed with by the presence of a seal in a case of this kind, sufficient appears from the evidence adduced at the trial to establish, that the employee was given to understand, and did understand, that his refusal to execute the covenant would lead to an early termination of his employment, and that the employer tacitly promised that if the bond were signed, the employment would not soon be terminated. On this mutual understanding the covenant was entered into, and thereafter the employer refrained indefinitely from exercising its legal right to issue the notice which, at the expiration of one month, would terminate the employment. This continuance of employment constitutes legal consideration, the adequacy of which will not

(1) [1933] 3 W.W.R. 82.   (2) (1907) 16 Man. R. 610.

1935
Maguire
v.
Northland
Drug
Co. Ltd.

Dysart J.

be inquired into by courts: *Gravely* v. *Barnard* (1); *Skeans* v. *Hampton* (2).

The decision in this case must turn on the larger question of whether or not this particular covenant is one which ought to be enforced. Public policy, as interpreted by the courts, requires on the one hand that employers be left free to protect from violation their proprietary rights in business, and on the other hand, that every man be left free to use to his advantage his skill and knowledge in trade. In the weighing and balancing of these opposing rights, the whole problem in cases of covenants in restraint of trade is to be found. Less latitude is allowed in the enforcement of restrictions as between employer and employee than as between vendor and purchaser of good will. *Prima facie* all covenants in restraint of trade are illegal and therefore unenforceable: *Morris* v. *Saxeby* (3). The illegality being a presumption only, is rebuttable by evidence of facts and circumstances showing that the covenant is reasonable, in that it goes no further than is necessary to protect the rights which the employer is entitled to protect, while at the same time it does not unduly restrain the employee from making use of his skill and talents. The onus of rebutting the presumption is on the party who seeks the enforcement, generally the covenantee. Reasonableness is the test to be applied in ascertaining whether or not the covenant is a fair compromise between the two opposing interests.

The practical question then is this, (1) what are the rights which the employer is entitled to protect by such a covenant, and (2) does the covenant not go beyond what is reasonably adequate in furnishing that protection. Proprietary rights, such as secrets of manufacturing process and secret modes of merchandising, clearly come within the group of rights entitled to protection. So also is the right of an employer to preserve secret information regarding his customers, their names, addresses, tastes and desires: *Mason* v. *Provident Clothing Co.* (4). Competition, as such, is something which will not be restrained: *Vancouver Malt & Sake Brewing Co.* v. *Vancouver Breweries Ltd* (5).

(1) (1874) 18 Eq. 518.        (3) [1916] 1 A.C. 688.
(2) (1914) 31 O.L.R. 44.      (4) [1913] A.C. 724.
           (5) [1934] A.C. 181.

S.C.R.]         SUPREME COURT OF CANADA                417

The information and training which an employer imparts to his employee become part of the equipment in skill and knowledge of the employee, and so are beyond the reach of such a covenant; *Leng* v. *Andrews* (1). The covenant in any event must not go further than is reasonably adequate to give the protection that is to be afforded; if it goes too far or is too wide, either as to time or place or scope, it will not be enforced; and if bad in any particular, it is bad altogether; *Mason* v. *Provident Clothing Co.* (2).

 Viewed in the light of these well-established principles, the case before us disclosed several grave defects and weaknesses. The evidence discloses no special proprietary rights, and we are left to infer from the general nature of the business what general rights were entitled to protection. We are not told that there were any secrets of manufactuing or of buying or selling to be protected; no private knowledge concerning customers, their names, addresses, is revealed. Even if there were any such, the evidence does not show that the employer imparted to the employee in confidence any information concerning any of these matters. There is no hint that the employee has ever abused or misused, or that he has threatened or is likely, to abuse or misuse any such information. In the face of the almost entire lack of evidence on these points, the Court should not supply the deficiencies from the realm of conjecture or supposition.

 The only evidence offered in support of the claim for relief is that the respondent's gross sales substantially declined in the months following the employee's change of employment. The decline, however, had already set in before 1932 and had more than once been called to the attention of the employee; how far, if at all, it had been a factor in bringing about his dismissal is not mentioned. But the decline in sales must have been due in large measure to the general depression in business, and perhaps to the existence of the new competing store,—two factors against neither of which the employer had a right to be protected by this covenant. It is said that some customers transferred their patronage from the old to the new store, and that this is to be counted a violation of the covenant.

1935<br>
Maguire<br>
v.<br>
Northland<br>
Drug<br>
Co. Ltd.<br>
<br>
Dysart J.

(1) [1909] 1 Ch. 763.        (2) [1913] A.C. 724.

1935

Maguire
v.
Northland
Drug
Co. Ltd.

Dysart J.

The customers were free to change their patronage at will, and to show their preference for superior attractions in a rival store, or for the personality and efficiency of the salesmen thereof. So long as the change was not brought about by the solicitation and canvassing of the appellant, there could be no good grounds for complaint.

If the purpose of the bond was to prevent competition, it is illegal, and it is difficult to see that its main purpose was not to prevent competition. The secrets of trade, if any must have been acquired by the covenantee long before the bond was given. The nature of the business would indicate that in the purchasing and disposing of goods there was little that was secret or peculiar to this company. In opening up the store at Flin Flon, the employer took financial risks which increased as time went on, and gross sales began to decline. Considering the time and circumstances in which the bond was taken, it appears that one of its main objects was to prevent competition. If so, the bond is unenforceable.

Moreover, the bond goes beyond what is reasonably adequate in furnishing any protection to which the employer could conceivably be entitled. It forbids the covenantee, not only from violating proprietary rights, but from exercising his right to follow his trade or calling in any capacity, however humble or obscure, or however remote from the danger of infringing any proprietary rights of the covenantee.

For all these reasons, we think the bond is unreasonable, and is not enforceable. The appeal is allowed and the judgment of the trial judge is restored with costs throughout.

Davis J.—I agree that this appeal must be allowed and the judgment of the trial judge restored with costs throughout. This conclusion I reach upon the simple ground that a master is not permitted to impose restraint outside of reasonable limits upon his servant, after discharge, from turning his skill and knowledge to the best account and that the respondent (plaintiff) failed to establish facts and circumstances surrounding the employment of the appellant (defendant) sufficient for the Court to say that the agreement was reasonable.

1935

MAGUIRE
*v.*
NORTHLAND
DRUG
CO. LTD.

Davis J.

The continuance of the appellant in the service of the respondent was in itself sufficient consideration for an agreement imposing a reasonable restraint, but the respondent having failed to establish that the restraint imposed by the agreement was reasonable under all the circumstances, the action to enforce the agreement must fail. The appeal should be allowed and the judgment at the trial restored with costs throughout.

*Appeal allowed with costs.*

Solicitor for the appellant: *C. C. Sparling.*

Solicitor for the respondent: *J. A. Campbell.*