IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AGJUNCTION LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-CV-02069-DDC-KGS |
| ) | |
| AGRIAN INC., et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 FOR THE
UNREASONABLE BREACH OF CONTRACT CLAIMS AGAINST DEFENDANTS**

As detailed in Defendants' recently filed Opposition to Plaintiff's Motion to Dismiss Without Prejudice, over the eight (8) months this litigation has been pending, Plaintiff has been unable to muster evidence sufficient to facially support any of its claims. Defendants continue to vigorously deny and defend the allegations against them and look forward to the opportunity to be vindicated.

The scope of this motion, however, is much more limited. This motion focuses on two specific allegations that: (1) Derrick Anderson breached his (nonexistent) Confidentiality Agreement with AgJunction and (2) the Employee Defendants' Employment and Confidentiality Agreements with AgJunction included enforceable non-competition and non-solicitation provisions. *See* Count II, First Amended Complaint (Doc. # 111). With respect to the claim against Derrick Anderson, it is clear that Plaintiff filed this claim without even the barest of a minimally sufficient factual basis. In fact, Plaintiff's own CEO admits Anderson never signed any such agreement. Furthermore, Plaintiff and/or its attorneys clearly failed to investigate whether Canadian law even arguably supported its breach of contract claims. Yet in the face of

overwhelming contrary facts and law, and despite having engaged the Defendants in substantial discovery and other legal work, Plaintiff continued to prosecute its unsupportable claims.

Plaintiff should never have filed either of the aforementioned allegations.  And, if it chose to do so, Plaintiff—*along with its attorneys*—undoubtedly had a continuing obligation to abandon its quest for claims once their lack of viability was revealed.  This Court should not condone such behavior from parties or counsel.  Because counsel has vexatiously and unnecessarily extended the present action in the manner described herein in that the defendants were forced to incur additional costs and legal expenses, spend more time away from their business and, in the case of Derrick Anderson, forego certain business activities without a contractual obligation to do so, sanctions are warranted against Plaintiff's attorneys pursuant to 28 U.S.C. § 1927.[1]

## BACKGROUND

As stated above, the full background of the proceedings in this case that are relevant to this motion is detailed in Defendants' recently filed Opposition to Plaintiff's Motion to Dismiss Without Prejudice and, thus, is incorporated by reference.  Consequently, the full history of the litigation will not be repeated here.  Instead, this section outlines certain facts that are particularly pertinent to the claims at issue in this motion.

---

[1] This motion addresses the question of vexatiously continuing the lawsuit as to the claims identified herein.  To address the failure of Plaintiff to adequately investigate its claims prior to filing suit, Defendants also are providing Plaintiff with notice of their intent to file a Rule 11 Motion for sanctions.  The fact that the Plaintiff has now, eight (8) months later, moved to dismiss all claims, without prejudice, does not excuse their obligation under Rule 11 and 28 U.S.C. § 1927.  In fact, because the proposed without prejudice dismissal arguably may eliminate the possibility of a malicious prosecution claim, Rule 11 and 28 U.S.C. § 1927 are the only avenues for addressing and deterring Plaintiff's egregious conduct.  These rules are designed to insure harassing, anti-competitive litigation cannot be filed and prosecuted without factual foundation.  Lawsuits based on speculation should not be condoned.

*Claims Against Derrick Anderson*

In the original Complaint, Plaintiff alleged that the Employee Defendants, including Derrick Anderson, breached duties allegedly created in their employment agreements. Compl. ¶¶ 66-75. The majority of these duties and obligations were purportedly contained in a "Confidentiality and Intellectual Property Agreement" Plaintiff claimed each Employee Defendant signed. As to Anderson, Plaintiff's Complaint contained the following allegation:

> As part of and as a condition of Defendant Derrick Anderson's continued employment with AgJunction, subsequent to Hemisphere GPS Inc.'s acquisition of AgJunction, Defendant Anderson entered into a Confidentiality and Intellectual Property Agreement in or about January 2012 ("Anderson Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Attachment F and incorporated herein by reference.

Compl. ¶ 50. The Complaint even went on to specifically allege, in pertinent part, that "the Anderson Agreement also required Defendant Anderson to abide by *conflict of interest, non-competition, and non-solicitation terms.*" *Id.* at ¶ 51 (emphasis added). Finally, Plaintiff claimed that these conflict of interest, non-competition and non-solicitation terms survive Anderson's departure from employment by AgJunction. *Id.* at ¶ 52. Notably, however, "Attachment F" did not contain Anderson's alleged Confidentiality and Intellectual Property Agreement. Every one of the other Employee Defendants had the agreement attached, but not Anderson.

In Count III of the Complaint, Breach of Contract as against Defendants Dearborn, Hunt, Dedmon, Nerpel, Anderson, Plaintiff claimed that each of the Employee Defendants agreed to the "no conflict of interest, non-competition, and non-solicitation terms." *Id.* at ¶¶ 68-69. Plaintiff also claimed that each Employee Defendant, including Anderson, breached their non-competition and non-solicitation obligations under the Agreement. *Id.* at ¶¶ 72-74. The damages

AgJunction claimed to have incurred as a result of this breach are in excess of $1,000,000.00. *Id.* at ¶ 77. These claims were reiterated during the April 22, 2014 status hearing before Judge Robinson. Transcript of April 22, 2014 Status Hearing (Doc. #79-5), at pp. 9-10.[2]

Anderson was deposed on May 22, 2014. At his deposition, he testified that he did not recall seeing or signing the agreement. Deposition of Derrick Anderson (Doc. #81-3), at 31:22–32:2. Further, Plaintiff's counsel did not present to Anderson any Confidentiality and

---

[2] Counsel for AgJunction also made additional and, in light of facts revealed during discovery, serious representations as to his client's purported possession of evidence concerning the alleged wrongdoing by the Employee Defendants and Agrian, including claims that discovery was being requested for the preliminary injunction hearing concerning the Defendants' alleged "taking information with them that we want to further pin…down…what we all ready [sic] have evidence of" (Doc. #79-5, p. 8); that AgJunctions's software "was misappropriated by Agrian and used to build a platform [and] … we believe and *can prove* that Agrian has used that software in order to build a broader platform to compete with AgJunction" (Doc. #79-5, p. 10) (emphasis added); that "we have [evidence] that this was a conspiracy to exodus AgJunction with their software, and it's *being used* to illegally compete" (Doc. #79-5, p. 12) (emphasis added); and that "what's happening right now is all the information from AgJunction *is being bled* into the Agrian platform, and these employees were solicited to do it." (Doc. #79-5, p. 22) (emphasis added). *See also Id.* at pp. 13-14 ("But from what we see in the e-mail *that we have access to*, it will just *further amplify the evidence that will entitle our client to a preliminary injunction.*") (emphasis added); p. 18 ("And as far as Miss Archer's comment about the defendants don't know what *was taken*, I want to be really clear about that, it's the software.") (emphasis added); pp. 19-20 (exchange with Judge Robinson responding to her question as to what counsel meant when he said "services have been taken"). Discovery, as well as the hearing testimony revealed that the Plaintiff's claims were and are based not in fact, but on pure speculation. *See* Memorandum and Order Denying Preliminary Injunction (Doc. #145), p. 9 (finding AgJunction's misappropriation claims to be "pure speculation."); *see also* Defendants' Deposition Designations for the Videotaped Deposition of Rick W. Heiniger (Doc. #142-5, filed July 10, 2014), at 118:13-22 ("*without having gathered any factual evidence*, I knew that [the alleged misappropriation] had to be occurring.") (emphasis added), at 120:20-121:3 ("Q. At the time you formed the opinion that Agrian must have stolen your software, did you have any evidence . . . ? A. *No.*") (emphasis added), at 128:17-23 (Heiniger stating "I have no evidence" that content was copied). Indeed, plaintiff's own software expert himself confirmed that there was no direct evidence that code was copied. Memorandum and Order Denying Preliminary Injunction ("7/23/2014 Order") (Doc. #145), p. 11. When taken as a whole, it is clear that the temporary injunction, expedited discovery and preliminary injunction hearing were likely ordered by Judge Robinson based on the serious representations of counsel as to purported facts in his possession. Rather, these facts were mere fiction, yet they were followed by an extensive and intense discovery and evidentiary hearing process.

Intellectual Property Agreement as an exhibit at his deposition.  Plaintiff's CEO, Rick Heiniger then was deposed on June 9, 2014.  In that deposition, Heiniger admitted that Anderson did not sign the agreement.  Defendants' Deposition Designations for the Videotaped Deposition of Rick W. Heiniger (Doc. #142-5, filed July 10, 2014), at 225:11-13.[3]

Thus, at this point in the proceedings (June 9), Plaintiff had received confirmation from Anderson that he did not remember seeing or signing an agreement, and Plaintiff's CEO admitted in sworn testimony that no agreement had been signed.  Despite this testimony and knowledge, Plaintiff filed a First Amended Complaint on June 16, 2014, which was substantially identical to Plaintiff's Original Complaint and contained completely identical allegations regarding Derrick Anderson's employment agreement.  Specifically, the First Amended Complaint repeated the following allegation from the Original:

> As part of and as a condition of Defendant Derrick Anderson's continued employment with AgJunction, subsequent to Hemisphere GPS Inc.'s acquisition of AgJunction, Defendant Anderson entered into a Confidentiality and Intellectual Property Agreement in or about January 2012 ("Anderson Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Attachment F and incorporated herein by reference.

First Amended Complaint (Doc. # 111), ¶ 50.  Despite knowing that no such confidentiality agreement existed for Anderson, Plaintiff made no effort to correct or rescind its meritless allegations or to have the temporary restraining order revised to lift certain burdens from Anderson that hampered his business activities.

When this Court held the preliminary-injunction hearing, Heiniger once again testified that Anderson did not sign an agreement.  6/24/14 Hearing Tr. at 60:22-23; 171:10-12.  Then,

---

[3] The transcripts accompanying the parties' deposition designations were emailed to the Court by Plaintiff's counsel Doug Silvius on July 10, 2014.  Defendants are happy to provide the Court with additional copies of these designated transcripts should the Court so desire.

5

this Court's Order denying Plaintiff's Motion for Preliminary Injunction included a finding that Anderson did not sign an agreement. 7/23/2014 Order (Doc. #154) at 12 n.14. Following receipt of this order, Defendants sent a letter to Plaintiff on July 28, 2014 requesting that the contractual claims against Anderson be dismissed. Declaration of Joan K. Archer (Doc. #160-1), ¶ 1. Despite several efforts to obtain a response from Plaintiff's counsel, he requested additional time to respond to this request on multiple occasions, but never provided an answer. *Id*. at ¶ 3. Defendants' counsel followed up with a call, and she was told that "the request received the response it deserved." *Id.* at ¶ 4. Then, Plaintiff filed its Motion to Dismiss Without Prejudice seeking the ability to re-file all claims, including those against Anderson at any time in the future.

*Claims Under Canadian Law*

As stated, Plaintiff's contractual allegations against the Employee Defendants come from the Confidentiality and Intellectual Property Agreements. These agreements contain a mandatory choice-of-law clause stating that the laws of Alberta, Canada govern. Indeed, the parties agreed—at least as early as briefing for Defendants' Motion to Dismiss for Failure to State a Claim—that Canadian law applied.

Due to the applicability of Canadian law, Defendants immediately engaged Canadian counsel, Mark Josselyn of the Gowlings Law Firm, to evaluate the claims and assist in providing a defense. With Canadian counsel's input, Defendants briefed their position on the Canadian-law claims at every juncture possible. *See, e.g.*, Memorandum in Support of Defendants' Motion to Dismiss For Failure to State a Claim (Doc. #34, filed on April 7, 2014), Part II.C (arguing that well-established Canadian law renders the non-competition provisions of the employment agreements unenforceable); Defendants' Memorandum in Opposition to Plaintiff's Motion for

6

Preliminary Injunction (Doc. #77, filed on June 2, 2014), Part IV.B (same); Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. #144, filed on July 10, 2014), Part II.B (same). At the preliminary injunction hearing, Defendants also presented through Canadian counsel argument on the well-settled law concerning the unenforceability of the contracts at issue under Canadian law.

In its preliminary injunction Order, this Court held that Plaintiff is unlikely to succeed on the merits of the non-competition provisions of the employment agreements "because the agreements are likely unenforceable under Canadian law." 7/23/2014 Order (Doc. #145), at 20. From the moment Defendants filed their Motion to Dismiss on April 7, 2014, Plaintiff had notice that well-settled Canadian law holds that restrictive covenants without geographic limitations are wholly unenforceable. Defendants reiterated and expanded on this position in both preliminary injunction opposition briefs. But Plaintiff maintained its non-competition claims, despite failing to cite any Canadian law in its favor or in opposition to cases cited by Defendants. Accordingly, this Court affirmed Defendants' position in its ruling, noting "AgJunction has not identified a single Canadian case enforcing a global non-compete." 7/23/2014 Order (Doc. #145), at 18. Given this ruling, in Defendants' July 28 letter, they demanded that Plaintiff dismiss these claims according to Canadian law.

During a meet-and-confer call in which Plaintiff requested additional time to respond to this letter, Defendants were surprised to learn that Plaintiff had, only recently, contacted Canadian counsel to evaluate the claims. It appears that Plaintiff and its counsel did no investigation of Canadian law prior to filing the lawsuit. Further, Plaintiff chose to end its discussion on these claims just as it did the claim against Mr. Anderson—by moving to dismiss without prejudice, allowing itself the ability to re-file these claims at its future convenience.

7

## ARGUMENT

"Section 1927 targets the vexatious and unreasonable multiplication of proceedings." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1201 (10th Cir. 2008) (quotation omitted). The statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Tenth Circuit has "held that § 1927 does not require a finding of bad faith." Hamilton, 519 F.3d at 1202.

> Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences.

*Id.* (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)). "So any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Id.* (quotation omitted).

Crucially, "An attorney must 'regularly re-evaluate the merits' of claims and 'avoid prolonging meritless claims.'" *Danielson-Holland v. Standley & Assocs., LLC*, 512 F. App'x 850, 853 (10th Cir. 2013). Sanctions are appropriate under § 1927 when "an attorney acts recklessly or with indifference to the law" or when an attorney "intentionally acts without a plausible basis." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005); *see also Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316,

1333-34 (D. Kan. 2006) (awarding sanctions under § 1927 due to "plaintiff's insistence on re-litigating" claims that had no merit).

With respect to the claims against Mr. Anderson, Plaintiff's counsel undoubtedly multiplied the proceedings. Counsel should have learned from his client during his pre-suit investigation that it did not possess a Confidentiality Agreement signed by Mr. Anderson, a fact made painfully obvious by counsel's failure to attach such a document to Mr. Anderson's exhibit to the Complaint. But, even giving counsel the benefit of the doubt, Mr. Anderson's deposition testimony, along with their client's CEO testified at his deposition that Mr. Anderson did not sign the agreement, which rendered their allegations in the lawsuit demonstrably false at that moment. Instead of exercising their duty to "re-evaluate the merits of claims," counsel continued to pursue the litigation.

Worse yet, a mere *seven (7) days* following Heiniger's sworn statement that Anderson did not sign an agreement, Plaintiff's counsel filed the amended complaint, specifically asserting that Anderson signed the agreement. This is the quintessential example of "intentionally act[ing] without a plausible basis." *See Dominion Video*, 430 F.3d at 1278. This misrepresentation allowed the contractual claims to persist against Anderson, the temporary order to remain in place, and caused additional funds to be expended on the defense of those claims, which is precisely the type of  multiplication of proceedings that § 1927 seeks to prevent.

Further, Plaintiff had plenty of time and opportunity to correct his pleadings. Indeed, instead of immediately filing the instant motion, Defendants' counsel sent a letter to Plaintiff's counsel requesting that he do just that. This request was refused. Counsel's handling of this claim is inexcusable. It should have never been alleged in the first place, and certainly, once Plaintiff admitted it had no basis, Plaintiff's counsel had a duty to drop the claim.

9

A similar analysis applies with respect to Plaintiff's Canadian law claims. Here, counsel acted "recklessly or with indifference to the law." *See Dominion Video*, 430 F.3d at 1278. Plaintiff perhaps was unaware of the applicability and consequences of the Canadian choice of law provisions in the Employment Agreements when the lawsuit was first filed. But, on April 21, 2014, Plaintiff made an affirmative filing to put the Court on notice that the law of Alberta, Canada applied to several claims. (*See* Doc. #40). At that point, counsel clearly had the duty to constantly "re-evaluate the merits" of such claims in light of the governing Canadian law. Plaintiff's counsel's failure to investigate Canadian law—either independently or through consultation with Canadian counsel—exponentially added to the cost of this litigation. The added costs to Defendants include the substantial expense of hiring independent Canadian counsel to evaluate Plaintiff's claims, briefing the Court on the Canadian law, and travel expenses and attorney fees for Canadian counsel to prepare for, and to appear at, the preliminary injunction hearing to advise Defendants and to present the relevant law to the Court. Notwithstanding this substantial expense and Defendants' efforts to defend themselves and educate the Court, Plaintiff failed to provide *any* substantial Canadian authority (in person or in writing) to substantiate its claims. These claims, at least in part, served as a basis for the Court's entry of temporary orders that arguably impacted Defendants' business.

This vast expense is why Defendants were shocked when Plaintiff's counsel stated that Canadian counsel was evaluating the enforceability of the non-compete agreements *after* the preliminary injunction order and *after* Defendants sent their demand letter. This investigation should have been performed before the lawsuit was even filed, but in any event, certainly after Plaintiff acknowledged that Canadian law would govern a substantial portion of the claims.

10

Counsel failed to re-evaluate Plaintiff's claims at several points during the litigation, and that failure led to improper multiplication of the proceedings in this case. This is all made even worse by Plaintiff's latest request, even in light of these claims that are wholly unfounded—it wishes to dismiss *all* of its claims without prejudice, and allow any of these claims to resurface at any time. Counsel's conduct is wholly inappropriate and is sanctionable under § 1927.

Of note, the purpose of § 1927 is to compensate the aggrieved party to the costs, expenses, and attorneys' fees arising from the sanctionable conduct. *See Hamilton*, 519 F.3d at 1205-06. Defendants therefore request that the Court order Plaintiff's counsel to refund reasonable attorneys' fees and costs to Defendants on the specific claims discussed herein. At a minimum, Defendants should be reimbursed for all costs, expenses, and fees of Canadian counsel, as they were required to incur this needless expense due to Plaintiff's counsel's failure to investigate Canadian law. Further, Defendants should be awarded a reasonable portion of its U.S. counsel's fees and expenses that were incurred in defense of the baseless allegations under Canadian law. Finally, Defendants should recover a reasonable amount of its fees (surely those since the amended complaint was filed) for defense of the baseless claims against Mr. Anderson. Due to potential privilege issues in an ongoing matter, Defendants seek leave to separately submit evidence regarding the amount of fees incurred should the Court rule in Defendants' favor on this issue.

## CONCLUSION

Over the eight months this litigation has been pending, Plaintiff has been unable to muster evidence sufficient to facially support any of its claims, and has now even asked the Court to hit "pause" (but certainly not "stop") on its action. Counsel for Defendants acknowledges the seriousness of the allegations contained in the motion. Accordingly, counsel

11

attempted to work with counsel for Plaintiff to find a lesser remedy. But, given the present posture of this matter, Plaintiff's initial and ongoing pursuit of claims that it *knew* were meritless, and the substantial time, distress, and legal fees incurred by Defendants and their families as a result of those meritless claims, should not go unsanctioned. Section 1927 exists to provide a remedy to parties like Defendants, who are forced to incur substantial additional costs to defend against vexatious allegations that unnecessarily multiply the litigation. Accordingly, for the foregoing reasons, this Court should award sanctions against Plaintiff under 19 U.S.C. § 1927.

Respectfully submitted,

/S/ JOAN K. ARCHER

JOAN K. ARCHER    KS BAR NO. 15543
MICHAEL T. RAUPP    KS BAR NO. 25831
KYLE A. KITSON    KS BAR NO. 26277
LAURA E. PETERSON    KS BAR NO. 26293
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Tel: 816.983.8000
Fax: 816.983.8080
joan.archer@huschblackwell.com
michael.raupp@huschblackwell.com
kyle.kitson@huschblackwell.com
laura.peterson@huschblackwell.com

WALTER J. KAWULA, JR. (PRO HAC VICE ADMISSION)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Tel: 312.655.1500
Fax: 312.655.1501
walter.kawula@huschblackwell.com

Of Counsel *Pro Hac Vice*:

MARK JOSSELYN
CANADA 23470L
GOWLING LAFLEUR HENDERSON LLP
160 Elgin Street, Suite 2600
Ottawa Ontario
K1P 1C3 Canada
Tel:  613-786-0148
Fax: 613-788-3441
mark.josselyn@gowlings.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014, I caused a copy of the foregoing document to be served via the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Joan K. Archer
Joan K. Archer