IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AGJUNCTION LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-CV-02069-DDC-KGS |
| | ) |
| AGRIAN INC., et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR SANCTIONS UNDER 28 U.S.C. § 1927 FOR THE UNREASONABLE
BREACH OF CONTRACT CLAIMS AGAINST DEFENDANTS**

Plaintiff and its counsel[1] pen a 16 page Opposition to this motion and, incredibly, never contest the two key allegations against them: (1) they filed a sworn pleading with this Court containing allegations that they, at the time filed, knew to be false; and (2) failed to research Canadian law to determine whether there was a viable basis for Plaintiff's restrictive-covenant claims. If these facts are true (and Plaintiff leaves no other conclusion because it fails to directly address these points), sanctions undoubtedly are warranted.

Instead of refuting these two specific and targeted grounds for sanctions, Plaintiff attempts to deflect the Court's attention to a broader discussion of Plaintiff's overall breach of contract theories and other unrelated arguments. This Court should not be persuaded by Plaintiff's counsel's diversion tactics. Section 1927 imposes an ongoing obligation on attorneys to continuously evaluate the merits of each and every one of their clients' claims. Plaintiff's counsel failed to do so and thereby vexatiously multiplied the proceedings in this case.

---

[1] Defendants understand that sanctions under § 1927 are applicable to Plaintiff's counsel and not to Plaintiff. Any reference herein to "Plaintiff" is not meant to imply that § 1927 sanctions should be imposed against the Plaintiff individually.

Specifically, with respect to Derrick Anderson, Plaintiff has never—at any point in this litigation—possessed evidence that he signed the Confidentiality and Intellectual Property Agreement. Within a week after admitting in a deposition that Anderson did not sign that agreement, Plaintiff filed its Amended Complaint. Therein, Plaintiff, and its counsel, asserted claims based on that agreement and even included a specific and concrete allegation that Anderson signed the Confidentiality and Intellectual Property Agreement—directly contrary to sworn testimony by Plaintiff's CEO, as well as Mr. Anderson. Plaintiff's continued assertion of these claims, even though entirely baseless, led to increased discovery, testimony, and also, by virtue of the temporary relief granted by this Court in reliance on counsel's representations, required Anderson to forgo certain employment duties because of Plaintiff's claim.

With respect to Plaintiff's restrictive-covenant claims, Plaintiff does not offer any facts to dispute that there was a failure to analyze or research Canadian law to determine whether there was any legal basis for its restrictive covenant claims. Plaintiff even acknowledged the Canadian choice-of-law provision in its response to Defendants' Motion to Dismiss, yet nonetheless continued to focus on its non-competition and non-solicitation claims through discovery and the preliminary injunction hearing. Plaintiff's failure to confirm the covenants were enforceable under Canadian law led to significant multiplication of the proceedings and significant costs for Defendants. In sharp contrast to Plaintiff's counsel and in keeping with their duties, Defendants retained Canadian counsel to evaluate the claims, assist with briefing, and travel to Kansas to argue the aspects of the case governed by Canadian law. If Plaintiff and its counsel were diligent in their efforts to evaluate their claims, as § 1927 requires, all of this effort on Defendants' part would have been avoided.

Plaintiff believes its significant missteps should be ignored because it has moved to voluntarily dismiss its claims without prejudice.  Plaintiff is wrong on the law.  Section 1927 exists to sanction misconduct that occurs during the course of litigation, and that misconduct is not remedied simply by deferring litigation to a later date.  Further, it is precisely because Plaintiff has moved for a without-prejudice dismissal that this Court should send Plaintiff and its counsel a strong message through § 1927 (and also Fed. R. Civ. P. 11), that failure to abide by its legal and ethical obligations will not be tolerated.[2]

## BACKGROUND

Plaintiff completely miscomprehends the factual basis for sanctions in this case.  Within months of filing a Complaint that asserted false allegations against Derrick Anderson and unsupported Canadian-law claims against the remaining Employee Defendants,[3] Plaintiff has: moved for a preliminary injunction (Doc. 25); requested and received temporary injunctive relief; opposed Defendants' Motion to Dismiss for Failure to State a Claim (Docs. 33, 35, 48); served written discovery requests on all six original Defendants, containing a total of forty-two (42) requests for production of documents; took the depositions of eight (8) individuals or organizations, including all original Defendants; filed an Amended complaint almost identical to the original (Doc. 111); presented oral arguments in favor of injunction at a two-day evidentiary hearing; and filed a post-hearing brief (Doc. 143).

---

[2] Indeed, it appears that Plaintiff intends to pursue an aggressive business strategy of intellectual property enforcement strategy, rendering Plaintiff's future assertion of the same meritless claims all the more likely if it is allowed to dismiss without prejudice.

[3] *See* Defendants' Motion for Sanctions Under Rule 11 (Doc. 174).

3

The Court denied Plaintiff's motion for preliminary injunction on July 23, 2014, (Doc. 147),[4] and Defendants sent a letter on July 28, 2014 (the "July letter") requesting that the claims involved in the instant motion be dismissed. Declaration of Joan K. Archer (Doc. #160-1), ¶ 1. Since the July letter, Plaintiff has: served Rule 26(a) initial disclosures that include all breach of contract claims in the damages calculation; participated in the parties planning meeting and back and forth drafting of the parties' report; engaged the parties in extensive negotiations over electronic discovery protocols; sent a Golden Rule letter demanding that Defendants produce voluminous emails among the Employee Defendants with no limitation as to subject matter; and demanded the preservation and forensic examination of deleted and/or fragmented files on personal home computers used by Hunt, Dedmon, and the remaining Employee Defendants (and, at substantial expense, Defendants, as well and Hunt and Dedmon complied with this preservation request). Notably absent from Plaintiff's post-July actions is any attempt to dismiss its false claims against Anderson or its claims based on unenforceable non-compete and non-solicitation agreements. Instead, Plaintiff has asked the Court for a without-prejudice dismissal, allowing Plaintiff to refile the same false and meritless claims when, how, and as it pleases.

The scope of this litigation exploded as a result of several meritless claims asserted by Plaintiff. Two of the most egregious violations are at issue in this motion—the two where Plaintiff's attorneys ignored their obligations and relentlessly pursued unwarranted litigation: claims against Derek Anderson based on the Confidentiality and Intellectual Property Agreement; and breach-of-contract (namely, restrictive-covenant) claims brought pursuant to Canadian law. Plaintiff's Opposition greatly distorts the factual background of both claims.

---

[4] Although the Court issued its ruling on July 23, 2014, all citations will be to the 8/7/14 Memorandum and Order (Doc. 147).

*Derrick Anderson – Confidentiality and Intellectual Property Agreement Claims*

Plaintiff relentlessly puts forth the red herring that Anderson had confidentiality obligations not only under the missing Confidentiality and Intellectual Property Agreement, but also under his Offer of Employment. Defendants have never denied, at any point in this litigation, that Anderson has obligations under his Offer of Employment. But the basis for sanctions has *nothing to do* with those obligations. Rather, the basis for sanctions is Plaintiff's continued assertion of claims under the Confidentiality and Intellectual Property Agreement. Critically, for example, the restrictive covenants at issue in this case appeared *only* in the Confidentiality and Intellectual Property Agreement, and *not* in the Offer of Employment. Thus, it was entirely improper for Plaintiff to continue to assert and pursue claims based exclusively on the Confidentiality and Intellectual Property Agreement—especially once it *admitted* that the agreement did not exist for Anderson.

Plaintiff's contention in this regard is not only a red herring, it is also disingenuous. Defendants have never demanded that Plaintiff drop its claims based on the Offer of Employment. In fact, when Defendants initially raised the issue with Plaintiff, Defendants specifically demanded that Plaintiff *amend* its Complaint to carve out all claims and allegations based on the Confidentiality and Intellectual Property Agreement. That was the basis of Defendants' initial demand, and that is the basis of this motion. This motion for sanctions is not about all of the claims against Anderson. It is about those limited allegations which, even following conclusive evidence destroying the basis for such claims, Plaintiff refused to abandon.

Plaintiff further claims that discovery has not "definitively answered" whether Anderson signed the Confidentiality and Intellectual Property Agreement. In fact, the Court "definitively answered" this exact issue when it held that "Employee Defendant Derrick Anderson did not

sign an Agreement with AgJunction and thus, he has no duty to refrain from competing." 7/23/2014 Memorandum and Order (Doc. 145), p. 15 n.23.

Additionally, in their 30(b)(6) Notice of Deposition to AgJunction, Defendants requested all documents upon which AgJunction relied in asserting that Derrick Anderson breached a Confidentiality and Intellectual Property Agreement. (Doc. 62-2, ¶ 8). Plaintiff responded that "Non-privileged documents, to the extent they exist, were produced to Defendants on or before June 4, 2014." Plaintiff's Objections and Responses to Defendants' Request for Production of Documents, attached hereto as Exhibit A, at p. 8. At no time before or since June 4, 2014 has Plaintiff produced documents that show Anderson had or breached a Confidentiality and Intellectual Property Agreement. Accordingly, Plaintiff's discovery responses, the sworn admission of its CEO, and the Court's Order have all definitively answered that Defendant Derrick Anderson was never bound by a Confidentiality and Intellectual Property Agreement.

*Canadian Law Claims*

Regarding the Canadian-law claims, Plaintiff entirely ignores, and therefore admits, that it failed to research *any* Canadian law before asserting the non-compete and non-solicitation claims against the Employee Defendants. By contrast, as soon as it became clear that Canadian law governed the Confidentiality and Intellectual Property Agreements at issue, Defendants immediately engaged Canadian counsel to evaluate the claims and assist in providing a defense. Defendants and their Canadian counsel undertook every possible effort to inform Plaintiff and the Court that Plaintiff's claims had no merit, including Canadian counsel flying to Kansas and presenting to the Court at the preliminary injunction hearing. Plaintiff's counsel offered no argument regarding the enforceability of the non-compete and non-solicitation agreements under Canadian law at the hearing. Regardless of whether the Court ultimately agreed with Defendants

6

on the issue, Plaintiff had an obligation to research the merits of its claims before asserting, reasserting, and multiplying them through significant motion and discovery practice. The substantial effort expended and costs incurred by Defendants in retaining Canadian counsel[5] are a direct consequence of Plaintiff's failure to perform *any* research before filing and pursuing its Canadian-law claims.

Finally, Plaintiff apparently argues that this Court's Order partially granting Defendants' Motion to Dismiss (Doc. 91) excuses Plaintiff's reassertion of these meritless claims. But the Court did not *order* Plaintiff to *reassert* any claims; rather, the Court granted Plaintiff leave to amend certain claims that had been deficiently pleaded. Moreover, Plaintiff is well aware that factual disputes are resolved in the plaintiff's favor upon a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Accordingly, Defendants *could not have raised* these factual issues in their or any motion to dismiss, and the Court's Order did not somehow grant Plaintiff leave to reassert meritless claims.

## ARGUMENT

**I.     Defendants' Motion For Sanctions Is Not Mooted By Plaintiff's Motion To Dismiss Without Prejudice And § 1927 Sanctions Are The Appropriate Remedy Here.**

Without citing any authority holding that a motion for sanctions under § 1927 is mooted by a motion to voluntarily dismiss a lawsuit, Plaintiff begins its argument by assertion that its motion to dismiss without prejudice does just that. Plaintiff's inability to cite any on-point authority is unsurprising, because the purpose of § 1927 is to punish conduct that unnecessarily

---

[5] Defendants respectfully repeat that, due to privilege issues in an ongoing matter, they have not identified specific dollar amounts or billing records that reflect costs incurred as a result of Plaintiff's deficient claims. Defendants request that the Court grant them leave to provide these records if and when it determines sanctions are warranted.

multiplies the proceedings. Those improper acts are not remedied in any way by an effort to abandon litigation.

For example, in this case, Plaintiff vexatiously multiplied the proceedings by continuing to assert specific claims against Derrick Anderson even after it was fully aware it had no basis for the claims (this included the filing of an amended petition with an affirmatively false misrepresentation). Further, Plaintiff did not perform any research before filing its baseless Canadian law-based claims. Both of these offenses cannot be remedied by Plaintiff's later desire to temporarily abandon its lawsuit. In other words, the damage already was done. Defendants were forced to expend significant resources defending the improper claims, and the purpose of § 1927 is to punish Plaintiff for so multiplying the proceedings.

Further, there is no provision in the Federal Rules of Civil Procedure that permits Plaintiff to attempt to rectify its misconduct. Rather, § 1927 imposes the obligation on Plaintiff's counsel to continually "re-evaluate the merits of claims." *Danielson-Holland v. Standley & Assocs., LLC*, 512 F. App'x 850, 853 (10th Cir. 2013). Plaintiff failed to do so at several junctures during this litigation—most notably, when it filed the amended complaint. It is thus liable for corresponding sanctions.

The cases Plaintiff does cite in this portion of its argument actually support the imposition of sanctions. Plaintiff first offers the unremarkable proposition that "counsel should advance his best arguments on behalf of his client, *as long as they are objectively reasonable and founded in good faith*." *Sheldon v. Khanal*, 2010 WL 3825489, at *3 (D. Kan. 2010) (emphasis added). But in this case, several of Plaintiff's allegations are not founded in good faith. Indeed, Plaintiff included blatantly untrue statements in its amended petition. Plaintiff's citation of *Miera v. Disneyland Ins. Co.*, 143 F.3d 1337 (1998), also is unavailing. There, the

8

court denied a motion for sanctions based on a plaintiff's failure to cite an arguably controlling case. *Id.* at 1342-43. Here, as discussed above, Plaintiff's conduct went far beyond merely failing to cite a case. Instead, Plaintiff advanced a theory based on a foreign body of law about which it had done *no research*. This is the type of "cavalier" attitude that the *Miera* court described as sanctionable. *See id.* at 1342.

In its next argument, Plaintiff asserts that Defendants request § 1927 sanctions for the filing of the Complaint. This is false. In the Memorandum in Support of their Motion for Sanctions Under § 1927, Defendants expressly stated "This motion addresses the question of *vexatiously continuing the lawsuit as to the claims identified herein*. To address the failure of Plaintiff to adequately investigate its claims prior to filing suit, Defendants are *also* providing Plaintiff with notice of their intent to file a Rule 11 Motion for sanctions." (Doc. 164 at 2 n.1) (emphasis added). Accordingly, Defendants' pending Rule 11 Motion (Doc. 174) addresses Plaintiff's frivolous filing of the original Complaint while the instant motion for sanctions under § 1927 addresses Plaintiff's actions *following* the Complaint. Even if the Court finds that § 1927 sanctions do not apply to the filing of the complaint itself, that conduct *is* sanctionable under both Rule 11, as well as separately under the Court's inherent power.

Attempting to support its flawed argument, Plaintiff cites a case that actually supports an award of sanctions here. In *Steinert v. Winn Group, Inc.*, the Tenth Circuit *affirmed* Judge Murguia's award of sanctions under § 1927 where the plaintiff's counsel had "oppose[d] the dismissal" of two claims. 440 F.3d 1214, 1225 (10th Cir. 2006). The court concluded that counsel's "conduct in pursuing those claims in the face of [the] motion to dismiss multiplied the proceedings recklessly." Moreover, the court found that sanctions arising from the filing of an amended complaint are consistent with § 1927's "incentive for attorneys to regularly re-evaluate

9

the merits of their claims and to avoid prolonging meritless claims." *Id.* at 1224. Here, Plaintiff multiplied the proceedings by opposing Defendants' motion to dismiss, moving for a preliminary injunction, and filing an amended complaint reasserting claims that discovery showed it *knew* were false.

Plaintiff also argues it should avoid sanctions because the Court denied Defendants' motion to dismiss as to Plaintiff's breach of contract claims. As Plaintiff is well aware, however, "Courts 'accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff.' And they 'resolve all reasonable inferences in the plaintiff's favor.'" *Berg v. Ayesh*, No. 13–1164–DDC–KGG, 2014 WL 2603890, at \*3 (D. Kan. Jun. 11, 2014) (Crabtree, J.) (citations omitted). Though it is now clear that Plaintiff's allegations regarding Derrick Anderson were and are false, the Court nevertheless would have construed those allegations in Plaintiff's favor when ruling on Defendants' motion to dismiss and likely would have assumed counsel was in compliance the Federal Rules, as well as their ethical obligations.

Finally, Plaintiff argues that certain sanctions sought by Defendants (*i.e.*, dismissal) are unavailable under § 1927. First, even if Plaintiff is correct, Plaintiff admits that appropriate sanctions include "excess costs, expenses, and attorneys' fees." Second, as recently noted in *Berg*, the Court has inherent power to impose sanctions "that are necessary to regulate the docket, promote judicial efficiency, *and deter frivolous filings*." *Berg*, 2014 WL 2603890, at \*7 (citing *Gass v. United States*, 4 F. App'x 565, 568 (10th Cir.2001)) (emphasis added); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). "Outright dismissal of a lawsuit . . . is within the court's discretion." *Chambers*, 501 U.S. at 45. Thus, the Court should exercise its statutory

authority under § 1927, its inherent authority, or both, to fashion an appropriate remedy for Plaintiff's frivolous and vexatious conduct.

## II.   Plaintiff Unreasonably And Vexatiously Multiplied The Proceedings Against Derrick Anderson.

Plaintiff's counsel attempts to portray its actions in this case as nothing more than zealous advocacy on behalf of its client. Nothing could be further from the truth. If the principle of "zealous advocacy" permits an attorney to knowingly include a completely false allegation in a pleading, then the rules of professional conduct and the pleading rules have no teeth to regulate conduct. Plaintiff cites cases explaining that attorneys are permitted to engage in zealous advocacy. What is noticeably absent, however, is any case law holding that Plaintiff's blatantly false claims about Mr. Anderson's (nonexistent) Confidentiality Agreement amount to nothing more than zealous advocacy. In fact, when viewed in the light of Plaintiff's actual conduct in this case, the cases Plaintiff cites actually support the imposition of sanctions.

Plaintiff first explains the unremarkable proposition that attorneys are permitted to zealously advocate for their clients, and that § 1927 sanctions are reserved for rare circumstances. *Braley v. Campbell*, 832 F.3d 1504, 1511-12 (10th Cir. 1987). There, the Tenth Circuit explained, however, that the rarity of sanctions "should not prevent us from awarding sanctions for conduct which manifests intentional or reckless disregard of the attorney's duties to the court." *Id.* at 1512. As the Tenth Circuit more recently observed, "an empty head and a pure heart" does not relieve an attorney of responsibility for the consequences of his or her actions. *Miera*, 143 F.3d at 1342. An attorney has the duty to not make knowing misrepresentations to the court. An attorney also has the duty to analyze the legal basis for claims and to only assert those claims with a plausible basis. Plaintiff knew that it did not possess a confidentiality agreement signed by Mr. Anderson when it filed the Complaint. Plaintiff's CEO testified at his

11

deposition that Mr. Anderson did not sign the agreement, yet *seven days later* Plaintiff filed its Amended Complaint that contained the exact same false allegations. Plaintiff breached its duty to not make knowing misrepresentations, and sanctions are entirely within the discretion described in *Braley*.

At this point, Plaintiff's strategy in Opposition to this motion is clear. It did not want to directly answer the allegations, so, instead, Plaintiff tried to re-frame the scope of the requested sanctions and use that straw man to defeat the motion. This Court should not allow Plaintiff to avoid the consequences of its (in)actions by mischaracterizing Defendants' position.

This mischaracterization is even more significant when viewed in conjunction with Plaintiff's "interpretation" of the relevant case law. Indeed, because Plaintiff is arguing about a *completely different basis* for sanctions than that asserted by Defendants, Plaintiff's "application" of the case law is inherently flawed. But even looking to the specific cases Plaintiff cites in its Opposition, sanctions are appropriate here.

Plaintiff cites two cases where courts declined to impose sanctions, but both were in very different circumstances than the allegations here—placing admittedly false allegations in a pleading asserting claims based on a fictional document; and failure to research whether a legal basis exists for a claim. In *Sheldon v. Kanhal*, the court did not impose sanctions for including statements in a response brief that were very critical of other federal courts and also including selective quotations from judicial opinions that potentially misled the reader. 2010 WL 3825489, at *3. Although the court ultimately decided not to impose sanctions, it warned counsel that future statements could lead to sanctions, noting that "counsel is expected to fully comply with Rule 11, represent his client with zealous advocacy without misrepresenting facts or law, and speak or write with respect for the judicial process." *Id.* In that case, it was

questionable as to whether the party misrepresented facts or law. Here, that is not in question. Plaintiff included materially false statements in its amended complaint. It misrepresented that Anderson had signed a Confidentiality and Intellectual Property Agreement, then proceeded to assert several additional claims and allegations based on that agreement.

Plaintiff's citation of *Beech Aircraft Corp. v. EDO Corp.*, 922 F. Supp. 2d 512 (1996), is similarly misplaced. There, the court held that the plaintiff's pursuit of two parallel proceedings to enforce its intellectual property rights was "a legitimate litigation tactic, one for which Beech should not be sanctioned." *Id.* at 515. The court never, however, condoned the type of activity at issue in this case. Knowingly including false allegations in a pleading is not a "legitimate litigation tactic," nor is asserting legal claims before performing *any* research or analysis to determine whether the claims have a plausible legal basis.

It is telling that Plaintiff's counsel hides behind its obligation to zealously represent their client to try and justify the filing of a sworn pleading they knew to be false. And not only did Plaintiff make materially false allegations, those false allegations then led to significant additional resources being deployed in an unnecessary and unjustified multiplication of the proceedings, not to mention the personal stress and professional costs to Mr. Anderson. None of the cases Plaintiff cites condone this type of behavior, and this Court should not either.

### III. Plaintiff Unreasonably Multiplied the Canadian-Law Proceedings when it Reasserted and Pursued These Claims Despite *Still* Having Performed *No* Research.

Plaintiff uses similar tactics regarding the Canadian-law claims. Plaintiff characterizes Defendants' argument as seeking sanctions because Plaintiff is "analyzing this claim differently than defendants do." Not so. Once again, Plaintiff ignores the stated basis for sanctions. On the Canadian-law claims, sanctions are warranted because Plaintiff undertook *no analysis whatsoever* of Canadian law before filing the claims, and even once it became aware of the

13

relevant law, refused to abandon the claims. Notably, Plaintiff *never* answers this allegation. Counsel never claims to have, in fact, researched Canadian law prior to filing the claims, *nor at any time prior to, or even after, the preliminary injunction hearing*. Shortly after Plaintiff filed its initial Complaint, Defendants put Plaintiff on notice that Canadian law applied to the restrictive-covenant claims. Plaintiff agreed, but apparently decided there was no need to evaluate that law in any manner.

Contrary to Plaintiff's assertion, the fact that this Court's preliminary-injunction ruling "only" provided that Plaintiff was unlikely to prevail on the Canadian-law claims does not preclude § 1927 sanctions merely because it was phrased in terms of "likelihood." Rather, given the procedural stage of the case, that was the appropriate phrasing and legal basis for the motion the Court need to resolve. And again, § 1927 imposes the requirement on counsel to assert only claims with a legal basis. Especially regarding foreign law, Plaintiff's ongoing duty to evaluate the merit of its claims required, at the very least, a determination of whether there was any plausible basis for its claims under Canadian law.[6] Its refusal to perform that inquiry, evidenced by its refusal to even address the allegation in its Opposition, justifies sanctions under § 1927.

Plaintiff returns to the *Miera* case for support, which, as described *supra*, is distinguishable. Plaintiff's misconduct here went well beyond the failure to cite an arguably binding case, which is the infraction at issue in *Miera*. Here, Plaintiff ignored the *entire body of relevant controlling law*, not merely one case. And Plaintiff's reliance on *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223 (D. Kan. 2011), fares no better. There, the court declined to impose sanctions based on defendant's allegation that plaintiff failed to dismiss meritless claims

---

[6] Plaintiff undoubtedly also had an obligation under Rule 11 to perform this evaluation *before* filing the Complaint. *See, e.g.*, *Logsdon v. AT&T Commc'ns of the Southwest*, 2003 WL 22300172, at *11 (D. Kan. Oct. 6, 2003); *see also* Defendants' Memorandum in Support of Their Motion for Sanctions Under Fed. R. Civ. P. 11 (Doc. 175).

14

in a timely manner. Here again, however, Plaintiff misconstrues what this motion is about. This is not a general allegation that all of Plaintiff's claims lacked merit (even though they did). Rather, this is a very targeted motion about affirmative misrepresentations included in pleadings, and the pursuit of claims under foreign law when Plaintiff had done *no research* to inquire about their legal validity. These transgressions simply are not addressed in *Carman*.

By way of hypothetical illustration, this Court frequently hears cases based on diversity jurisdiction, requiring the application of any of the individual States' laws. If a plaintiff brings a claim in this Court based on California law, the plaintiff's attorneys are undoubtedly under an obligation to perform enough research to ensure that a legal basis exists for the claim. Here, when the law of a foreign country is at issue, that duty is magnified to an even greater degree given the unfamiliarity with the law of a foreign jurisdiction, as well as nuances in statutory and case law interpretation. Nonetheless, Plaintiff was content to shirk that responsibility. Plaintiff should be held accountable for its missteps and, as the relevant case law demonstrates, § 1927 is the appropriate vehicle to do so. "Unlike a party, an attorney should be able to do the necessary research to evaluate properly the merits of a claim. . . . Before filing suit, it would seem to be a reasonable expectation that the attorney do some basic research on the applicable law." *Rayter v. Crawford Avenue Anesthesia Provider Servs. LLC*, 2013 WL 5498255, at *4 (N.D. Ind. Oct. 1, 2013) (denying a motion for sanctions under § 1927 because—unlike here—the plaintiff stopped pursuing the claim after defendant put plaintiff on notice "that the claim was barred by precedent"); *see also Cameron's Hardware, Inc. v. Independence Blue Cross*, 2008 WL 2944697, at *7 (E.D. Pa. July 28, 2008) (awarding § 1927 sanctions when "a competent level of legal research" would have shown the claims were barred).

15

**CONCLUSION**

For eight (8) months, Plaintiff and its counsel pursued, reasserted, and multiplied claims that it knew were factually false, had no basis in law, or both. Plaintiff's claims undoubtedly were designed to distract Agrian and the Employee Defendants from their work developing Agrian's next generation software. Plaintiff's attempt to use the legal process to impede competition through the dogged pursuit of meritless claims is precisely the kind of vexatious abuse of process that the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 both prohibit and punish. For the foregoing reasons, the Court should sanction Plaintiff's counsel.

Defendants hereby renew their request for oral argument and request that the Court take up all outstanding motions at the time of that hearing.

Respectfully submitted,

/S/ JOAN K. ARCHER

JOAN K. ARCHER        KS BAR NO. 15543
MICHAEL T. RAUPP      KS BAR NO. 25831
KYLE A. KITSON        KS BAR NO. 26277
LAURA E. PETERSON     KS BAR NO. 26293
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Tel: 816.983.8000
Fax: 816.983.8080
joan.archer@huschblackwell.com
michael.raupp@huschblackwell.com
kyle.kitson@huschblackwell.com
laura.peterson@huschblackwell.com

WALTER J. KAWULA, JR. (PRO HAC VICE ADMISSION)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Tel: 312.655.1500
Fax: 312.655.1501
walter.kawula@huschblackwell.com

>Of Counsel *Pro Hac Vice*:
>
>MARK JOSSELYN
>CANADA 23470L
>GOWLING LAFLEUR HENDERSON LLP
>160 Elgin Street, Suite 2600
>Ottawa Ontario
>K1P 1C3 Canada
>Tel:  613-786-0148
>Fax: 613-788-3441
>mark.josselyn@gowlings.com
>
>*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2014, I caused a copy of the foregoing document to be served via the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>/s/ Joan K. Archer
>Joan K. Archer

17