**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

AGJUNCTION LLC,

                   Plaintiff,

v.

AGRIAN INC., ET AL.,

                   Defendants.

**Case No. 14-CV-2069-DDC-KGS**

## MEMORANDUM AND ORDER

Defendants have filed two motions for sanctions.  First defendants seek sanctions under 28 U.S.C. § 1927 (Doc. 163).  Second, defendants seek sanctions under Fed. R. Civ. P. 11 (Doc. 174).  For the following reasons, the Court denies both motions.[1]

### I.  Background

Plaintiff filed its initial Complaint (Doc. 1) in this lawsuit on February 16, 2014.  The initial Complaint alleged 10 counts against various groups of defendants.  Defendants filed a motion to dismiss for failure to state a claim (Doc. 33) on April 7, 2014.  The Court granted the motion in part by dismissing Counts II and IV, but denied the motion as it applied to the remaining eight Counts.  The Court gave plaintiff the opportunity to refile its pleading after correcting the deficiencies in Counts II and IV, which plaintiff did by filing its First Amended Complaint (Doc. 111) on June 16, 2014.  The First Amended Complaint is substantially similar

---

[1] Defendants request oral argument on both sanctions motions.  D. Kan. Rule 7.2 states that "[t]he court may set any motion for oral argument or hearing at the request of a party or on its own initiative."  The discretion to schedule oral argument lies with the Court.  The Court concludes that oral argument will not materially aid in the resolution of defendants' two sanctions motions and is unnecessary.  The Court therefore denies defendants' request.

to the initial Complaint, and the Court will refer to them jointly as the "Complaints" at various points in this Order.

Both of defendants' motions for sanctions involve Count III of the initial and First Amended Complaints, which is identical in both pleadings. Count III asserts a breach of contract claim against the five Employee Defendants—Jeffrey Dearborn, Aaron Hunt, Matthew Dedmon, David Nerpel, and Derrick Anderson—and alleges each employee breached employment agreements with plaintiff containing "confidentiality, no conflict of interest, non-competition, and non-solicitation terms." Doc. 111 at ¶¶ 69-70, 72-76.

Plaintiff alleges that the employment agreements containing these restrictions are called "Confidentiality and Intellectual Property Agreements" (the "Agreements"). Each Agreement contains covenants protecting confidential information, prohibiting conflicts of interest, and restricting competition and solicitation for a period of six to 12 months, depending on the Employee Defendant. Significantly, each Agreement provides it will be "governed and interpreted in accordance with the laws of the Province of Alberta," Canada. Doc. 112-1 at 32.

Plaintiff filed a motion for preliminary injunction (Doc. 25), which the Court denied (Doc. 145), after a hearing, on July 23, 2014. Five days later, on July 28, 2014, defendants' counsel sent a letter to plaintiff demanding that plaintiff withdraw its allegations that (1) Anderson breached the Agreement and (2) the Employee Defendants breached the non-competition and non-solicitation portions of their Agreements. Defendants' counsel threatened to begin preparing a § 1927 sanctions motion against plaintiff's counsel if plaintiff did not withdraw the two specified allegations by August 4, 2014. Plaintiff filed a motion to dismiss this lawsuit without prejudice (Doc. 152) on September 15, 2014, and thus seeks to withdraw all claims against defendants.

## II. Motion for Sanctions under § 1927 (Doc. 163)

Defendants filed a motion for sanctions under 28 U.S.C. § 1927 on October 24, 2014, over one month after plaintiff filed its motion to dismiss and over two months after the August 4, 2014, deadline defendants set in their July 28 demand letter. Defendants seek sanctions on two grounds. First, defendants argue that plaintiff pursued a claim against defendant Derrick Anderson based on facts it knew were false. Second, defendants argue that plaintiff failed to research Canadian law adequately to determine whether a plausible basis existed for its breach of contract claims against defendants. Defendants request that the Court require plaintiff's counsel to refund "reasonable attorneys' fees and costs" that defendants spent litigating the allegedly sanctionable claims. Doc. 164 at 11. The Court denies defendants' § 1927 motion for sanctions.

### A. Legal Standard

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Sanctions under § 1927 are appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) (alteration in original) (citation omitted) (internal quotation marks omitted). The Tenth Circuit does not require a finding of bad faith to award sanctions under § 1927. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). So, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the

3

attorney's duties to the court, is sanctionable." *Id.* (internal quotation marks omitted).  An attorney must "regularly re-evaluate the merits" of claims and "avoid prolonging meritless claims."  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).

However, courts recognize the importance of ensuring that § 1927 does not "dampen the legitimate zeal of an attorney in representing his client."  *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (internal citation omitted).  An award under § 1927 "should be made only in instances evidencing serious and standard disregard for the orderly process of justice."  *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotation marks and citations omitted).  The text of § 1927 "indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders."  *Hamilton*, 519 F.3d at 1205.  Thus, the Tenth Circuit has taken a "victim-centered approach" to sanctions awards under § 1927, focusing on the harm suffered by the party seeking sanctions.  *Id.*

## B.  Discussion

Defendants argue that the Court should sanction plaintiff's counsel for two reasons.  First, defendants assert that plaintiff continued to pursue a breach of contract claim against defendant Anderson based on the Agreement, which it knew Anderson never signed.  Second, defendants argue that plaintiff failed to conduct any research to determine if the Agreements were valid under governing Canadian law.  The Court addresses each in turn.

### 1.  Breach of the Agreement Against Defendant Anderson

Plaintiff's initial Complaint alleged that the five Employee Defendants, including Anderson, each signed the Agreement containing conflict of interest, non-competition, and non-solicitation provisions.  Plaintiff alleged that it attached each Employee Defendants' signed Agreement to the initial Complaint, and it did, in fact, attach both the Agreement and a signed

"Offer of Employment" for four of the five Employee Defendants.  However, "Attachment F," which plaintiff claimed contained defendant Anderson's signed Agreement included a signed Offer of Employment, but no Agreement.  Doc. 1-1 at 49-53.

The Offer of Employment includes a section entitled "Confidentiality and Non-Competition Agreement," which requires Anderson to keep certain information confidential both during and after his employment with plaintiff.  Doc. 1-1 at 51.  The section also provides that, "as is standard for all employees employed by [plaintiff] or any affiliate of [plaintiff], we require that you review, sign and return to us the Confidentiality and Intellectual Property Agreement [*i.e.*, the Agreement] attached as Appendix 'A' to this letter." *Id.*  However, the Offer of Employment itself contains no explicit conflict of interest, non-competition, or non-solicitation terms.

Count III of the initial Complaint alleged:  "As part of the Employee Defendants' respective employment agreements, the Employee Defendants accepted and agreed to confidentiality, no conflict of interest, non-competition, and non-solicitation terms."  Doc. 1 at ¶ 68.  Plaintiff alleged that each defendant breached those obligations by competing directly against plaintiff, leaving plaintiff for defendant Agrian to work on a competing product, and soliciting plaintiff's employees.

During a deposition on May 22, 2014, Anderson testified that he did not recall seeing or signing the Agreement.  Doc. 81-3 at 31:22-32:2.  Defendants deposed Rick Heiniger, plaintiff's CEO, on June 9, 2014.  The deposition contained the following exchange:

Q.      Now, Mr. Anderson didn't sign the noncompete document, did he?

A.      No, he didn't.

Doc. 142-5 at 225:11-13.  Thus, Heiniger conceded on June 9 that Anderson never signed the Agreement.

Nevertheless, on June 16, 2014, plaintiff filed its First Amended Complaint which contains allegations identical to the initial Complaint that Anderson signed and later breached the Agreement.  Doc. 111 at ¶¶ 50, 70-76.  At the preliminary injunction hearing on June 24, 2014, Heiniger again testified that Anderson did not sign the Agreement.  Hr'g Tr., 60:22-23; 171:10-12.  The Court denied plaintiff's motion for preliminary injunction on July 23, 2014, specifically noting Heiniger's testimony that Anderson never signed the Agreement.  Doc. 145 at 12 n.14.

Thus, plaintiff appears to have known, at least as early as Heiniger's deposition on May 22, 2014, that Anderson had not signed the Agreement, but continued to pursue this claim until it filed its motion to dismiss on September 15, 2014.  Plaintiff argues that because this lawsuit has been pending only for seven months and plaintiff has not taken full discovery, the question whether Anderson signed the Agreement remains open.   The Court disagrees.  Heiniger, plaintiff's CEO, twice has admitted that Anderson did not sign the Agreement.  By doing so, plaintiff essentially conceded that Count III's allegations that Anderson breached non-compete and non-solicitation provisions lack factual support.

Still, § 1927 sanctions are not warranted here.  While a plaintiff must "regularly re-evaluate the merits" of claims, § 1927 provides for sanctions against only those attorneys who "unreasonably and vexatiously" multiply the proceedings in a lawsuit.  *Steinert*, 440 F.3d at 1224.  The purpose of § 1927 is to compensate victims of abusive litigation practices, not to deter and punish offenders.  *Hamilton*, 519 F.3d at 1205.  Plaintiff should have withdrawn its claim that Anderson breached the Agreement earlier than it did, and the Court urges plaintiff's counsel to evaluate its pleadings more clearly in the future.  But plaintiff's pursuit of that claim

did not "vexatiously" multiply the proceedings in a way that imposed meaningful harm because this claim constituted just a small fraction of the claims plaintiff pursued doggedly against Anderson and the Employee Defendants.

First, plaintiff alleges that every Employee Defendant breached the Agreement, and there is no dispute that the other four Employee Defendants did sign it.  In addition to the allegation that Anderson breached the Agreement, Count III of the Complaints alleges that the Employee Defendants, including Anderson, failed "to honor their obligations set forth in their respective employment agreements to maintain the confidentiality of [plaintiff's] proprietary, and/or secret information and to only access and use [plaintiff's] confidential information for purposes limited to the scope of their duties as employees of [plaintiff]."  Doc. 1 at ¶ 70; Doc. 111 at ¶ 72. Anderson signed an Offer of Employment, which requires him to protect plaintiff's confidential information.  Thus, plaintiff has a plausible basis for the portion of Count III alleging that Anderson breached his confidentiality obligations.

Furthermore, plaintiff asserts five other claims against Anderson—intentional interference with business advantage (Count IV), violation of the Kansas Uniform Trade Secrets Act (Count V), unfair competition (Count VI), breach of the duty of loyalty (Count VII), and conspiracy (Count X).  Defendants do not even contend that the Court should sanction plaintiff's counsel for bringing those claims.  Thus, defendants seek sanctions on just one portion of one of the six claims plaintiff brought against Anderson.

Defendants argue that plaintiff's continued pursuit of the claim against Anderson for breaching the Agreement "led to increased discovery, testimony, and also, by virtue of the temporary relief granted by this Court in reliance on counsel's representations, required Anderson to forgo certain employment duties . . . ."  Doc. 176 at 2.  But defendants make no

effort to support these allegations.  Simply, Anderson has flatly denied that he signed the Agreement, and the Court fails to see how that defense could cause more than a nominal increase in discovery and testimony, especially in light of the fact that plaintiff asserts many other claims against Anderson and the remaining Employee Defendants.  Defendants also cite the "temporary relief" granted in an April 23, 2014 Order by Judge Robinson, which enjoined the Employee Defendants from soliciting "customers in violation of the non-compete covenants in their respective contracts . . . ."  Doc. 44 at 2.  But this portion of Judge Robinson's temporary order never applied to Anderson because he never signed the Agreement.  Thus, defendants have not demonstrated that plaintiff's pursuit of Anderson for breaching the Agreement significantly harmed them.

The cases cited by defendants are instructive because each one involved conduct far more egregious than that alleged here.  In *Steinert v. Winn Group, Inc.*, the Tenth Circuit affirmed a § 1927 sanctions award against a plaintiff for pursuing claims that were frivolous in their entirety and for seeking numerous extensions of time that multiplied the proceedings by 495 days.  440 F.3d at 1220-21.  In *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, the Tenth Circuit affirmed sanctions the district court awarded against a defendant that repeatedly filed lengthy and frivolous briefs in an effort to stave off confirmation of an arbitration award against it.  430 F.3d at 1279.  Finally, in *Medical Supply Chain, Inc. v. Neoforma, Inc.*, Judge Murguia awarded sanctions because the plaintiff filed "a nearly unintelligible 115 page complaint" which suggested the entire purpose of the lawsuit was to harass the defendants; none of the plaintiff's federal claims supported a viable claim for relief; the plaintiff attempted to re-litigate claims barred by claim preclusion; and the plaintiff ignored multiple warnings from the court to ensure that its claims had merit.  419 F. Supp. 2d 1316, 1333-34 (D. Kan. 2006).

Plaintiff's counsel's decision to pursue allegations that Anderson breached the Agreement is not the type of serious, repeated misconduct for which courts in the Tenth Circuit have awarded sanctions.  Defendants have failed to convince the Court that plaintiff's conduct vexatiously multiplied the proceedings in a way that caused defendants harm.  The Court therefore denies defendants' request to sanction plaintiff's counsel on the claim that defendant Derrick Anderson breached the Agreement.

### 2.  Breach of the Agreements Against All Employee Defendants

Count III of both Complaints alleges that the Employee Defendants breached non-competition and non-solicitation provisions of Agreements that each signed.  The Agreements provide that Canadian law governs them.  In its Order denying plaintiff's motion for preliminary injunction, the Court wrote that the Agreements "are likely unenforceable under Canadian law." Doc. 145 at 20.  However, defendants make clear that they do not base their motion on the Court's finding that the Agreements are "likely unenforceable."  Rather, defendants argue that the Court should sanction plaintiff because plaintiff "never claims to have, in fact, researched Canadian law prior to filing the claims, *nor at any time prior to, or even after, the preliminary injunction hearing*."  Doc. 176 at 14 (emphasis in original).

The Court finds no basis for defendants' assertion that plaintiff failed to research Canadian law—except for defendants' *ipse dixit* claim that it is so.  As plaintiff points out, plaintiff argued, with citation to Canadian law, that the Agreements were enforceable in both its opposition to defendants' motion to dismiss (Doc. 41 at 12-14) and its supplemental memorandum in support of its motion for preliminary injunction (Doc. 143 at 7-12). Specifically, plaintiff tried to distinguish the Canadian cases defendants cited in their briefs and

argued that those cases supported plaintiff's argument.  Thus, there is clear evidence that plaintiff made an effort to evaluate its claims under Canadian law.

Defendants focus on the fact that plaintiff only recently, apparently, retained Canadian counsel to evaluate the Agreements under Canadian law.  In contrast, defendants state they retained Canadian counsel, Mark Josselyn, as soon as they determined Canadian law was relevant to this lawsuit.  The Court certainly appreciated Mr. Josselyn's insight and his expertise on Canadian contract law.  It aided defendants' case at the preliminary injunction hearing.  But defendants cite no law suggesting that plaintiff's failure to contact Canadian counsel before the hearing constitutes a sanctionable omission, and the Court has found no such authority.

Contrary to defendants' argument, the Court finds that plaintiff has analyzed the enforceability of the Agreements under Canadian law.  Although the Court may disagree with plaintiff's interpretation of the law, disagreement is not a basis for sanctions.  *Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2010 WL 1284717, at *7 (D. Kan. Mar. 30, 2010) (holding that "it is nothing more than zealous advocacy" to cite the law and attempt to distinguish it).  As a result, the Court denies defendants' motion to sanction plaintiff's counsel for failing to determine whether a viable basis existed for its breach of contract claims against the Employee Defendants.

### III. Motion for Sanctions under Rule 11 (Doc. 174)

Defendants filed a motion for sanctions under Rule 11 on November 28, 2014, over two months after plaintiff moved to voluntarily dismiss this lawsuit.  Defendants argue that plaintiff asserted three sanctionable claims in its Complaints.  Two of the allegedly improper allegations are identical to those defendants presented in their § 1927 sanctions motion:  (1) that defendant Anderson breached the Agreement even though plaintiff knew he never signed it and (2) that the

Employee Defendants breached the Agreements which were unenforceable under Canadian law. In addition, on their Rule 11 motion, defendants add the claim that plaintiff lacked factual support for its allegations that defendants stole its proprietary software code.

### A.  Legal Standard

Under Rule 11, a signer of a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "claims, defenses, and other legal contentions are warranted by existing law" and "the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(2), (3).  If a court determines that a party has violated Rule 11(b), it may, in its discretion, impose sanctions. Fed. R. Civ. P. 11(c); *Lundahl v. Home Depot, Inc.*, No. 14-8001, 2014 WL 6791186, at *2 (10th Cir. Dec. 3, 2014) ("[S]anctions under Rule 11 are discretionary; not mandatory.").

A court can impose sanctions under Rule 11 in two ways:  on a motion filed by one of the parties or on its own initiative.  Fed. R. Civ. P. 11(c)(2), (3).  A party filing a motion for sanctions must comply with Rule 11(c)(2)'s "safe harbor" provision.  That provision mandates that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).  "The general purposes of the safe harbor provision include protecting litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effect . . . and encouraging the withdrawal of papers that violate the rule without involving the district court, thereby avoiding sanction proceedings whenever possible and streamlining the litigation process."  5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1337.2 (3d ed.).

Compliance with the "safe harbor" provision is mandatory in the 10th Circuit.  *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997); *Zhu v. Fed. Hous. Fin. Bd.*, No. 04-2539-KHV, 2007 WL 675646, at *4 (D. Kan. Mar. 1, 2007).

### B.  Discussion

The Court denies defendants' Rule 11 sanctions motion for two independent reasons: (1) it does not comply with Rule 11's safe harbor provision; and (2) sanctions are not warranted on the merits.

### 1.  Defendants' Motion Does Not Comply With Rule 11's Safe Harbor Provision

The Court denies defendants' Rule 11 motion for sanctions because it is barred by Rule 11's safe harbor provision.  In *AeroTech, Inc. v. Estes*, the Tenth Circuit held that the safe harbor prevented a defendant from seeking sanctions when the defendant "did not move for Rule 11 sanctions until *after*" the plaintiff "had moved to dismiss its claims against him."  110 F.3d at 1528 (emphasis added).  The situation here is identical.

Defendants did not file their Rule 11 motion for sanctions until *after* plaintiff had moved to dismiss this case voluntarily.  On September 15, 2014, plaintiff voluntarily filed a motion seeking to dismiss the Amended Complaint under Fed. R. Civ. P. 41(a)(2).  Defendants did not file their Rule 11 motion for sanctions until November 28, 2014, over two months later.  Because plaintiff moved to withdraw its claims against defendants before defendants filed this sanctions motion, the Court must deny it.  *Id.*; *see also Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) (interpreting *Aerotech* to mean that "Rule 11 sanctions were unavailable to defendant who moved for sanctions after plaintiff moved to voluntarily dismiss its claims against defendant"); *accord Cal. Sportfishing Prot. Alliance v. Callaway*, No. 2:10-cv-1801 TLN GGH PS, 2013 WL 4482849, at *5 (E.D. Cal. Aug. 20, 2013) (denying Rule 11 motion for sanctions because the

plaintiff filed its motion to dismiss before the defendant's initial motion for sanctions); *Nagle Indus., Inc v. Ford Motor Co.*, 173 F.R.D. 448, 459 (E.D. Mich. 1997) (same).

Defendants cite the Tenth Circuit's recent decision in *Lundahl v. Halabi* to support their argument that voluntary dismissal does not "immunize[]" plaintiff from Rule 11 sanctions. 773 F.3d 1061 (10th Cir. 2014); Doc. 185-1 at 1. Specifically, defendants quote the following passage from *Lundahl*: "If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to stop, think and investigate more carefully before serving and filing papers." *Lundahl*, F.3d at 1075. However, *Lundahl* is different from this case in a crucial way: the district court there imposed sanctions on its own motion under Rule 11(c)(3), not upon a party's motion. *Id.* at 1069.

Although the Court has not located a Tenth Circuit case on this point, the text of the Rule 11 indicates that a court is not limited by the safe harbor provision when it awards sanctions on its own motion. Rule 11(c)(2) governs "Motion[s] for Sanctions" and includes the safe harbor provision; Rule 11(c)(3) governs sanctions "On the Court's Initiative" and contains no safe harbor language. The circuit courts to consider this issue unanimously have held that courts are not constrained by the safe harbor provision when they award sanctions *sua sponte* under Rule 11(c)(3). *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d. Cir. 2013) ("Rule 11 also gives the court the power to initiate sanctions proceedings *sua sponte* . . . . In these rarer cases, however, the 21-day safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement."); *McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853 (11th Cir. 2010) ("[C]ourt-initiated sanctions under Rule 11(c)(3) do not involve the 21-day safe harbor provision . . . ."); *Lucas v. Duncan*, 574 F.3d 772, 775 (D.C. Cir. 2009) ("Rule 11(c)(3), which governs sanctions imposed on the court's own

initiative, does not contain [a safe harbor] provision."); *In re Bees*, 562 F.3d 284, 287 (4th Cir.

2009) ("[A] *sua sponte* order to show cause does not provide an attorney with Rule 11's twenty-

one day safe harbor provision . . . ."). As a result, *Lundahl* does not affect the Court's conclusion

that Rule 11(c)(2)'s safe harbor provision bars defendants' motion.

The Court notes that plaintiff did not raise this specific safe harbor argument in its

response opposing defendants' motion for sanctions (Doc. 179). However, the Court concludes

that it should raise the issue on its own because Rule 11's safe harbor provision is "mandatory."

*AeroTech*, 110 F.3d at 1528-29. Defendants' failure to comply with the provision "prevents" the

Court from granting their Rule 11 motion. *Id.* at 1528; *McKenzie v. United Access*, No. 12-2395-

EFM, 2012 WL 5869897, at *3 (D. Kan. Nov. 19, 2012) ("Rule 11 sets forth mandatory

requirements that a moving party must comply with before a court is permitted to order

sanctions."). Because defendants have failed to comply with Rule 11's safe harbor provision, the

Court must deny their Rule 11 motion for sanctions.

### 2.   The Court Denies Defendants' Sanctions Motion on the Merits

But even if it were to reach the merits of defendants' Rule 11 motion, the Court would

deny relief on it. Sanctions are an extraordinary remedy. *Marrie v. Nickels*, No. 97-3280-JTM,

2000 WL 133814, at *1 (D. Kan. Jan. 10, 2000). "Whether a violation [of Rule 11] has occurred

and what sanctions, if any, to impose for a violation are matters committed to the discretion of

the trial court . . . ." Fed. R. Civ. P. 11 advisory committee's note. "[T]he court should not

ordinarily have to explain its denial of a motion for sanctions." *Id.* Nevertheless, the Court will

discuss briefly its reasons for declining to award sanctions here.

Defendants argue that plaintiff made three sanctionable allegations. First, defendants

assert that the Court should sanction plaintiff because it lacked evidentiary support for its claim

that defendant Anderson breached the Agreement.  This argument is identical to one defendants made in their § 1927 sanctions motion, and the Court denies it for similar reasons.  As discussed above, plaintiff should not have filed its breach of Agreement claim against Anderson—plaintiff knew that Anderson never signed the Agreement by the time it filed the First Amended Complaint.  Nevertheless, this claim constitutes just a small piece of the claims plaintiff asserted against Anderson and the claims in the lawsuit as a whole.  "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b)."  Fed. R. Civ. P. 11 advisory committee's note.  Even if plaintiff technically violated Rule 11 by alleging that Anderson breached the Agreement, the Court declines to award sanctions because it is a "minor, inconsequential violation[] . . . ." *Id.*

Second, defendants argue that the Court should award sanctions because plaintiff lacked evidentiary support for its claim that defendants stole proprietary software code.  Defendants repeatedly argue that plaintiff has "no evidence" that defendants had stolen any code when it filed the Complaints, citing statements by Heiniger that he had no "direct evidence" of copying. Doc. 185-1 at 8, 10.  Defendants' argument construes the type of evidence required to support a claim under Rule 11 too narrowly.  In *Lucas v. Duncan*, the D.C. Circuit explained:  "[Rule 11] merely requires an attorney to certify that the factual contentions in a paper he presents to the court 'have evidentiary support' . . . . 'Inferences'—which are commonly described as 'circumstantial evidence'—are as capable of providing evidentiary support as 'facts'—which are commonly described as 'direct evidence.'"  574 F.3d at 777 (internal citations omitted).  Here, five employees left plaintiff to work for defendant Agrian.  Soon after, defendant Agrian announced that it was entering the "precision ag" software business, plaintiff's specialty and an industry sector where Agrian had not competed previously.  Plaintiff believed that Agrian could

not have developed a competing precision ag product as quickly as it did without copying plaintiff's code.  Based on these facts, Heiniger testified "without having gathered any factual evidence, I knew that [the alleged misappropriation of code] had to be occurring."  Doc. 142-5 at 120:20-121:3.  Heiniger's inference that defendants had stolen plaintiff's code was a reasonable one based on the facts available to him then and his extensive knowledge of the agricultural software business.

Furthermore, one of the factors a court should consider when deciding whether to award sanctions under Rule 11 is "how much time for investigation was available to the signer [of the pleading in question] . . . ."  Fed. R. Civ. P. 11 advisory committee's note.  Here, plaintiff realized that Agrian was entering the precision ag business in January 2014 and filed this lawsuit on February 16, 2014.  Plaintiff reasonably believed, under the circumstances, that it needed to seek an injunction quickly to prevent Agrian from bringing a product to market based on plaintiff's stolen code.  Given the facts available and the limited time available to investigate the claims, plaintiff's belief that defendants had stolen its proprietary code had sufficient "evidentiary support."  Fed. R. Civ. P. 11(b)(3).

Finally, defendants seek sanctions under Rule 11(b)(2) because plaintiff failed to perform a reasonable inquiry to determine that its claims against the Employee Defendants for breaching the Agreements were warranted by existing law.  The Agreements are governed by Canadian law, and defendants argue that plaintiff made no effort to determine if the Agreements were enforceable under Canadian law before filing the Complaints.

The Court disagrees.  A Canadian law firm—Burnet, Duckworth & Palmer, LLP—drafted the Agreements.  Doc. 179 at 12.  Plaintiff asserts that it instructed its lawyers "to frame the strongest *possible* noncompetition and confidentiality contracts . . . and that would be our

only lock and key on that [intellectual property] business." *Id.* (emphasis added). Given the urgency with which plaintiff reasonably believed it needed to file this lawsuit, the Court concludes that plaintiff was entitled to rely on the plain language of the Agreements drafted by its Canadian lawyers. Again, the Court is not an expert on Canadian law and does not profess that it is. It has refrained from finally deciding whether the Agreements are enforceable, or not. Rather, the Court concludes simply that plaintiff's belief that the Agreements were enforceable under Canadian law was "reasonable under the circumstances" at the time it filed the Complaints. Fed. R. Civ. P. 11(b).

### 3.   The Court Denies Plaintiff's Request for Costs and Expenses

In its response in opposition to defendants' Rule 11 motion for sanctions, plaintiff requests that the Court award it reasonable expenses it incurred defending this motion. "[T]he court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." Fed. R. Civ. P. 11 advisory committee's note. Thus, the Court may award reasonable expenses to plaintiff as the prevailing party. The Court has evaluated plaintiff's request in light of the fact that defendants' Rule 11 motion is procedurally improper and otherwise without merit. While defendants' procedural omission under Rule 11 is concerning, the Court, in its discretion, declines to award expenses to plaintiff. In reaching this conclusion, the Court is mindful that plaintiff did assert a contract claim against defendant Anderson that, by all appearances, it should never have asserted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Sanctions under 28 U.S.C. § 1927 (Doc. 163) is denied.

17

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion for

Sanctions under Fed. R. Civ. P. 11 (Doc. 174) is denied.

**IT IS SO ORDERED.**

**Dated this 30th day of January, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

18