## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AGJUNCTION LLC,

        Plaintiff,

v.

AGRIAN INC., et al.,

        Defendants.

Case No. 14-CV-2069-DDC-KGS

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's Motion to Re-Tax Costs (Doc. 204). After the Court entered a Judgment dismissing plaintiff's lawsuit against defendants (Doc. 192), defendants submitted a Bill of Costs (Doc. 195), and the Clerk assessed costs against plaintiff in the amount of $84,871.02 (Doc. 203). Plaintiff then filed a Motion to Re-Tax Costs (Doc. 204), asking the Court to review and re-tax the costs assessed against plaintiff under Fed. R. Civ. P. 54(d)(1) and D. Kan. Rule 54.1(c). Defendants submitted a Memorandum in Opposition (Doc. 206), and plaintiff filed a Reply (Doc. 207). The dispute thus is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants in part and denies in part plaintiff's motion.

### I.      Background

Plaintiff AgJunction LLC filed this lawsuit (Doc. 1) on February 16, 2014, asserting claims against defendants Agrian Inc. ("Agrian") and five former AgJunction employees. Plaintiff alleged, generally, that defendants had conspired to steal its proprietary "precision ag" software code and used it to develop a competing precision ag product. On March 26, 2014,

plaintiff filed a Motion for Preliminary Injunction (Doc. 25).  The Court held a two-day hearing

on plaintiff's preliminary injunction motion on June 24 and 25, 2014.

The Court allowed the parties to conduct discovery before the preliminary injunction

hearing.  That discovery included taking 13 depositions, exchanging thousands of pages of

documents, and producing software code.  The parties also hired expert witnesses.  At the two-

day hearing on the preliminary injunction motion, the parties called multiple witnesses, including

expert witnesses.  The Court also heard argument from defendants' Canadian counsel, Mark

Josselyn, about the enforceability of certain non-competition agreements, governed by Canadian

law, that four of the five employee defendants had signed.  After the hearing, the Court accepted

supplemental briefing on the preliminary injunction motion.  Ultimately, on July 23, 2014, the

Court declined to issue a preliminary injunction (Doc. 145-1).

Thereafter, Judge Sebelius set a scheduling conference for August 27, 2014 (Doc. 146).

The parties conferred and made their Rule 26 initial disclosures. The parties also negotiated a

protocol for storing electronically stored information, which included defendants making

forensic images of the employee defendants' personal computing devices.  But, less than a month

after the scheduling conference, on September 15, 2014, plaintiff filed a Motion to Dismiss this

lawsuit without prejudice under Rule 41(a)(2).  Doc. 152.  Defendants opposed this motion.

Doc. 160.  In the alternative, defendants asked the Court to dismiss the lawsuit with prejudice.

Or, defendants argued, if the Court permitted plaintiff to dismiss its claims without prejudice,

defendants asked the Court to impose additional conditions on dismissal.

On February 6, 2015, the Court granted plaintiff's Motion to Dismiss, dismissing the case

without prejudice, but subject to certain conditions described in its January 30, 2015

Memorandum and Order.  Doc. 191.  The Court also entered Judgment dismissing the case

without prejudice and ordered that defendants could recover their costs from plaintiff consistent with the January 30, 2015 Memorandum and Order.  Doc. 192.

Defendants submitted a Bill of Costs (Doc. 195), which plaintiff opposed (Doc. 199).  On October 5, 2015, the Clerk taxed costs against plaintiff in the amount of $84,871.02.  Doc. 203. Plaintiff challenges the Clerk's taxation for several reasons, as explained below.  Generally, plaintiff contends that the Clerk awarded certain categories of costs not authorized by the governing statute.  The Court addresses plaintiff's arguments below.

## II.    Legal Standard

Fed. R. Civ. P. 54(d)(1) provides that "costs . . . should be allowed to the prevailing party."  Rule 54(d) is governed by 28 U.S.C. § 1920.  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987).  This statute provides that a judge or clerk may tax the following expenses as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The prevailing party bears the burden of proving that the costs it seeks are authorized under § 1920.  *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002); *Green Constr. Co. v. Kan. Power & Light Co.*, 153 F.R.D. 670, 675 (D. Kan. 1994).  And the prevailing party also must show that the costs it asks to recover are reasonable.  *In re Williams Sec. Litig.- WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009) (quoting *Callicrate v. Farmland Indus.,*

*Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998)).  If the prevailing party demonstrates that the statute authorizes a category of costs, the burden shifts "to the 'non-prevailing party to overcome' the presumption that these costs will be taxed." *Id.* (quoting *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004)).

The district court makes the final award.  *Green Constr. Co.*, 153 F.R.D. at 674 (citations omitted).  It reviews the clerk's assessment of costs *de novo*, exercising its sound discretion.  *Id.*; *see also Allison*, 289 F.3d at 1248 (stating that the award of costs under Rule 54(d)(1) "rests in the sound discretion of the trial court." (citation omitted)).  "The trial court's exercise of this discretionary power turns on whether or not the costs are for materials necessarily obtained for use in the case." *Allison*, 289 F.3d at 1248 (citation and internal quotation marks omitted).  And, when reviewing the costs sought by the prevailing party, a court must give "'careful scrutiny'" to the items that the prevailing party seeks to recover as reasonable costs.  *In re Williams Sec. Litig.*, 558 F.3d at 1147 (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)).

## III.   Analysis

Plaintiff asserts that defendants failed to satisfy their burden of proving that the costs they seek to recover are taxable costs authorized by statute.  Specifically, plaintiff argues that the Clerk should not have assessed costs for certain categories of charges.  The Court considers those specific categories of costs in the sections below.

### A.  Witness Fees

First, plaintiff asserts that the Clerk should not have assessed costs of $2,937.50, for witness fees incurred by Aaron D. Hunt and Matthew C. Dedmon to appear at the preliminary

injunction hearing.  On the dates of that hearing, both Mr. Hunt and Mr. Dedmon were named defendants in the case.  But, about two weeks after the hearing, the Court dismissed these two defendants, finding that it lacked personal jurisdiction over them.  Doc. 140.  Plaintiff argues that, because Mr. Hunt and Mr. Dedmon were parties when they appeared at the hearing, defendants may not recover witness fees for their appearances even though the Court later dismissed them from the case.

Plaintiff correctly asserts that a prevailing party generally may not recover fees for witnesses who also are parties to the litigation.  *See Green Constr. Co.*, 153 F.R.D. at 679.  But defendants argue that they should recover costs for Mr. Hunt and Mr. Dedmon's attendance at the preliminary injunction hearing because, while they were named defendants on the dates of the hearing, the Court later ruled that it lacked personal jurisdiction over them.  Defendants argue that the Court's finding ran from the beginning of the case, claiming that the Court decided it never had personal jurisdiction over Mr. Hunt and Mr. Dedmon.  And, thus, Mr. Hunt and Mr. Dedmon were not proper parties to the case when the preliminary injunction hearing occurred.

The parties have not cited and the Court has not located any case law that discusses this precise issue.  That is, may a prevailing party recover witness fees for witnesses who were parties to the case when they appeared as witnesses but later were dismissed for lack of personal jurisdiction?  In its own research, the Court has located just one case where a prevailing party sought fees for witnesses who were parties at the time of their testimony but later were dismissed from the case.  In *McBurnie v. City of Prescott*, the District of Arizona rejected a prevailing party's request for witness fees for individuals who were named defendants when they testified at trial but later were dismissed after plaintiff's evidence closed and the court granted those defendants' motion for judgment as a matter of law.  No. CV-09-8139-PCT-FJM, 2011 WL

5057090, at *1 (D. Ariz. Oct. 24, 2011).  Though similar in some respects, *McBurnie* differs from the facts presented here in other respects.  Namely, in *McBurnie*, the Arizona court dismissed the individual defendants on the merits, not jurisdictional grounds.  *See* Motion for Judgment as a Matter of Law, *McBurnie v. City of Prescott*, No. CV-09-8139-PCT-FJM (D. Ariz. Feb. 10, 2011), ECF No. 120; *see also* Minute Entry at 1, *McBurnie v. City of Prescott*, No. CV-09-8139-PCT-FJM (D. Ariz. Feb. 15, 2011), ECF No. 123.

With no controlling authority and only *McBurnie* for guidance on the question, the Court exercises its discretion and declines to award costs for Mr. Hunt and Mr. Dedmon.  Defendants, not plaintiff, decided to bring the two to Kansas City for the hearing.  Also, defendants elected to call both gentlemen as witnesses in its defense presentation.  Given this history, it is unfair to shift the costs of a decision that defendants made to plaintiff.  The Court thus rules, as in *McBurnie*, that defendants may not recover as costs witness fees incurred by Mr. Hunt or Mr. Dedmon.

## B.  Transcripts

Plaintiff next requests the Court to re-tax the costs assessed for hearing and deposition transcripts.  As 28 U.S.C. § 1920 provides, a prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  The Tenth Circuit has explained the statute's reference to transcripts "necessarily obtained for use in the case" "does not allow a prevailing party to recover costs for materials that merely 'added to the convenience of counsel' or the district court."  *In re Williams Sec. Litig.*, 558 F.3d at 1147–48 (quoting *Touche Ross*, 854 F.2d at 1245).  Instead, the prevailing party may recover only those transcription costs that are "'reasonably necessary to the litigation of the case.'"  *Id.* at 1148 (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir. 2000)).

6

The Tenth Circuit also refuses to "'employ the benefit of hindsight' in determining whether materials for which a prevailing party requests costs are reasonably necessary to the litigation of the case." *Id.* (quoting *Mitchell*, 218 F.3d at 1204).  Instead, the court decides the issue by examining "'the particular facts and circumstances at the time the expense was incurred.'"  *Id.* (first quoting *Mitchell*, 218 F.3d at 1204; then citing *Allison*, 289 F.3d at 1249).  And the court also must determine whether the expense satisfies a reasonableness standard.  *Id.* (citing *Mitchell*, 218 F.3d at 1204).  Plaintiff's argument on this issue consists of two main categories.

*First*, plaintiff asserts that the Clerk should not have assessed costs for both the rough daily transcript and the final expedited transcript of the preliminary injunction hearing.  Plaintiff argues that the charges for expedited transcripts are excessive and unnecessary.  Plaintiff also contends that the charges are needlessly duplicative and so the Court should re-tax costs and award only one transcript at the normal rate.  Defendants argue in response that the charges are reasonably necessary to the litigation and thus constitute recoverable costs.

The Court agrees with defendants that expedited daily transcripts of the preliminary injunction hearing were necessary because of the case's complexity.  Indeed, our court has approved cost recovery for expedited transcripts when the case is "sufficiently lengthy, complex, and contentious" thus making "the cost of a daily transcript . . . reasonably necessary . . . ." *Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1079 (D. Kan. 2005) (first citing *Vornado Air Circulation Sys., Inc. v. Duracraft*, No. 92-1543-WEB, 1995 WL 794070, at *2 (D. Kan. Nov. 29, 1995); then citing *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1426–27 (D. Kan. 1995), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996)).  Here, plaintiff accused defendants of conspiring to steal its proprietary software code and using it to develop a competing product.  To support or defend these allegations, each party engaged experts who

analyzed the architecture of their respective software programs.  And, at the preliminary injunction hearing, software designers testified about their programming's structure.  As defendants explain, plaintiff introduced testimony about software code during the first day of the hearing.  Defendants assert that they needed an expedited daily transcript of the hearing so that their attorneys could review it with individuals having expertise in the field and those individuals could explain the substance of the testimony to the attorneys.  Defendants also explain that the daily transcript was necessary for them to prepare their defense adequately for the second day of the hearing.  The Court agrees with defendants that the complex nature of this case made the daily transcripts necessary to their defense of the case.

The Court also agrees with defendants that the costs for the daily transcript and final transcript were necessary for defendants to prepare supplemental briefing.  After the preliminary injunction hearing, the Court allowed supplemental briefs, giving the parties 15 days to file them.  The Court imposed the 15-day filing deadline so that it could consider and rule on plaintiff's motion injunction motion quickly.  Indeed, plaintiff alleged that defendants' actions were causing plaintiff irreparable injury and that it required injunctive relief to prevent this harm from continuing.  The Court thus understood the importance of issuing a prompt ruling on the motion so that it could provide plaintiff (if it made the requisite showing) with the remedy of injunctive relief without delay.  Defendants assert that they required the expedited daily and final transcripts to prepare their supplemental brief.  Indeed, they cite the hearing transcript extensively in that brief.  *See generally* Doc. 144.  Defendants also contend that it was necessary to present a full and final hearing transcript for the Court to evaluate in making its decision.  The Court agrees.  It notes that it referenced the hearing testimony, generally, and cited the final hearing transcript, specifically, in its Order denying plaintiff's Motion for Preliminary

Injunction.  Doc. 145-1 at 12 n.14, 13, 21.  The Court concludes that the Clerk properly assessed costs for the hearing transcripts.

*Second*, plaintiff asserts that the Clerk erred by including two charges in the total costs of deposition transcripts:  (1) the cost for expedited deposition transcripts; and (2) the cost for videotaped depositions.  Defendants argue that the short discovery period before the preliminary injunction hearing made the charges for expedited deposition transcripts necessary.  The parties took 13 depositions in 34 days before the hearing.  Defendants assert that it required expedited transcripts to prepare not only for the upcoming preliminary injunction hearing but also for the other depositions occurring simultaneously.  They explain that they used the expedited deposition transcripts to prepare the witnesses, given that many of the deponents were coworkers and testified about other deponents' involvement in matter.  Defendants also used the expedited transcripts to prepare their expert witness' testimony.  In addition, defendants required the expedited transcripts to prepare their Opposition to plaintiff's Motion for Preliminary Injunction, filed on June 2, 2014.  *See* Doc. 77.  Defendants represent that they cited each one of the depositions that had occurred to date in their Opposition.  Doc. 206 at 5 (citing Doc. 77 at 3, 5–12, 14, 16, 18).

Our court has approved charges for expedited deposition transcripts in a somewhat similar context.  Judge Lungstrum concluded that costs for expedited deposition transcripts were reasonably necessary to the litigation when the depositions occurred about one week before trial and the party seeking recovery of the charges offered the transcripts into evidence at trial.  *Barrett v. United States*, No. 92-2362-JWL, 1994 WL 481777, at *2 (D. Kan. July 29, 1994).  For similar reasons, the Court finds that the charges for expedited transcripts were reasonably necessary in this case.  Defendants required expedited transcripts to prepare for (1) other

depositions in the case, (2) the scheduled preliminary injunction hearing, and (3) their Opposition to plaintiff's Motion for Preliminary Injunction.  All of these events occurred in a little over a month's time, necessitating the charges for expedited transcripts.  The Court thus concludes that the Clerk properly assessed these charges.

The Court also agrees with the Clerk's assessment of the costs for videotaped depositions.  The Tenth Circuit and our court have held that a prevailing party may recover the costs of both videotaping and transcribing depositions when both are "necessarily obtained for use in the case."  *See Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1478 (10th Cir. 1997) (applying the earlier version of 28 U.S.C. § 1920(2)); *see also Higgins v. Potter*, No. 08-2646-JWL, 2011 WL 3667097, at *3 (D. Kan. Aug. 22, 2011) (predicting that the Tenth Circuit would conclude that the amended version of 28 U.S.C. § 1920 allows for taxation of both video and stenographic transcripts when both are necessarily obtained for use in the case).  *Tilton* even states that "in most cases" both a transcript and a videotape "will be 'necessarily obtained for use in the case.'"  115 F.3d at 1478 (quoting *Meredith v. Schreiner Transp.*, 814 F. Supp. 1004, 1006 (D. Kan. 1993)).

Here, defendants assert that the charges for videotaped depositions were reasonably necessary because plaintiff chose to videotape all of the depositions it noticed.  Defendants thus had a reasonable basis to anticipate that plaintiff would use the videotaped depositions at the preliminary injunction hearing, requiring defendants to obtain copies as well.  Defendants contend it was reasonably necessary to have the videotaped depositions available for hearing preparation, impeachment purposes, and potential evidentiary disputes.  Indeed, as plaintiff concedes, defendants eventually played portions of two videotaped depositions at the preliminary injunction hearing.  Doc. 205 at 9.  Although defendants played none of the other videotaped

depositions that they ordered, defendants have demonstrated that the charges were "'reasonably necessary for use in' the case 'at the time the expenses were incurred.'"  *In re Williams Sec. Litig.*, 558 F.3d at 1149 (quoting *Callicrate*, 139 F.3d at 1340).

Plaintiff also objects to an assessment of costs for the individual defendants' videotaped depositions because they attended the hearing and presented live testimony.  Plaintiff argues that the charges were not reasonably necessary because the witnesses' in-person attendance prohibited defendants from offering the videotaped depositions into evidence.  But, again, the governing standard requires the Court to consider whether the costs were necessary when defendants incurred the expenses, not on the date of the hearing.  *Id.*; *see also id.* at 1148 (explaining "we do not 'employ the benefit of hindsight' in determining whether materials for which a prevailing party requests costs are reasonably necessary to the litigation of the case" (quoting *Callicrate*, 139 F.3d at 1340)).  When defendants ordered the videotaped depositions, the expense was reasonably necessary because, if any witness was unable to testify in person, defendants would have needed the videotaped depositions so that they could play them at the hearing (or even later in the case, such as at trial if this case had proceeded to one).  *See Farnsworth v. Covidien, Inc.*, No. 4:08CV01689 ERW, 2010 WL 2160900, at *2 (E.D. Mo. May 28, 2010) (awarding costs for videotaped depositions not used by the prevailing party in its successful summary judgment motion because "at the time of the depositions, it was reasonable to believe that videotapes would be necessary at trial if any of the witnesses were unable to testify in person, or if a witness testified inconsistently with his or her deposition testimony").

The stenographic transcripts also were necessary to the case.  As already explained, defendants cited the deposition transcripts in briefing they submitted to the Court.  They also filed deposition designations (Doc. 142), designating deposition testimony by page and line

11

number for each of the 13 witnesses who the parties deposed in the case. Defendants required stenographic copies of the depositions to prepare those deposition designations. The Court concludes that the Clerk properly assessed the costs for both the videotape and stenographic deposition transcripts, and rejects plaintiff's challenges to the assessment of these charges.

### C. Fees for Exemplification and the Costs of Making Copies

Finally, plaintiff objects to the Clerk's assessment of $52,131.76 in fees for exemplification and the costs of making copies necessary obtained for use in the case. This charge included $8,997.87 for photocopies and $43,133.89 for electric discovery data processing. Plaintiff objects to both types of charges. The Court addresses each charge, separately, below.

#### 1. Photocopies

A prevailing party may recover "[f]ees for exemplification and copies of papers necessarily obtained for use in the case" under 28 U.S.C. § 1920(4). *See Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 617 (D. Kan. 2000). "A copy is 'necessarily obtained' within the meaning of section 1920(4) only where the court believes that its procurement was reasonably necessary to the prevailing party's preparation of its case." *Id.* (citing *Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 407–08 (D. Kan. 2000)). "Materials are not 'necessarily obtained' when they merely add to the convenience of the parties." *Odessa Ford, LLC v. T.E.N. Investments, Inc.*, No. 07-2161-KHV, 2009 WL 1631850, at *5 (D. Kan. June 10, 2009) (citing *Callicrate*, 139 F.3d at 1340). The party seeking to recover copy costs shoulders the burden to establish that the costs were "necessarily obtained for use in the case" as § 1920(4) requires. *Battenfeld*, 196 F.R.D. at 613.

Plaintiff objects to the $8,997.87 assessment that the Clerk awarded for photocopying costs. Specifically, plaintiff argues that defendants provide insufficient descriptions of certain

copying costs and thus fail to show that the costs were reasonably necessary to prepare the case. The Court agrees. Some of defendants' descriptions lack the requisite detail to allow the Court to determine if cost recovery is reasonable. In reaching this conclusion, the Court recognizes that a prevailing party need not itemize every photocopy. *Seyler v. Burlington N. Santa Fe Corp.*, No. 99-2342-KHV, 2006 WL 3772312, at *5 (D. Kan. Dec. 20, 2006) (citation omitted). Such a requirement "would only further escalate the costs for all parties." *Id.* Nevertheless, the Court cannot conclude that costs are reasonably necessary unless the prevailing party provides some detail to justify the necessity of the costs. *See id.*

Here, some of defendants' copying charges provide no description at all. *See* Doc. 196-22 at 2–6. Still, other descriptions are far too generic for the Court to make a reasonableness determination. For example, defendants describe certain photocopying costs as "emails" and "copies for trial." *Id.* at 2, 5. Defendants explain in their briefing that "copies for trial"—the largest line-item expense at $6,883.65—included exhibits for use by the Court, counsel for both parties, the witnesses, and the court reporter at the preliminary injunction hearing. While the Court recognizes that the parties' proposed exhibit lists numbered more than 400 exhibits, the Court cannot reconcile the number of proposed exhibits with the excessive copying charge of $6,883.65.

Defendants also describe certain costs as "prep docs" and "[p]rinting from Summation, Concordance or Relativity." Doc. 196-22 at 5. Without more detail, however, it appears that defendants incurred these charges merely for their own convenience as they prepared their case. Defendants assert in their briefing that the fast pace of discovery required them to incur certain charges for copying discovery that plaintiff served shortly before depositions. They contend that the swift timeline made electronic culling of the documents impossible. The Court fails to

13

understand how physical culling of voluminous documents saved more time than performing that process electronically.  Instead, it appears that defendants incurred these charges for counsel's convenience, not out of necessity.

When a prevailing party fails to submit an itemized statement of copying costs, "the Court has discretion to reduce counsel's stated costs based on its own experience and knowledge of the case." *Seyler*, 2006 WL 3772312, at *5 (citations omitted).  Applying this standard, the Court concludes that defendants incurred half of their copy costs for their own convenience and thus they were not reasonably necessary to prepare the case.  The Court thus awards $4,498.94 in photocopying costs.  *See Cohen-Esrey Real Estate Servs. Inc. v. Twin City Fire Ins. Co.*, No. 08-2527-KHV, 2011 WL 3608671, at *3 (D. Kan. Aug. 12, 2011) (reducing costs taxed for internal copying by 75 percent because the excess charges constituted disallowed discovery production costs or were for counsel's convenience and not reasonably necessary to present the case"); *Odessa Ford, LLC*, 2009 WL 1631850, at *6 (reducing costs taxed for internal copying by 50 percent after concluding that the costs were for convenience and not reasonably necessary); *Seyler*, 2006 WL 3772312, at *5 (reducing costs taxed for counsel's internal copying because the court concluded the copying was for convenience and not reasonably necessary).

### 2.   Electronic Discovery Data Processing

Plaintiff also objects to the Clerk's assessment of $43,133.89 in costs for electronic discovery data processing.  The Tenth Circuit has not addressed whether electronic discovery costs are recoverable under the amended version of § 1920(4).  But several other Circuits have approved taxing electronic discovery data processing costs when the costs constitute "making copies of any materials . . . necessarily obtained for use in the case" as § 1920(4) authorizes. *See*, *e.g.*, *United States ex rel. Long v. GSDMidea City, L.L.C.*, 807 F.3d 125, 132 (5th Cir. 2015)

(affirming district court's award of costs for TIFF conversion and character recognition under §

1920(4) because prevailing party attested that it necessarily incurred the expenses for discovery

responses and use in the case); *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 296–

98 (6th Cir. 2015) (affirming district court's award of costs incurred by a third party vendor to

image a hard drive under § 1920(4)); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674

F.3d 158, 171 (3d Cir. 2012) (holding that "only the scanning of hard copy documents, the

conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying'"

and were recoverable under § 1920(4)).[1]

Following precedent from other Circuits, the District of Colorado has concluded that a

prevailing party can recover costs incurred for loading data into electronic databases and

converting data to other formats because these costs are considered copying costs allowable

under § 1920(4).  *See Chung v. El Paso Sch. Dist. #11*, No. 14-cv-01520-KLM, 2015 WL

7253334, at *11 (D. Colo. Nov. 17, 2015) (holding that the Clerk appropriately taxed electronic

discovery costs under § 1920(4) "for loading documents into an electronic database for

production to Plaintiff on computer disks during discovery" (internal citation and quotation

---

[1]     *See also Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 259–61 (4th
Cir. 2013) (affirming "the district court's finding that, in [that] case, only the conversion of native files to
TIFF and PDF formats, and the transfer of files onto CDs, constituted 'making copies' under § 1920(4)");
*CBT Flint Partners v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013) (holding "that recoverable
costs under section 1920(4) are those costs necessary to duplicate an electronic document in as faithful
and complete a manner as required by rule, by court order, by agreement of the parties, or otherwise" but
"not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or
after duplication"); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming district court's
taxation of costs under § 1920 for "converting computer data into a readable format in response to
plaintiffs' discovery requests").  *Cf. Camesi v. Univ. of Pittsburgh Med. Ctr.*, __ F.3d __, 2016 WL
1085507, at *4–7 (3d Cir. Mar. 21, 2016) (remanding case for determination whether prevailing party's
electronic discovery costs were taxable costs for "making copies" under § 1920(4) because the
information submitted failed to "provide a sufficient description of the ESI activities involved"); *In re
Online DVD–Rental Antitrust Litig.*, 779 F.3d 914, 931–32 (9th Cir. 2015) (remanding case for
determination whether certain costs were taxable under § 1920(4) because the record provided
insufficient detail in some instances, but approving taxation of costs for "optical character recognition,
conversion to TIFF, and other activities essential to the making of copies necessary to the case").

marks omitted)); *Comprehensive Addiction Treatment Ctr. v. Leslea*, No. 11-cv-03417-CMA-MJW, 2015 WL 638198, at *3 (D. Colo. Feb. 13, 2015) (taxing the prevailing party's costs incurred by hiring a private consulting company to retrieve and convert electronically stored information into a retrievable format for production to the non-prevailing party because the costs "were reasonably necessary for use in the case"); *Nero v. Am. Family Mut. Ins. Co.*, No. 11-cv-02717-PAB-MJW, 2013 WL 5323262, at *2–3 (D. Colo. Sept. 23, 2013) (holding that the prevailing party was entitled to recover costs "spent on loading data in to an electronic database and converting files to TIFF or PDF formats").

Also, the District of Utah applied Third and Fourth Circuit precedent on this issue and allowed a prevailing party to recover costs under § 1920(4) for TIFF imaging and copying electronically stored information ("ESI") onto CDs and DVDs, but denied the party's request for optical character recognition ("OCR") and bates labeling costs.  *See Phillip M. Adams & Assoc., L.L.C. v. Sony Elec. Inc.*, No. 1:05-CV-64 TS, 2013 WL 5964288, at *4–5 (D. Utah Nov. 7, 2013) (first citing *Race Tires*, 674 F.3d at 171; then citing *Country Vinter*, 718 F.3d at 260).

As stated above, our Circuit has not addressed this issue since Congress amended  § 1920(4) in 2008.  But, even before the amendment, the Tenth Circuit held that a district court did not abuse its discretion by awarding costs for imaging documents stored on an internal data management server, even though the non-prevailing party asserted that the documents were irrelevant to the case and much of the work was cumulative.  *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1476 (10th Cir. 1997).

Here, defendants seek to recover electronic discovery data processing costs because, they contend, they were "necessarily obtained for use in the case" and thus constitute taxable costs under § 1920(4).  Plaintiff responds that these costs consist of copying discovery materials and,

under our court's case law, costs for copying discovery material that is already in the party's possession are not taxable costs under § 1920(4). *See Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1085 (D. Kan. 2005) ("As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery because the producing party possesses the original documents and, thus, such papers are not 'obtained' for purposes of § 1920(4)"); *see also Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 408 (D. Kan. 2000) (same).

The Court recognizes, however, that our court's cases were decided before Congress amended § 1920(4). The earlier version of § 1920(4) allowed the taxation of "fees for exemplification and *copies of papers* necessarily obtained for use in the case." 28 U.S.C. § 1920 (2007) (emphasis added). But, with the 2008 amendment to § 1920, Congress replaced the reference to "copies of papers" with "the costs of making copies of any materials." *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–406, 122 Stat. 4291 (Oct. 13, 2008). Thus, when our court addressed copying costs under § 1920(4) in *Burton* and *Pehr*, it considered only the costs of copying "documents" or "papers" for production in discovery, not costs associated with copying "materials" as part of electronic discovery. *See Burton*, 395 F. Supp. 2d at 1085; *see also Pehr*, 196 F.R.D. at 408.

Moreover, our court's rationale for its holdings that papers in the prevailing party's possession are not "obtained" for purposes of § 1920(4) does not apply in the electronic discovery context. With electronic discovery, the party may have the relevant data in its possession but it may not exist in a format that the party can produce to the opposing party or use in other stages of the case, including trial. Thus, the party must incur electronic copying costs to transfer the data into a useable form, such as converting native files to TIFF and PDF formats. In this scenario, the Court agrees that the prevailing party necessarily "obtains" the electronic

copies "for use in the case."  And, as other courts have concluded, § 1920(4) authorizes recovery of those costs, even when the prevailing party incurs them during discovery.  *See Race Tires*, 674 F.3d at 165, 171 (recognizing that, in 1948, Congress changed the language of § 1920(4) "for use at trial" to "for use in the case" and concluding that a party may recover certain electronic discovery copying costs under that statute); *CBT Flint Partners*, 737 F.3d at 1328 (allowing a prevailing party to recover some electronic discovery-related copying costs).

After considering the available case law relevant on this issue, the Court concludes that the Tenth Circuit, if presented with this issue, would follow the lead of other circuits and allow a prevailing party to recover expenses for copying and exemplifying electronic discovery materials, both for production in discovery or for use at trial, as taxable costs under § 1920(4) if "necessarily obtained for use in the case."

The Court now considers whether the electronic discovery data processing costs defendants seek to recover were "necessarily obtained for use in the case" as § 1920(4) requires. To decide this issue, and in the absence of specific guidance from the Tenth Circuit in the electronic discovery context, the Court follows the Tenth Circuit's general guidance for determining whether costs are "necessarily obtained for use in the case" for purposes of § 1920(4).

The Tenth Circuit has held that "materials produced solely for discovery" are not "necessarily obtained for use in the case."  *In re Williams Sec. Litig.*, 558 F.3d at 1148 (citation and internal quotation marks omitted).  But, at the same time, a court may tax costs "even if they are not strictly essential to the . . . resolution of the case."  *Id.* (citation and internal quotation marks omitted).  The Circuit recognizes that "[t]he 'realities of litigation occasionally dispense with the need of much of the discovery already taken by the parties when, for instance, a

18

dispositive motion is granted by the trial court.'" *Id.* (quoting *Callicrate*, 139 F.3d at 1340). The Circuit thus instructs trial courts to apply a reasonableness standard that allows a prevailing party to recover costs if "'"materials or services are reasonably necessary for use in the case,' even if they are ultimately not used to dispose of the matter." *Id.* (quoting *Callicrate*, 139 F.3d at 1339). And a court should not "'penalize a [prevailing] party . . . by not awarding costs associated with that portion of discovery which had no bearing on the [ultimate outcome of the case], but which appeared otherwise necessary at the time it was taken for proper preparation of the case.'" *Id.* (quoting *Callicrate*, 139 F.3d at 1340).

Applying the Tenth Circuit's general guidance for when costs are "necessarily obtained for use in the case," the Court concludes that a large portion of the electronic discovery costs defendants seek to recover constitute "costs of making copies of any materials where the copies are necessarily obtained for use in the case" and thus are taxable under § 1920(4). Defendants attribute the majority of the costs to their engagement of a forensic consulting company to perform two tasks: (1) copy software code; and (2) copy the digital devices of all five individual defendants and one other individual. With the first task, defendants assert that the charges were "necessarily obtained for use in the case" because they incurred the charges under Court order. Indeed, given the allegations in this case, the Court ordered the parties to copy their full software code and exchange it through their forensic experts. *See* Doc. 44 at 2–3 (ordering that the parties "jointly confer with each side's forensic expert regarding format and access to Plaintiff's software code and Defendant Agrian's software code" and "exchange discovery relating to each party's software code" within two weeks from the date of the Order). The Court agrees with defendants. They necessarily incurred the charges for copying the software code. This material was not only key evidence, pertinent to the allegations raised in the case, but the Court also

ordered defendants to provide plaintiff access to the software code. *See CBT Flint Partners*, 737 F.3d at 1328 (holding that "recoverable costs under section 1920(4) [include] those costs necessary to duplicate an electronic document in as faithful and complete a manner as required by . . . court order"). Under these facts, the Court concludes the costs for copying software code are taxable costs under § 1920(4). *See id.* at 1332–33 (holding that costs incurred for copying source code files are taxable costs under § 1920(4)).

With the second task assigned to the forensic consulting firm, defendants assert that the Clerk appropriately taxed costs for copying digital devices because plaintiff's counsel insisted that defendants make forensic copies of the digital devices and plaintiff sought the information through specific document requests. The Sixth Circuit has concluded that imaging of a digital device "falls squarely within the definition of 'copy'" for purposes of § 1920(4). *Colosi*, 781 F.3d at 297. When imaging a hard drive, the process "creates 'an identical copy of the hard drive, including empty sectors,'" and the image "serves as a functional reproduction of the physical storage disk." *Id.* (quoting *CBT Flint Partners*, 737 F.3d at 1328 (quoting The Sedona Conference, The Sedona Conference Glossary: E–Discovery & Digital Information Management 27 (Sherry B. Harris et al. eds., 3d ed.2010)).

In *Colosi*, the Sixth Circuit acknowledged that the Third Circuit refused to tax costs incurred for imaging hard drives in the *Race Tires* case. *Id.* (citing *Race Tires*, 674 F.3d at 166–72). Reaching that conclusion, the Third Circuit compared imaging to "untaxable discovery procedures from the pre-digital era like visiting a client's records room, searching for responsive documents, copying the relevant papers, and bringing them back to the law firm for review and redaction." *Id.* (citing *Race Tires*, 674 F.3d at 169). The Third Circuit thus concluded that "only converting responsive documents to an agreed-upon format and burning those files onto a DVD

20

were similar enough to the pre-digital act of photocopying to be 'the functional equivalent of making copies.'" *Id.* (quoting *Race Tires*, 674 F.3d at 171 & n.11).

But the Sixth Circuit found "this construction overly restrictive" and thus conflicting with the text of § 1920. *Id.* The Sixth Circuit also criticized the Third Circuit for asking "whether imaging is the 'functional equivalent' of making photocopies in the era before electronic discovery" because, after the 2008 amendments, a court instead should consider whether "the procedure comes within the ordinary meaning of 'making copies of any materials.'" *Id.* at 297–98 (quoting *Taniguchi*, 132 S. Ct. at 2002–06). The Sixth Circuit also noted that the prevailing party's reason for imaging the hard drives in *Race Tires* was primarily for counsel's convenience, not for actual production, which may have guided the Third Circuit to conclude that the imaging was not "for use in the case" and thus nontaxable. *Id.* at 298 (citing *Race Tires*, 674 F.3d at 169, 171 & n.11). The Sixth Circuit thus refused to apply *Race Tires*' holding to the facts in *Colosi*, *id.* at 297–98, and instead affirmed the district court's decision that the imaging costs were reasonable and necessary to the case and thus taxable under § 1920(4). *Id.* at 298.

The Court predicts that the Tenth Circuit, if presented with this issue, would agree with the Sixth Circuit's reasoning and allow a prevailing party to recover costs incurred for digital imaging so long as the prevailing party demonstrates that it was "necessarily obtained for use in the case," as § 1920(4) requires. Defendants have satisfied that burden here. They assert that plaintiff's counsel asked defendants to make forensic copies of the digital devices and that plaintiff served specific document requests seeking the information. The digital imaging was thus necessarily obtained for use in the case, and the Clerk appropriately taxed costs for the forensic consulting company's work on this task.

Plaintiff also takes issue with specific charges contained in the forensic consulting company's invoices.  *See* Doc. 196-23 at 12–19.  Plaintiff contends that certain entries describe tasks that have nothing to do with copying and thus are nontaxable expenses.  The Court has reviewed the invoices and determines that the entries describing the "collection," "evaluation," "processing," and "production" of ESI amount to taxable "copying" charges under § 1920(4).  But other charges do not meet this definition.  Instead, these charges appear to describe "preparation" for the copying process, not actual copying, and thus are nontaxable.  *See CBT Flint Partners*, 737 F.3d at 1330 (holding that "costs incurred in *preparing* to copy are not recoverable").  The charges falling into this unrecoverable category include "project preparation" ($237.50), client communications ($427.50), "Document File – Data Set Size Inventory" ($142.50), and miscellaneous charges for expenses such as "Evidence Storage Media," "External Hard Drives," "Media for Encrypted Data," and "USB Flash Media" (totaling $1,565.50).  Defendants provide no explanation why these charges were necessary or otherwise taxable under the statute.  The Court thus excludes these costs from the total award.

Finally, the remaining costs that defendants seek to recover in this category are for in-house fees incurred in electronic data processing, loading, and OCR scanning.  In the cases discussed above, courts have reached conflicting conclusions about whether a prevailing party may recover costs for OCR.  *Compare In re Online DVD–Rental Antitrust Litig.*, 779 F.3d at 927 (recognizing that the "faithful production of electronically stored information may require processes such as [OCR] (which renders material text-searchable)" and approving OCR costs as taxable under § 1920(4) because the non-prevailing party required the production of ESI in searchable format) *with Phillip M. Adams & Assoc., L.L.C.*, 2013 WL 5964288, at *4–5 (refusing

to tax costs incurred for OCR after concluding that the prevailing party only could recover costs for TIFF conversion and burning files to CDs and DVDs under § 1920(4)).

Here, defendants have failed to explain why the in-house costs incurred for OCR (amounting to $58.95) were reasonable or necessary for use in the case.  And defendants, as the prevailing party, bear the burden of proving that the OCR costs are taxable under § 1920.  *See Allison*, 289 F.3d at 1248.  Because defendants have failed to shoulder their burden, the Court declines to tax the costs for OCR scanning.  In contrast, the Court concludes that other in-house charges for processing and loading electronic discovery[2] involve the "copying" of material, necessarily incurred for discovery responses and other use in the case.  Defendants thus may recover these charges under § 1920(4).

In sum, the Court concludes that defendants may not recover some of the costs it incurred for electronic discovery data processing.  Specifically, the Court finds that the following charges are nontaxable:  (1) $2,373 from the forensic consulting company's invoices for charges that do not involve "copying;" and (2) $58.95 from the in-house invoices for OCR charges.  The Court thus reduces the taxable costs for electronic discovery data processing by the total amount of these charges, or $2,431.95.

---

[2]      Plaintiff argues that defendants cannot recover charges for loading and updating Relativity because costs associated with electronic database management tools are not taxable costs.  *See Green Constr. Co.*, 153 F.R.D. at 678 (explaining that "several courts have held that expenditures for . . . document management are not taxable as costs" and citing  *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245–47 (10th Cir. 1988) (affirming district court's disallowance of costs for computerized database for management and analysis of litigation documents) (further citations omitted)).  But plaintiff's argument cites case law that discusses the *overhead* costs for electronic database management tools, not the costs incurred for processing and loading ESI into an electronic database management tool.  The latter charges are taxable costs under the case law discussed above.  Defendants' billing records describe charges for processing and loading data into a document management system, not overhead fees for using the system.  Thus, the charges are taxable costs under § 1920(4).

**IV.     Conclusion**

For the reasons explained above, the Court grants in part and denies in part plaintiff's Motion to Re-Tax Costs.  The Court summarizes defendants' recoverable and non-recoverable costs as follows.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Re-Tax Costs (Doc. 204) is granted in part and denied in part.  The Court grants the motion in that the following charges are not recoverable:  (1) $2,937.50 in witness fees for Aaron Hunt and Matthew Dedmon's appearances at the preliminary injunction hearing; (2) half of the defendants' costs for physical photocopies, or $4,498.94, because defendants incurred these costs for convenience, not necessity; and (3) $2,431.95 in charges for electronic discovery data processing that did not involve "copying" costs recoverable by statute.  The non-recoverable charges thus amount to $9,868.39.  The Motion to Re-tax is denied for the balance of the charges, which the Court allows in the total amount of $75,002.63.  Defendants must submit a revised Bill of Costs, reflecting the deductions made in this Memorandum and Order, to the Clerk within 14 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 27th day of May, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**